MARK D. ROSENBAUM, SBN 59940
mrosenbaum@publiccounsel.org
KATHRYN A. EIDMANN, SBN 268053
keidmann@publiccounsel.org
MALKA S. ZEEFE, SBN 343153
mzeefe@publiccounsel.org
AMANDA K. PERTUSATI, SBN 296669
apertusati@publiccounsel.org
PUBLIC COUNSEL LAW CENTER
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone:   (213) 385-2977
Facsimile:    (213) 385-9089

EVE L. HILL, SBN 202178
EHill@browngold.com
EVAN MONOD, Pro Hac Vice
EMonod@browngold.com
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 2500
Baltimore, Maryland 21202
Telephone:  (410) 962-1030
Facsimile:   (401) 385-0869

ROMAN M. SILBERFELD, SBN 62783
RSilberfeld@RobinsKaplan.com
DAVID MARTINEZ, SBN 193183
dmartinez@robinskaplan.com
TOMMY H. DU, SBN 305117
TDu@RobinsKaplan.com
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, California 90067
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800

KARA MAHONEY, SBN 288076
KMahoney@innercitylaw.org
T.E. GLENN, SBN 155761
TGlenn@innercitylaw.org
AMANDA POWELL, SBN 318036
APowell@innercitylaw.org
CHARLES KOHORST, SBN 327558
CKohorst@innercitylaw.org
INNER CITY LAW CENTER
1309 East Seventh Street
Los Angeles, CA 90021
Telephone:  (213) 891-2880
Facsimile:   (213) 891-2888

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY POWERS, DEAVIN SESSOM, LAURIEANN WRIGHT, SAMUEL CASTELLANOS, JOSEPH FIELDS, LAVON JOHNSON, BILLY EDWARDS, JESSICA MILES, JOSHUA ROBERT PETITT, GLENN SURRETTE, NARYAN STIBBIE, DOES 1-2, and NATIONAL VETERANS FOUNDATION, all individually and as class representatives, | Case No.: 2:22-cv-08357-DOC-JEM<br><br>**PLAINTIFFS' OPPOSITION TO VETERANS AFFAIRS DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

1      Plaintiffs,

2          vs.

3    DENIS RICHARD MCDONOUGH, in
     his official capacity, Secretary of
4    Veterans Affairs;

5    MARCIA L. FUDGE, in her official
     capacity, Secretary of Housing and
6    Urban Development;

7    DOUGLAS GUTHRIE, in his official
     capacity, President, Housing Authority
     of the City of Los Angeles;
8
     ROBERT MERCHANT, in his official
9    capacity, Acting Director, VA Greater
     Los Angeles Healthcare System;
10
     KEITH HARRIS, in his official
11   capacity, Senior Executive
     Homelessness Agent, VA Greater Los
12   Angeles Healthcare System,

           Defendants.

Date: July 10, 2023
Time: 8:30 A.M.

Place: Courtroom 10A

Judge: Hon. David O. Carter

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................ 1

LEGAL STANDARD ......................................................................................... 4

ARGUMENT ..................................................................................................... 5

I.    The Court has Jurisdiction over the Rehabilitation Act Claims. ..................... 5

   a.    Plaintiffs' Section 504 claims are not subject to the VJRA because
         they do not arise under a law that affects the provision of veterans'
         benefits by the Secretary. ...................................................................... 6

   b.    The VJRA's system of review does not have jurisdiction ................... 12

         i.    The relief sought does not concern a benefits decision .............. 12

   c.    The Board and CAVC do not have jurisdiction over Plaintiffs' class
         allegations or organizational claims .................................................... 15

II.   Plaintiffs Stated a Claim Under Section 504 ................................................ 16

III.  Plaintiffs Stated a Claim Under the Administrative Procedure Act .............. 16

   a.    Plaintiffs' Challenge to the Brentwood School Lease is Timely .......... 16

   b.    The Challenged Easements Violate the APA ....................................... 16

   c.    The Challenged Leases Violate the APA .............................................. 17

IV.   The VA Defendants Breached Their Fiduciary Duties to Plaintiffs .............. 19

CONCLUSION ................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apollo Cap. Fund, LLC v. Roth Cap. Partners,*

   158 Cal. App. 4th 226 (2007) ................................................................19

*Ashcroft v. Iqbal,*

   556 U.S. 662 (2009)..........................................................................4

*Bates v. Nicholson,*

   398 F.3d 1355 (Fed. Cir. 2005) ..........................................................9

*Bell Atl. Corp. v. Twombly,*

   550 U.S. 544 (2007)......................................................................4, 5

*Broudy v. Mather,*

   460 F.3rd 106 (D.C. Cir. 2006)..............................................7, 10, 11

*DeSoto v. Yellow Freight Sys., Inc.,*

   957 F.2d 655 (9th Cir. 1992) ..............................................................5

*Fitzgerald v. Baxter State Park Authority,*

   385 A.2d 189 (Me. 1978) .................................................................21

*Lee v. City of Los Angeles,*

   250 F.3d 668 (9th Cir. 2001) ............................................................20

*Leford v. West,*

   136 F.3d 776 (Fed. Cir. 1998) ..........................................................13

*Littlejohn v. United States,*

   321 F.3d 915 (9th Cir. 2003) ....................................................6, 9, 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*

   519 F.3d 1025 (9th Cir. 2008) ............................................................5

*Olmstead v. L.C.,*

   527 U.S. 581 (1999).........................................................................16

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Papasan v. Allain*,
    478 U.S. 265 (1986)...............................................................................5

*Russell v. Allen*,
    107 U.S. 163 (1883)..............................................................................22

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ..............................................................5

*Skaar v. McDonough*,
    48 F.4th 1323 (Fed. Cir. 2022) ..........................................................15

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) .............................................................9

*Tunac v. United States*,
    897 F.3d 1197 (9th Cir. 2018) ...........................................................10

*Valentini v. Shinseki*,
    860 F. Supp.2d 1079 (C.D. Cal. 2012) ...............................16, 19, 20, 21

*Valentini v. Shinseki*,
    No. CV 11-04846 SJO, 2012 WL 12882704 (C.D. Cal. June 19, 2012) ...7, 8, 9, 11

*Veterans for Common Sense v. Shinseki*,
    678 F.3d 1013, 1025 (9th Cir. 2012) ...........................................6, 11, 14

*Wong v. Regents of Univ. of Cal.*,
    192 F.3d 807 (9th Cir. 1999) ..............................................................13

**Statutes**

12 M.R.S.A. § 900 et seq. (1964)..............................................................21

24 U.S.C. § 111 .......................................................................................20

29 U.S.C. § 794 ....................................................................................8, 10

38 U.S.C. § 511 .............................................................................passim

38 U.S.C. § 7104 ...............................................................................12, 13

38 U.S.C. § 7251 .....................................................................................12

38 U.S.C. § 7252 .....................................................................................13

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

38 U.S.C. § 7261 ..................................................................................12

38 U.S.C. § 7292 ............................................................................12, 13

38 U.S.C. § 8113 ..................................................................................22

5 U.S.C. § 702 ......................................................................................20

5 U.S.C. § 706 ......................................................................................16

Pub. L. No. 114-226 .............................................................................17

West Los Angeles Leasing Act of 2016 ........................................passim

West Los Angeles VA Campus Improvement Act of 2021....................20

**Regulations**

38 C.F.R. § 15.101 ..................................................................................8

38 C.F.R. § 15.102 ..................................................................................8

38 C.F.R. § 20.203 ................................................................................13

38 C.F.R. § 20.3 ......................................................................................9

Section 504 of the Rehabilitation Act of 1973..............................passim

**8**

H.R. Rep. No. 100-963 (1988) ............................................................11

**Other Authorities**

Statement at https://news.va.gov/press-room/veterans-affairs-secretary-robert-a-mcdonald-issues-statement-on-signing-of-the-west-los-angeles-leasing-act-of-2016/ (last accessed 6/16/2023)...........................................................22

VA's Management of Land Use under the West Los Angeles Leasing Act of 2016: Five-Year Report .....................................................................17, 18, 19

## INTRODUCTION

The phrase "homeless veteran" should be an oxymoron, one that should have no meaning in Los Angeles or anywhere else in our nation. It signifies lives of horrors on our meanest streets. For veterans who have served all of us only to suffer disabilities like serious mental illnesses and traumatic brain injuries, homelessness renders them unable to access the VA's mental and physical health services to which they are entitled. This care represents their only chance to lead normal lives, escape institutionalization, and, in most instances, survive.

Congress has provided the statutory relief these heroes desperately require through Section 504 of the Rehabilitation Act of 1973 and the West Los Angeles Leasing Act of 2016 and its amendment. Shockingly, the VA has ignored or violated these statutes and failed to end a homelessness crisis in our community that need not exist through the construction of permanent supportive housing on grounds that were deeded 135 years ago to the VA to be a "soldier's home" for veterans with disabilities, as well as elsewhere near medical, mental health, and other services available only on these grounds. Time and again, the VA has pledged to provide adequate housing, and time and again it has reneged on its word.

This lawsuit on behalf of veterans suffering serious mental illness and an advocacy group championing their cause seeks a judicial order carrying out congressional mandates. The VA's response is to attempt to have the suit dismissed, arguing in sum that Congress did not mean what it said. For the reasons described herein, the Motion to Dismiss should be denied and the long overdue relief should at last be afforded to enjoin the shame of our country.

## FACTUAL BACKGROUND

An estimated 3,458 unhoused veterans reside in Los Angeles, approximately 10% of the national total. (First Am. Compl. ("FAC") ¶ 5, ECF No. 33.) Nearly one-third of them identify as Black, roughly four times the percentage in Los Angeles

County. (*Id.*) Many experience serious mental illness ("SMI") such as major depression, PTSD, bipolar disorder, panic disorder, or obsessive-compulsive disorder. (*Id.* ¶7.) The rates of severe disability spike in post-9/11 and Vietnam-era veterans. (*Id.* ¶ 8.) Barely half of these veterans access treatment and barely half of those receive minimally adequate care. (*Id.* ¶ 9.) Less than half of those veterans with probable traumatic brain injury ("TBI") even receive a mental health evaluation. (*Id.*)

"An incontrovertible body of research has established the close causal relationship between Serious Mental Illness [SMI] and long-term homelessness, including among veterans." (*Id.* ¶ 10.) Indeed, "[n]umerous scientific studies demonstrate… that unhoused individuals with TBI and [SMI] such as PTSD, schizophrenia, and severe depression can meaningfully access and benefit from physical and mental health services only after they are stabilized in permanent community-based housing readily accessible to appropriate services and support— Permanent Supportive Housing [PSH]." (*Id.* ¶ 11.) "Absent [PSH], these conditions worsen significantly, leading to additional problems impairing the capacity of these individuals to conduct everyday life." (*Id.*)

The Department of Veterans Affairs' ("VA") Greater Los Angeles Healthcare System's ("VAGLAHS") flagship West LA Medical Center is part of a 388-acre parcel deeded in 1888 as a charitable trust to the VA's predecessor for the express purpose of serving as a permanent home for disabled war veterans (the "WLA Grounds"). (*Id.* ¶ 13.) However, VAGLAHS "does not offer, on the WLA Grounds or elsewhere within its service area, anything close to adequate [PSH] coordinated with the medical, mental health, and other supportive services that veterans with [SMI] or brain injuries need." (*Id.* ¶ 14.) The VA has abdicated its responsibility and relied on private housing developers to build the scant PSH that exists on the WLA Grounds, without the benefit of funding from the VA or the Department of Housing and Urban Development ("HUD"). (*Id.* ¶ 15.) As one result, these developers have

imposed perverse requirements such that the more disabled a veteran is, the less likely they will be able to access what little PSH is available on the WLA Grounds. (*Id.*) The VA's failure to provide PSH to disabled veterans has caused the number of homeless veterans to proliferate over time. (*Id.* ¶ 16.) Many veterans have died on the streets of Los Angeles; still more are dying every day. (*Id.*)

In January 2015, the VA entered into a settlement of a 2011 lawsuit brought by ten unhoused veterans with severe disabilities who sued the VA for its failure to provide PSH at the WLAVA. (*Id.* ¶ 17.) The court ruled multiple leases on the WLA Grounds that failed to benefit veterans were invalid. (*See id.*) The VA agreed to draft and implement a Master Plan to provide PSH and supportive services on the grounds, promising to build 1,200 units, 770 of which would be completed by 2022. (*Id.* ¶ 18.) In 2021, the VA Office of Inspector General ("OIG") reported that "the VA has not constructed a single new unit of [PSH] pursuant to the settlement," "fail[ing] even to make essential infrastructure upgrades for utilities like water, sewer, and stormwater systems…." (*Id.* )

The Individual Plaintiffs in this class action are veterans with SMI, brain injuries and/or physical disabilities who, as a result of their disabilities, are unhoused, in or at risk of institutionalization, and unable to access necessary VA medical and mental health treatment to which they are entitled and which they require to lead normal lives and survive. (*Id.* ¶¶ 24, 40–126.) Plaintiff National Veterans Association is a veteran-run organization located in Los Angeles that provides life-sustaining services for veterans throughout the nation and, in particular, for unhoused veterans trying to get by on the streets of Los Angeles. (*Id.* ¶ 127– 29.)

Defendants Denis Richard McDonough, Secretary of the Department of Veterans Affairs, Robert Merchant, Director of VAGLAHS, and Keith Harris, Senior Executive Homelessness Agent for the VAGLAHS, all in their official capacities, denied Plaintiffs meaningful access to benefits offered by VAGLAHS solely because

-3-

of their disabilities due to their failure to provide adequate PSH in violation of their rights under Section 504 of the Rehabilitation Act of 1973 ("Section 504"). (*Id.* ¶¶ 132–34, 137–38, 141–42, 254–63, 319–23.) Defendants' failure to provide adequate PSH puts them at risk of institutionalization in violation of their rights under Section 504. (*Id.* ¶¶ 244–53, 307–14.) Plaintiffs' First Amended Complaint seeks certification of a Class of "all homeless Veterans with SMI or TBI who reside in Los Angeles County" and a Proposed Subclass of "All class members whose income (including veterans disability benefits) exceeds 50% of the Area Median Income (AMI). (*Id.* ¶¶ 291–306.). Plaintiffs Sessom and Johnson have brought a claim on behalf of themselves and the Proposed Subclass against Defendants under Section 504 alleging that Defendants' delegation of its housing construction obligations and imposition of restrictive AMI measures discriminates solely on the basis of their disabilities. *Id.* ¶¶ 301–06.

Moreover, Defendants' use of the WLA Grounds violates the West Los Angeles Leasing Act of 2016 ("WLALA"), which constitutes a breach of fiduciary duty and charitable trust, as well as a violation of the Administrative Procedure Act ("APA"). (*Id.* ¶¶ 280–90, 324–42.) Defendants have failed to account for the proceeds, funds, and land use revenues of the WLA Campus as required by the WLALA and the terms of the charitable trust. (*Id.* ¶¶ 343–50.) To remedy these alleged violations, Plaintiffs request that this Court grant broad declaratory and injunctive relief, and other relief the Court deems proper. (*Id.* ¶¶ 351(A)–(I).)

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint can be dismissed only when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (facially plausible claim survives motion to dismiss). The pleadings need only raise the right to relief beyond the speculative

level. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Moreover, when a motion to dismiss is granted, the Ninth Circuit has a liberal policy favoring amendments, and except in cases of futility, leave to amend should be freely granted. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

## <u>ARGUMENT</u>

## I.    The Court has Jurisdiction over the Rehabilitation Act Claims

This Court has jurisdiction over Plaintiffs' Rehabilitation Act Claims. Defendants assert that the Veterans' Judicial Review Act ("VJRA") precludes this Court from exercising federal question jurisdiction based upon Section 511 of the VJRA ("Section 511"). (VA Defs.' Mot. to Dismiss ("VA Mot."), ECF No. 37-1.) The VJRA provides that "[t]he Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans" and that "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." 38 U.S.C. § 511(a).

The rule Defendants seek cannot be squared with the text and intent of Section 511. Defendants' interpretation would immunize the VA from judicial review of class action systemic claims of disability discrimination under Section 504 that deny veterans access to benefits to which they are legally entitled. Even more, the rule proposed would necessarily apply to all systemic claims of illegal discrimination by the VA, including those based on race or gender. If Congress intended that the VA,

alone among administrative agencies, be the only arbiter of whether it illegally discriminates, it would surely have stated so in unambiguous terms. It did not.

### a. <u>Plaintiffs' Section 504 claims are not subject to the VJRA because they do not arise under a law that affects the provision of veterans' benefits by the Secretary</u>

Defendants principally rely on two cases to seek to justify their principal argument. In *Veterans for Common Sense v. Shinseki*, the Ninth Circuit held that Section 511 precludes jurisdiction over a claim if it requires the district court to review VA decisions that relate to benefits decisions . . . including any decision made by the Secretary in the course of making benefits determinations." 678 F.3d 1013, 1025 (9th Cir. 2012) (en banc) (citations omitted) [hereinafter "*VCS*"]. The court explained that "this preclusion extends not only to cases where adjudicating veterans' claims requires the district court to determine whether the VA acted properly in handling a veteran's request for benefits, but also to those decisions that may affect such cases." *Id*. (citations omitted). Section 511 preclusion does not apply to those claims that "would not possibly have any effect on benefits . . . already awarded." *Id.* at 1023 (citing *Littlejohn v. United States*, 321 F.3d 915, 921 (9th Cir. 2003).

Applying this standard, the Ninth Circuit concluded that the district court did not have jurisdiction to hear a claim by a veterans nonprofit organization challenging the average delay in the adjudication of service-related disability benefits. "Because the district court lacks jurisdiction to review the circumstances or decisions that created the delay in any one veteran's case, it cannot determine whether there has been a systemic denial of due process due to unreasonable delay." *Id.* at 1030.

In other words, the Ninth Circuit held that a lawsuit challenging the length of time to process a benefits claim presented "questions of law and fact necessary to a decision . . . that affects the provision of benefits by the Secretary to veterans." *Id.* at 1022 (quoting 38 U.S.C. § 511(a)).  Such a close nexus as then required by Section

-6-

511 to prohibit judicial review does not exist in a lawsuit where the claims are that the VA has a policy and practice of not providing reasonable accommodations to a class of veterans on account of their disabilities. Where no "decision" about a "benefit" is called for, Section 511 is no bar to this Court exercising jurisdiction. *Broudy v. Mather*, 460 F.3d 106, 115 (D.C. Cir. 2006); *VCS,* 678 F.3d at 1034.

Nevertheless, the court in *Valentini v. Shinseki*, No. CV 11-04846 SJO, 2012 WL 12882704, at *4 (C.D. Cal. June 19, 2012) [hereinafter "*Valentini II*"] found that it did not have jurisdiction over a Rehabilitation Act claim related to the provision of PSH because it would have to "determine whether particular veterans are capable of meaningfully accessing their benefits without the aid of the desired accommodation." The court stated that doing so would necessarily implicate "questions of law and fact regarding the appropriate method of providing benefits to individual veterans" and would be barred by Section 511. *Id.* at *4 n.2 (quoting *VCS*, 678 F.3d at 1029). Defendants would apply the decision to Plaintiffs' Rehabilitation Act claims. (VA Mot. at 11.) But on this point, that unpublished opinion was incorrect and Defendants' reliance on it is unavailing.

The ruling misinterprets both the law and, if applied here, the nature of Plaintiffs' claims. Plaintiffs' First Amended Complaint does not ask the court to make or review any individual determinations of entitlement to particular benefits, or to pass judgment on any such determination made by the VA. It does not challenge individual denials of benefits by the VA. Nor does it engage the court in an inquiry of "appropriate method[s]" of providing benefits, unlike the claims at issue in *VCS*. *VCS*, 678 F.3d at 1029.

Rather, this is a case about the categorical denial of access to benefits because of disability. It does not turn on any individual veteran's eligibility for benefits, but instead on whether the VA may deny a class of veterans eligible for benefits opportunity to access those benefits solely based on their disability. The central issue

-7-

is not what may or may not be an "appropriate method," but rather what Congress has mandated. Indeed, because of the illegal discriminatory policies and practices challenged in this lawsuit, it would be futile even for the more than 3,000 unhoused veterans in Los Angeles to apply for benefits to which they are entitled but are incapable of accessing as a consequence of their disabilities.

Defendants' construction of Section 511 cannot be reconciled with the plain text of either Section 511 or the Rehabilitation Act. This is true for three reasons. First, Section 504 covers "any program or activity conducted by any Executive agency," such as the VA.  29 U.S.C. § 794(a). Congress did not carve out an exception in Section 504 for the VA or so much as intimate that an agency could determine for itself whether it systematically discriminates against individuals with disabilities. Defendants offer no explanation for the word "any" in the statute, instead resting their entire argument on *Valentini II's* unsold foundations. Indeed, as the VA's own Section 504 regulations acknowledge that Section 504's nondiscrimination provision applies "to *all* programs or activities conducted by the agency." 38 C.F.R. § 15.101–02 (emphasis added). Yet Defendants' overbroad reading of Section 511 would allow the VA to immunize itself from suit in federal court and would leave Plaintiffs without a forum in which to bring Section 504 claims.[1]

Second, PSH is not a "benefit" under the VJRA. Section 511 only precludes claims founded on "questions of law and facts necessary to a decision by the Secretary… that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). A "benefit" refers to "any . . . service . . .[or] entitlement to which is determined under laws administered by [the VA] pertaining to veterans[.]" 38 C.F.R.

---

[1] Defendants previously argued in *Valentini II* that the plaintiffs in that case could bring their Section 504 claims in the parallel system of review created by the VJRA. Reply on Mot. for Recons. 5, ECF No. 85, *Valentini v. Shinseki*, No. CV 11-04846 (June 7, 2012). Although they tellingly do not directly argue that here, for a discussion of why that is incorrect, *see* Sec. II, *infra*.

§ 20.3(e). As alleged in this case, and not disputed by Defendants, PSH is not a service or entitlement, but a reasonable accommodation that allows disabled veterans to access needed VA services.

The Amended Complaint includes numerous allegations to this effect, including admissions by the VA. (*See, e.g.* FAC ¶ 27, 29, 173–77, 179–89, 236–53.) Were it to the contrary, any discriminatory VA policy or practice could be contorted to relate to a benefit and thereby shielded from judicial scrutiny. *See Thomas v. Principi*, 394 F.3d 970, 975 (D.C. Cir. 2005) ("[W]e reject any implication that all [VA] action or inaction. . . represents a type of 'service' and therefore automatically constitutes a 'benefit.'"). This includes actions that "indirectly affect benefits." *VCS*, 678 F.3d at 1024 (citing *Bates v. Nicholson*, 398 F.3d 1355, 1365 (Fed. Cir. 2005)).

While the VA is surely well-equipped to determine which benefits are the entitlements of veterans, the same is not true as to whether Section 504 mandates reasonable accommodations for disabled veterans. Congress plainly understood the difference in expertise and role between the VA and the judiciary, and did not intend to shelve anti-discrimination laws when it came to the VA.

The court in *Valentini* understood this distinction too, though it did not fully consider its implications. It specifically noted that PSH is "akin to the lack of a wheelchair ramp" when accessing a place of public accommodation. *Valentini v. Shinseki*, 860 F. Supp. 2d 1079, 1112 n.13 (C.D. Cal. 2012) (likening PSH to a reasonable accommodation). To the extent that Plaintiffs' claims relate, however obliquely, to veterans' benefits, those benefits may well have already been granted, but the Plaintiffs allege that they cannot meaningfully access those benefits without more PSH. (*See* FAC ¶¶ 40, 49, 50, 56, 59, 67, 73, 81–82, 86, 89, 90, 93, 99, 102–06, 110–12, 116, 18, 120, 121, 126.) Thus, like the FTCA claims in *Littlejohn*, making

sufficient PSH available will not "possibly have any effect on the benefits [they have] already been awarded." *VCS*, 678 F.3d at 1023 (citing *Littlejohn*, 321 F.3d at 921).[2]

Third, sufficient PSH will not implicate any "decision" made by the Secretary where benefits have not been awarded because no such decision has been made. To the extent that the lack of PSH means that Plaintiffs have not yet applied for other available VA benefits, then "where there has been no such decision, § 511(a) is no bar." *Broudy v. Mather*, 460 F.3d 106, 115 (D.C. Cir. 2006). (FAC ¶ 246 (noting that plaintiffs and NVF members are "eligible" but have not necessarily received or applied "for the full panoply of VA health and housing services.").)

Plaintiffs' Section 504 claims are similar to the ones at issue in *Broudy*. In that case, a group of veterans sued the VA alleging that they had been prevented from pursuing disability benefits claims for illnesses caused by radiation exposure. *Broudy*, 460 F.3d at 106. The D.C. Circuit rejected the VA's Section 511 preclusion argument because the Secretary had never considered the specific issues related to radiation dosage in his denial of benefits that the plaintiffs alleged in their subsequent lawsuit. *Id.* at 114. Therefore, because these issues were not "necessary to a decision by the Secretary" Section 511 did not apply. *Id.* at 115 (quoting 38 U.S.C. § 511(a)).

Likewise, Plaintiffs do not allege, and Defendants do not argue, that the issue of meaningful access by way of PSH was raised at any benefits hearing. (FAC ¶¶ 254–63; VA Mot. at 11.) Plaintiffs do not allege, and Defendants do not argue, that this issue was raised in the course of the VA's decisions over its leasing of portions of the WLA Grounds or in the course of the VA's acknowledged failure to build the

---

[2] Following *Littlejohn*, the Ninth Circuit held that Section 511 does not preclude certain tort claims under the Federal Tort Claims Act (FTCA) because the FTCA "provides the exclusive means for resolving such claims." *Tunac v. United States*, 897 F.3d 1197, 1205 (9th Cir. 2018). Similarly, Section 504 of the Rehabilitation Act provides the "exclusive means" for ensuring that the VA does not discriminate on the basis of disability in its programs or activities. *Compare id.* with 29 U.S.C. § 794(a).

-10-

1,200 units of permanent supportive housing it had previously agreed to build. (FAC ¶¶ 263, 280–90; VA Mot. at 11.) Accordingly, that issue cannot be deemed "necessary to a decision by the Secretary" because it cannot be shown that it was considered at any point in the decision-making process. *See Broudy*, 460 F.3d at 115.

Instead, Defendants simply rely on an extravagant reading of *Valentini II* in arguing that Section 511 precludes jurisdiction over *all* Section 504 claims related to PSH. (VA Mot. at 11.) But the court in *Valentini II* simply assumed that such a claim would "necessarily require the Court to review questions of law and fact" necessary to a decision by the Secretary. *Valentini II*, 2012 WL 12882704, at *4. It presented no analysis. Absent a showing that a Section 504 claim *actually must* involve decisions that would trigger Section 511 preclusion, then this Court must decide that Plaintiffs' claims are "sufficiently independent of any VA decision as to an individual veteran's claim for benefits [such] that § 511 does not bar its jurisdiction." *VCS*, 678 F.3d at 1034 (noting that the plaintiff's constitutional claims did "not challenge decisions at all").

As the court explained in *Broudy*, Section 511 "does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might touch upon whether someone receives veterans benefits. Rather, it simply gives the VA authority to consider such questions when making a decision about benefits[.]" *Id.* at 112 (internal quotation marks and citations omitted) (emphasis in original). Yet Defendants imply that they have such exclusive jurisdiction extending as a matter of course when it comes to Section 504 claims. VA Mot. at 11. This is outside the purview of Congress's stated purpose in the VJRA to lead courts out of "*individual* decision-making" by the VA. H.R. Rep. No. 100-963, at 21 (1988) (emphasis added).

Thus, the VJRA should not be interpreted to relieve the VA of its Section 504 obligations by making it impossible for a plaintiff to bring a Section 504 claim

contesting VA policy injuring veterans with disabilities. Plaintiffs' Section 504 claims do not rest on individual decisions made by the Secretary in the course of benefits determinations. Review of benefits decisions is an entirely independent analysis. It cannot be conflated with failure to make available PSH that discriminates class wide against plaintiffs based on their disabilities by denying them meaningful access to VA programs and services and putting them at certain risk of institutionalization or life on the streets.

In sum, the PSH Plaintiffs seek is not a benefit, but a reasonable accommodation desperately required in order that disabled veterans can access mental health and other medical services provided on the WLA Grounds. The VA has broad discretion whether to award benefits according to agency regulations. It has no discretion to condition access to those benefits in a discriminatory manner proscribed by Section 504. This is the gravamen of the amended complaint. Because no "decision" about a "benefit" is fairly implicated, Section 511 does not apply, and Plaintiffs' Section 504 claims survive Defendants' Motion to Dismiss for lack of jurisdiction.

### b.  The VJRA's system of review does not have jurisdiction

If this Court found that it did not have jurisdiction over Plaintiffs' claims, then Plaintiffs would have no forum in which to bring their claims, as neither the Board of Veterans Appeals ("Board"), the Court of Appeals for Veterans Claims (CAVC), nor the Federal Circuit cannot decide this case. Nor does that system provided for review of claims asserted by organizations or on a class basis.

### i.  The relief sought does not concern a benefits decision

The limited parameters of the VJRA system are well-defined. The VJRA established a separate system of review for benefits decisions. *See generally* 38 U.S.C. §§ 7104, 7251, 7261, 7292(a), (c), (d)(1). That process begins with the Board of Veterans Appeals, which has jurisdiction to issue "[f]inal decisions" on benefits after an appeal to the Secretary. 38 U.S.C. § 7104(a). In making those decisions, the Board

"shall be bound in its decisions by the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department[.]" *Id.* § 7104(c). A claimant has a year from the time they receive an agency decision to file a Notice of Disagreement with the Board of Veterans Appeals. 38 C.F.R. § 20.203(b).

Thus, not only is the Board required to be deferential to the Secretary, the VA's regulations, and the opinions of its chief legal officer, but also its jurisdiction is founded upon a benefits decision by the Secretary. Although the text of the statute does not explicitly require an adverse benefits decision, it would be nonsensical to appeal a decision granting benefits. *See* 38 U.S.C. § 7104(a). Without that decision, the Board would not have jurisdiction.

As a result, none of the Individual Plaintiffs could obtain a decision from the Board. And without a decision from the Board, the Court of Veterans Appeals likewise could not exercise its jurisdiction, as it may only "review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252(a); *see also Leford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) (noting that the CAVC's "jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed."). Consequently, the Federal Circuit could not review Plaintiffs' claims, because its jurisdiction is predicated on a decision by the CAVC. 38 U.S.C. § 7292(a).[3]

---

[3] Even if it did have jurisdiction, the Federal Circuit cannot hear a "challenge to a factual determination or. . . a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). A reasonable accommodation request is about whether a person is disabled within the meaning of the statute and whether that request is reasonable under the law as applied to the facts of a particular case. *See Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) (noting that determining reasonableness requires a "fact-specific" analysis). It is unlikely that the Federal Circuit could review an adverse reasonable accommodation decision by the CAVC because it cannot review a challenge to a Section 504 failure-to-accommodate as applied to the facts of a particular case. 38 U.S.C. § 7292(d)(2)

The rule sought by Defendants would leave Plaintiffs in jurisdictional no man's land. Under Defendants' misconstruction of the holding in *VCS*, Plaintiffs could not bring a Section 504 claim in a federal district court, because, Defendants argue, that would be related to a decision affecting benefits. *See VCS,* 678 F.3d at 1025; VA Mot. at 8. They could not bring the same claim for a reasonable accommodation before the Board of Veterans' Appeals (and subsequently the CAVC) before or after they have been granted benefits, which would also deny them review by the Federal Circuit.

Defendants' strained construction of Section 511 sweeps away all systemic Section 504 claims. To return to the wheelchair ramp example, a physical access claim brought against the VA under Section 504 would be unreviewable, Defendants would argue, because the ramp would allow a veteran physical access to the space where benefits determinations are made or carried out. The same would be true of a VA facility that fails to provide interpretation services to a deaf veteran who wants to communicate with their healthcare provider, or a blind veteran who needs VA benefit explainers and materials in an accessible format.

Moreover, if the Board/CAVC does not have jurisdiction over a veteran's claim, then by definition the VJRA does not preclude the exercise of jurisdiction by an Article III court. In finding that it had jurisdiction over the plaintiff organization's constitutional claim against the VA, the Ninth Circuit held that "[b]ecause VCS would be unable to assert its claim in the review scheme established by the VJRA. . .that scheme does not operate to divest us of jurisdiction." *VCS*, 678 F.3d at 1035. In an accompanying footnote, the court elaborated that even if the Board/CAVC would have jurisdiction over an individual veteran's claim under these circumstances, the CAVC only "has exclusive jurisdiction over decisions of the Board of Veterans' Appeals, *not over every issue capable of being raised in an appeal from the Board*." *Id.* at 1035 n.26 (emphasis added). Accordingly, because the Board and CAVC would

-14-

not have jurisdiction here, this Court is free to exercise its jurisdiction over Plaintiffs' Section 504 claims.

### c. The Board and CAVC do not have jurisdiction over Plaintiffs' class allegations or organizational claims

Even if this Court could find the Individual Plaintiffs had obtained the decisions required to trigger the Board and CAVC's jurisdiction, neither would have jurisdiction over the class action allegations raised in Plaintiffs' Amended Complaint. (*See* FAC ¶¶ 291–306.) In *Skaar v. McDonough*, the Federal Circuit held that because the CAVC's jurisdictional statute only empowers the court to "affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate[,]" it only has jurisdiction over classes of veterans with Board decisions. 48 F.4th 1323, 1333 (Fed. Cir. 2022), *petition for cert. filed*, No. 22-815 (Feb. 24, 2023). Because Plaintiffs' Proposed Class and Subclass necessarily include veterans who have not received Board decisions (including the individual Plaintiffs), the CAVC would not be able to exercise jurisdiction over Plaintiffs' class action demand. *See id.* (FAC ¶¶ 281–86.) Accordingly, Plaintiffs must bring their class action demand in this forum or forfeit the claim. This Court should exercise its jurisdiction here.

Similarly, without this court's consideration of organizational claims, advocacy organizations like Plaintiff National Veterans Foundation would be without a forum to bring Section 504 claims on behalf of their members. The desirability of a forum to resolve these claims is part of the reason the Ninth Circuit preserved jurisdiction over the constitutional claims in *VCS*. *See VCS*, 678 F.3d at 1034-35 (noting that "the VJRA does not provide a mechanism by which the organizational plaintiffs here might challenge the absence of system-wide procedures, which they contend are necessary to afford due process.").

## II.    Plaintiffs Stated a Claim Under Section 504

Defendants assert in a cursory footnote that Plaintiffs have failed to state a claim in Claim I. (VA Mot. at 11 n. 6.) In support, they only cite *Valentini I* and its discussion of whether that Section 504 claim related to PSH should be categorized as a facial discrimination claim or as a meaningful access claim – apparently implying the claim should be dismissed for the same reason as in *Valentini*. (*Id.* (citing *Valentini v. Shinseki*, 860 F. Supp.2d 1079, 1115–16 (C.D. Cal. 2012)) [hereinafter *Valentini I*].) However, unlike *Valentini I*, Plaintiffs' Claim I alleges a violation of Section 504 through the VA's denial of appropriate integrated services to veterans with disabilities, which puts them at risk of institutionalization. (FAC ¶¶ 244–52, 307–14.) This is different from Claim III, which is a meaningful access claim. (*Id.* ¶¶ 319–323.) Claim I is adapted from the Supreme Court's ruling in *Olmstead v. L.C.*, where it held that unjustified institutional isolation of persons with disabilities is a form of discrimination." 527 U.S. 581, 600 (1999) (plurality opinion). Plaintiffs would welcome the opportunity for further briefing on the merits of *Olmstead* claims to the extent the Court deems it necessary for its decision.

## III.    Plaintiffs Stated a Claim Under the Administrative Procedure Act

### a.    Plaintiffs' Challenge to the Brentwood School Lease is Timely

Following the post-filing conference of counsel, the VA Defendants have withdrawn their argument that the APA claim concerning the Brentwood Lease is untimely. (*See* ECF No. 44.) To the extent that the Court nevertheless desires briefing on the issue, Plaintiffs request leave to supplement.

### b.    The Challenged Easements Violate the APA

The APA allows review of final agency actions that are "in excess of statutory jurisdiction." 5 U.S.C. § 706(2)(C). Plaintiffs challenge easements under the APA that the VA OIG deemed as non-compliant with the WLALA. (FAC ¶¶ 284, 286 (citing U.S. Dep't. Vet. Aff., Off. Inspector Gen., VA's Management of Land Use under the

West Los Angeles Leasing Act of 2016: Five-Year Report 20 (2021)) [hereinafter "OIG Five Year Report"].)

The WLALA limits easements on the WLA Campus to public transit and public utility work. (*Id.* at 21 n.19 (citing WLALA, Pub. L. No. 114-226, Sec. 2(e)(1)(A)–(B), 130 Stat. 926, 927-28).) Plaintiffs agree with the VA OIG's conclusion that easements given to the State of California that are not for the purpose of providing public transit or utilities violate the WLALA and are in excess of Defendants' statutory jurisdiction under the APA. (*See* OIG Five Year Report, *supra* at 21–23; FAC ¶¶ 280–90, 340–42.)

In response, Defendants adopt a strained textual argument to insist that the easements are in compliance with the WLALA. (*See* VA Mot. at 16–18.) But a plain reading of the statutory text, along with the OIG's conclusions, show that the Defendants' reading of the WLALA would allow them to effectively evade the easement limitations of the law. (*See* OIG Five Year Report, *supra* at 21–23; WLALA Sec. 2(e)(1)(A)–(B), 130 Stat. at 927.) Accordingly, Defendants' motion to dismiss Plaintiffs' APA claim regarding the easements should be denied.

### c.    <u>The Challenged Leases Violate the APA</u>

Plaintiffs have also effectively pleaded that the challenged leases violate the WLALA and the APA. The WLALA limits the VA's land-sharing authority on the WLA Grounds to only those agreements that "provide[] additional health-care resources to the Campus" and "benefit[] veterans and their families other than from the generation of revenue for the Department of Veterans Affairs." WLALA, Sec. 2(c)(1)–(2) 130 Stat. at 927. The term "principally benefit veterans and their families" is defined as services provided under a lease that are "designed for the particular needs of veterans and their families, as opposed to the general public, and any benefit of those services to the general public is distinct from the intended benefit to veterans and their families." *Id.* Sec. 2(I)(1)(B).

Plaintiffs and the VA OIG contend that Defendants have flagrantly and repeatedly disregarded this prohibition by entering into several noncompliant lease agreements. These include the aforementioned lease for the Brentwood School, as well as leases to an oil company, Breitburn, and a parking lot operated by Safety Park. (FAC ¶ 286 (citing OIG Five Year Report, *supra* at 21–25).)

None of these leases provide additional health-care resources to the campus or benefit veterans and their families as required by the WLALA. The lease granted to the Brentwood School allows them continued use of athletic facilities located on 21-acres of the WLA Grounds. (OIG Five Year Report, *supra* at 24.) Contrary to Defendants' contention, this lease is not principally designed to benefit veterans and their families. (VA Mot. at 15.) While the text of the lease may pay lip service to this goal in its text and in some veteran-specific benefits, the overall purpose of the lease "was to provide the Brentwood School continued use of the athletic facilities." (*Compare id. with* OIG Five Year Report, *supra* at 24.) Thus, Plaintiffs have stated a claim with respect to the Brentwood School lease.

Likewise, the primary purpose of the Breitburn lease was to extract oil, which "does not provide any additional healthcare benefits, services, or resources directly to veterans or their families" in violation of the WLALA. OIG Five Year Report, *supra* at 23. Defendants do not contest this, but rather argue that they lack the authority to cure this deficient lease, which they say lies with the Bureau of Land Management. (VA Mot. at 18–19.) However, the lease at issue has "no connection to the Bureau of Land Management." OIG Five Year Report, *supra* at 24. The VA could bring this lease into line with its legal obligations under the WLALA and it has not done so.

Defendants argue in the alternative that the lease with Breitburn does actually benefit veterans and their families through an agreement to donate a monthly payment to one nonprofit that helps disabled veterans. VA Mot. at 19. However, one donation in no way "principally benefits" veterans or their families, particularly given the scale

-18-

of the problem of veteran homelessness in Los Angeles. (*Compare* FAC ¶ 5 *with* VA Mot. at 19.) Thus, Plaintiffs have stated a claim with respect to the Breitburn lease.

Finally, Defendants contend that the lease for the parking lot with Safety Park complies with the WLALA because of various provisions in the lease that allegedly benefit veterans. (VA Mot. at 20.) Plaintiffs do not dispute that Defendants have the authority to enter into leases for parking lots, as the WLALA plainly gives them that authority. WLALA Sec. 2(b)(2)(H), 190 Stat. at 926. But that lease must also principally benefit veterans and their families, "as opposed to the general public." *Id.* Sec. 2(I)(1)(B). Whatever ancillary benefits veterans and their families may obtain through the Safety Park lease, the Safety Park parking lot remains primarily a parking lot for the general public. OIG Five Year Report, *supra* at 22. As such, it plainly violates the WLALA, and Plaintiffs have stated a claim with respect to the Park Safety lease.

## IV. The VA Defendants Breached Their Fiduciary Duties to Plaintiffs

To claim a breach of fiduciary duty, Plaintiffs need only plead "the existence of a fiduciary relationship, its breach, and damage caused by the breach." *Apollo Cap. Fund, LLC v. Roth Cap. Partners*, 158 Cal.App.4th 226, 244 (2007). Here, the VA Defendants took on a fiduciary duty by taking the land under the 1888 Deed, using it for decades as a soldiers' home, and refining the duties accepted under WLALA . Then they breached those duties to Plaintiffs' damage. Although the VA Defendants rely on *Valentini* in their Motion, they ignore that court's holding that the 1888 Deed created a charitable trust and the government is its trustee. *Valentini I*, 860 F. Supp.2d at 1107. Instead, they improperly rely on extrinsic evidence attached to the Avallone

Declaration[4] to assert that the 1888 Deed did not create a charitable trust.[5]

First, *Valentini I* determined that the language of the Deed clearly manifested an intent to grant the land to the government on condition that the land be used to construct and permanently maintain housing for disabled veterans. *Id.* at 1104; *see also* Avallone Decl. Ex. 1, ECF 37-3 at ¶ 3 ("in consideration" that the Government "should locate, establish, construct, and permanently maintain a branch of said National Home for Disabled Volunteer Soldiers…"). *Valentini* also held the government was authorized to and did accept the land pursuant to 24 U.S.C. § 111, 14 Stat. 10 (1866) (the "1866 Act"), establishing the National Asylum for Disabled Volunteer Soldiers. *Id.* at 1104–05. Because the government accepted land it was statutorily authorized to accept for the purpose of benefitting a defined group of beneficiaries, "a charitable trust was created, with the Government as trustee and disabled veterans as beneficiaries." *Id.* at 1105-06. The First Amended Complaint alleges the same. FAC ¶ 325. And the case defendants cite, *Farquhar v. United States*, 1990 U.S. App. LEXIS 27758 at *8–9 (9th Cir. 1990), holds the Deed created a covenant to use the land consistent with that stated purpose.

What Defendants appear to be confusing is that although the court in *Valentini I* did find the existence of a charitable trust, it did not find an express "agreement, via statute, to assume enforceable duties" relating thereto. 860 F. Supp.2d at 1106. However, since *Valentini I* Congress has *twice* passed acts signaling such an assumption: (1) the WLALA and (2) the West Los Angeles VA Campus Improvement Act of 2021 that amended WLALA ("2021 Amendment"). Pub. L. No.

---

[4] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (improper to rely on evidence outside four corners of the complaint).

[5] Also, contrary to defendants' footnoted assertion (VA Mot. at. 13 n.8,) 5 U.S.C. § 702 waives sovereign immunity for a "person suffering legal wrong because of agency action…[and who] seek[s] relief other than money damages," and "charitable trust claims are not barred by sovereign immunity." *Valentini*, 860 F.Supp.2d at 1101.

117-18, 135 Stat. 288. These Acts impose mandatory duties consistent with the express purpose of the charitable trust.

*Valentini I* analyzed a similar situation in, and approved of, *Fitzgerald v. Baxter State Park Authority*, 385 A.2d 189 (Me. 1978). There, absent from the statute at issue was any express language by which Maine assumed fiduciary obligations, or authorizing enforcement of those obligations. *See* 12 M.R.S.A. § 900 et seq. (1964). Nevertheless, *Valentini I* concluded the language of the statute in *Fitzgerald* "made the fiduciary duties enforceable against the state." 860 F. Supp.2d at 1110.

WLALA and the 2021 Amendment more than adequately do the same, and in two ways. First, WLALA creates mandatory obligations and prohibitions – in sum, to use funds to renovate and maintain the land and facilities, to support construction and services relating to supportive housing for homeless or at-risk veterans and their families; requiring certification of compliance with the OIG's audit report concerning an array of items about housing for veterans; and to not use the land for other purposes. (FAC ¶¶ 327(B)–(C), (E) (with citations to WLALA).) Indeed, WLALA prohibits the Secretary from using the land for purposes that, effectively, are inconsistent with the creation and maintenance of a home for veterans and their families. WLALA at § 2(c, l). The 2021 Amendment likewise required revenue from leasing to be used exclusively to support renovation of the land and facilities, and "construction and maintenance of temporary and permanent supportive housing for homeless or at-risk veterans and their families," and related purposes. (FAC ¶ 327(D) (with citations).) These prohibitions under the Acts are synonymous with language of fiduciary duty imposed by the trust. Thus, breaching WLALA and the 2021 Amendment breaches the charitable trust's mandate.

Congress's codification is precisely what is expected to implement this century old charitable trust's stated purpose – a purpose initially abided for over eighty years. *See* H.R. Rep. 114-570. In language from the time of its creation, a charitable trust

"may, and indeed must, be for the benefit of an indefinite number of persons…. If the founder describes the general nature of a charitable trust, he may leave the details of its administration to be settled by trustees…." *Russell v. Allen*, 107 U.S. 163, 167 (1883). Congress did that through WLALA and the 2021 Amendment. The VA Secretary, himself, acknowledged these duties in his Statement after the signing of WLALA: the Act would "allow VA to move forward transforming VA's campus into a welcoming place where Veterans and their families in the most need of our services can call home."[6] This and other evidence of the scope of VA's duties should be left for trial. The complaint adequately alleges them.

Contrary to the motion's urging (VA Mot. at 13 n.7), these Acts make it highly unlikely the President would reverse course, and seek to terminate legislated obligations to provide supportive housing to our most vulnerable veterans. *See* 38 U.S.C. § 8113.

Finally, the VA Defendants assert that, even if the 1888 Deed imposed an enforceable duty, they satisfied that duty. (VA Mot. at 14.) That, too, must be left for trial. Plaintiffs have sufficiently pleaded a breach of the duty of care, the related duty of prudence, and the duty of loyalty. (FAC ¶¶ 332, 334.) These facts, along with those describing how the land has been used in violation of WLALA and the 2021 Amendment (FAC ¶ 300) more than adequately establish a breach. Any claimed compliance with fiduciary duties is a matter for trial, not a motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the VA Defendants' Motion to Dismiss in its entirety.

---

[6] See Statement at https://news.va.gov/press-room/veterans-affairs-secretary-robert-a-mcdonald-issues-statement-on-signing-of-the-west-los-angeles-leasing-act-of-2016/ (last accessed 6/16/2023)

Respectfully submitted,

DATED: June 16, 2023

PUBLIC COUNSEL LAW CENTER
  MARK D. ROSENBAUM
  KATHRYN A. EIDMANN
  MALKA S. ZEEFE
  AMANDA K. PERTUSATI

By:   /s/ Mark D. Rosenbaum  
    MARK D. ROSENBAUM

Attorneys for Plaintiffs

DATED: June 16, 2023

BROWN GOLDSTEIN & LEVY, LLP
  EVE L. HILL
  EVAN MONOD

By:   /s/ Eve L. Hill  
    EVE L. HILL

Attorneys for Plaintiffs

DATED: June 16, 2023

ROBINS KAPLAN LLP
  ROMAN M. SILBERFELD
  DAVID MARTINEZ
  TOMMY H. DU

By:   /s/ Tommy H. Du  
    Tommy H. Du

Attorneys for Plaintiffs

-23-

DATED: June 16, 2023

INNER CITY LAW CENTER
    KARA MAHONEY
    T.E. GLENN
    AMANDA POWELL
    CHARLES KOHORST

By:  /s/ Kara Mahoney
        KARA MAHONEY

Attorneys for Plaintiffs