1  MARK D. ROSENBAUM, SBN 59940
   mrosenbaum@publiccounsel.org
2  KATHRYN A. EIDMANN, SBN 268053
   keidmann@publiccounsel.org
3  AMANDA K. PERTUSATI, SBN 296669
   apertusati@publiccounsel.org
4  PUBLIC COUNSEL LAW CENTER
   610 S. Ardmore Avenue
5  Los Angeles, California 90005
   Telephone:   (213) 385-2977
6  Facsimile:   (213) 385-9089

7  EVE L. HILL, SBN 202178
   EHill@browngold.com
8  EVAN MONOD, Pro Hac Vice
   EMonod@browngold.com
9  BROWN GOLDSTEIN & LEVY, LLP
   120 E. Baltimore St., Suite 2500
10 Baltimore, Maryland 21202
   Telephone:  (410) 962-1030
11 Facsimile:   (401) 385-0869

12 ROMAN M. SILBERFELD, SBN 62783        T.E. GLENN, SBN 155761
   RSilberfeld@RobinsKaplan.com          TGlenn@innercitylaw.org
13 DAVID MARTINEZ, SBN 193183            AMANDA POWELL, SBN 318036
   dmartinez@robinskaplan.com            APowell@innercitylaw.org
14 TOMMY H. DU, SBN 305117               CHARLES KOHORST, SBN 327558
   TDu@RobinsKaplan.com                  CKohorst@innercitylaw.org
15 ROBINS KAPLAN LLP                     INNER CITY LAW CENTER
   2121 Avenue of the Stars, Suite 2800  1309 East Seventh Street
16 Los Angeles, California 90067         Los Angeles, CA 90021
   Telephone:  (310) 552-0130            Telephone:  (213) 891-2880
17 Facsimile:   (310) 229-5800           Facsimile:   (213) 891-2888

18 Attorneys for Plaintiffs

19           IN THE UNITED STATES DISTRICT COURT

20         FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 21 JEFFREY POWERS, DEAVIN SESSOM, LAURIEANN WRIGHT, | Case No.: 2:22-cv-08357-DOC-JEM |
| 22 SAMUEL CASTELLANOS, JOSEPH FIELDS, LAVON JOHNSON, BILLY | |
| 23 EDWARDS, JESSICA MILES, JOSHUA ROBERT PETITT, GLENN | **PLAINTIFFS' OPPOSITION TO HOUSING AUTHORITY OF CITY OF LOS ANGELES MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 24 SURRETTE, NARYAN STIBBIE, DOES 1-2, and NATIONAL | |
| 25 VETERANS FOUNDATION, all individually and as class | Date: September 18, 2023 |
| 26 representatives, | Time: 8:30 A.M. |
| 27 | |
| 28 Plaintiffs, | Place: Courtroom 10A |

| | |
|---|---|
| vs. | Judge: Hon. David O. Carter |
| DENIS RICHARD MCDONOUGH, in his official capacity, Secretary of Veterans Affairs; | |
| MARCIA L. FUDGE, in her official capacity, Secretary of Housing and Urban Development; | |
| DOUGLAS GUTHRIE, in his official capacity, President, Housing Authority of the City of Los Angeles; | |
| ROBERT MERCHANT, in his official capacity, Acting Director, VA Greater Los Angeles Healthcare System; | |
| KEITH HARRIS, in his official capacity, Senior Executive Homelessness Agent, VA Greater Los Angeles Healthcare System, | |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.    THE COURT HAS JURISDICTION OVER THE REHABILITATION ACT CLAIMS ........................................................................................................ 3

    a.    Plaintiffs' Section 504 Claims Against HACLA Are Not Subject to the VJRA Because They Do Not Involve a Decision by the Secretary of the VA ......... 5

    b.    Plaintiffs' Section 504 Claims Against HACLA Are Not Reviewable by the Board of Veterans' Appeals of the Court of Appeals for Veterans Claims .............. 8

II.   PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST HACLA ................ 9

    a.    Plaintiffs Have Asserted a Case or Controversy against HACLA ......................... 10

    b.    Plaintiffs Have Standing to Bring Claims I–III Against HACLA ......................... 12

III.  PLAINTIFFS HAVE STATED A CLAIM AGAINST HACLA .................................... 14

    a.    Plaintiffs have stated a claim for violation of section 504 against HACLA, Claims I–III .......................................................................................................... 15

IV.   NECESSARY AND INDISPENSABLE PARTIES ..................................................... 16

V.    CONCLUSION .......................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................... 10, 14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................10, 14, 15

*Bluestein v. US Dep't of Hous. Urb. Dev.,*
    2013 WL 6627965 (D.N.H. Dec. 16, 2013) .............................................. 8

*Broudy v. Mather,*
    460 F.3d 106 (D.C. Cir. 2006) ........................................................... 4, 5, 6

*Church v. City of Huntsville,*
    30 F.3d 1332 (11th Cir. 1994) ................................................................ 13

*DeSoto v. Yellow Freight Sys., Inc.,*
    957 F.2d 655 (9th Cir. 1992) .................................................................. 14

*E.E.O.C. v. Peabody Western Coal Co.,*
    610 F.3d 1070 (9th Cir. 2010) ................................................................ 14

*EEOC v. Peabody Western Coal Co.,*
    400 F.3d 774 (9th Cir. 2005) .................................................................. 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ................................................................................ 12

*Glover v. City of Laguna Beach,*
    2017 WL 4457507 (C.D. Cal. June 23, 2017) ........................................ 13

*Kingdomware Techs., Inc. v. United States,*
    579 U.S. 162 (2016) ................................................................................ 13

*Krueger v. United States,*
    2017 WL 5467743 (E.D. Mich. Nov. 14, 2017) ...................................... 8

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) .................................................................. 12

*Lee v. Modlin,*
    2022 WL 1227002  (D. Md. Apr. 25, 2022) *on reconsideration* 2022 WL
    17968725  (D. Md. Dec. 27, 2022), aff'd No. 23-1087, 2023 WL6 3675911 (4th
    Cir. 2023) ................................................................................................. 9

ii

*Leford v. West,*
    136 F.3d 776 (Fed. Cir. 1998)..................................................................8

*Littlejohn v. United States,*
    321 F.3d 915 (9th Cir. 2003).....................................................................7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................10

*Makah Indian Tribe v. Verity,*
    910 F.2d 555 (9th Cir. 1990)...................................................................16

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
    519 F.3d 1025 (9th Cir. 2008).................................................................14

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011).................................................................10

*Rivera v. Wells Fargo Bank, N.A.,*
    2019 WL 6797246 (C.D. Cal. June 19, 2019).........................................16

*Rutman Wine Co. v. E. & J. Gallo Winery,*
    829 F.2d 729 (9th Cir. 1987)...................................................................14

*S. Pac. Terminal Co. v. ICC,*
    219 U.S. 498 (1911) ................................................................................12

*Smart v. U.S. Dep't of Veteran Affs.,*
    759 F. Supp. 2d 867 (W.D. Tex. 2010)....................................................8

*Tivoli LLC v. Sankey,*
    2015 WL 12683801 (C.D. Cal. Feb. 3, 2015).........................................15

*Townsend v. Quasim,*
    328 F.3d 511 (9th Cir. 2003)...................................................................15

*Tunac v. United States,*
    897 F.3d 1197 (9th Cir. 2018)...................................................................7

*Valentini v. Shinseki,*
    No. CV 11-04846, ECF No. 70 (Mar. 16, 2012)......................................7

*Veterans for Common Sense v. Shinseki,*
    678 F.3d 1013 (9th Cir. 2023)..........................................................*passim*

**Statutes**

28 U.S.C. § 1346(b), §1402(b), § 2401(b), and §§ 2671-2680. ....................7

iii

29 U.S.C.
    § 701 et seq. ...................................................................................... *passim*
    § 794(a) ...................................................................................................7

38 U.S.C.
    § 511(a) ......................................................................................... *passim*
    § 7104(a)...............................................................................................8, 9
    § 7252(a)...............................................................................................8, 9

42 U.S.C. § 12101 et seq. (1990) ...................................................................13

Pub. L. No. 100-687, 102 Stat. 4105............................................................ *passim*

**Other Authorities**

24 C.F.R.
    § 5.609(b)(4) ............................................................................................2
    § 982.4(a)(2) ............................................................................................2
    § 982.52(a)...............................................................................................2
    § 982.201(b)..............................................................................................2

24 C.F.R § 982.201(b)(3) .............................................................................2

38 C.F.R. § 20.3(e) ....................................................................................7

Fed. R. Civ. P.
    8(a)(2) ..................................................................................................15
    12 .........................................................................................................10
    12(b)(6).............................................................................................14, 15
    12(b)(7)................................................................................................16
    19 .......................................................................................................16
    19(a)...................................................................................................16
    19(a)(1)(A) ...........................................................................................17
    19(B) ..................................................................................................17

H.R. Rep. No. 100-963 (1988)........................................................................6

Hous. & Urb. Dev., *Registration of Interest for HUD-VASH Vouchers* 2 (Aug. 16, 2022), https://www.hud.gov/sites/dfiles/OCHCO/documents/2022-26pihn.pdf ...................2

U. S Const. art III......................................................................................10

OPPOSITION TO HACLA MOTION TO DISMISS

# **INTRODUCTION**

While pointing fingers at one another, each Defendant in this case disclaims any responsibility for their role in failing to provide our most vulnerable veterans with the support they so desperately need. The Department of Veterans' Affairs ("VA"), the Department of Housing and Urban Development ("HUD"), and the Housing Authority of the City of Los Angeles ("HACLA") each acknowledge their legally mandated duties to provide Permanent Supportive Housing ("PSH") to unhoused veterans and other medical services, particularly on the West Los Angeles VA ("WLAVA") grounds. At the same time, each Defendant seeks to be dismissed from the lawsuit because they claim that the Court does not have jurisdiction over the claims or that they played no role in the cause of Plaintiffs' injuries.

HUD has created a measure to address the lack of PSH available to our veterans—the HUD-VASH housing voucher program, to be administered through Public Housing Authorities ("PHAs") like HACLA. The strategy behind HUD-VASH is elemental. Unhoused veterans must be given assistance and resources to gain access to rental units in reasonable proximity to services on the WLAVA grounds. This includes not only sufficient rental assistance to procure nearby units, but also aid in obtaining the rentals from often recalcitrant landlords and needed support to negotiate getting needed mental health and medical services. However, HUD and HACLA have failed to administer and fund the HUD-VASH program in a way that will meet its goals for veterans with serious disabilities.

Rather than stepping up, HACLA attempts to avoid all legal responsibility through its Motion, thereby leaving disabled unhoused veterans to live and die on the streets, never receiving the full panoply of services to which they are entitled. As explained below, HACLA's Motion to Dismiss ("HACLA MTD") should be denied.

# **FACTUAL BACKGROUND**

Plaintiffs incorporate the factual background laid out in their Opposition to Veterans' Affairs Defendants' Motion to Dismiss, at 1–4, ECF No. 45.

Defendant Fudge, as Secretary of HUD has partnered with the VA to create the HUD-VASH housing voucher program. (First Am. Compl. ("FAC") ¶ 236, ECF No. 45.)

HUD-VASH is ostensibly a Permanent Supportive Housing (PSH) program for homeless veterans, which provides vouchers for rental assistance alongside VA case management and clinical services. (*Id.* ¶ 236.) HUD-VASH is meant to offer wrap-around services, but in practice simply offers, at best, case management in addition to a housing voucher, which forces vulnerable veterans to obtain housing far away from the VA services they desperately need, effectively rendering inaccessible those services. (*Id.* ¶ 239.)

PHAs are invited to apply for HUD-VASH funding each fiscal year. *See* U.S. Dept. of Hous. & Urb. Dev., *Registration of Interest for HUD-VASH Vouchers* 2 (Aug. 16, 2022), https://www.hud.gov/sites/dfiles/OCHCO/documents/2022-26pihn.pdf. While PHAs make individual determinations for HUD-VASH eligibility, income-based eligibility criteria are provided by underlying HUD regulations that PHAs are required to follow, including what counts as income and applicable income limits. *See* 24 C.F.R. §§ 982.52(a), 982.4(a)(2), 982.201(b), (b)(3), 5.609(b)(4). Social Security and VA disability benefits are counted as income for purposes of HUD-VASH, and income limits are based on restrictive Area Median Income (AMI) measures. (FAC ¶ 241–42.) This means that a 100% disability-rated veteran is *less likely* to obtain HUD-VASH than less or non-disabled homeless veterans. (*Id.* ¶ 242–43.)

Plaintiffs allege that HACLA, via its leadership, failed to exercise its authority to fund HUD-VASH vouchers at rates which would allow veterans with disabilities to live near the VA medical services such that the value of HUD-VASH vouchers is inadequate to address the problem of veteran homelessness in the city, as evidenced by the fact that only about 60% of available vouchers have been used. (FAC ¶¶ 15–16, 23, 236.) The inability to use those vouchers leads to fewer

vouchers allocated each year, even as the need for more PSH only grows. (*Id.* ¶ 237.) Because of the lack of PSH, veterans are either left on the street or in institutional settings like prisons and hospitals. (*Id.* ¶¶ 26, 238.)

Plaintiffs allege that HACLA's administration and funding of HUD-VASH discriminates against them on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"). (*Id.* ¶¶ 307–23.) To remedy these alleged violations, Plaintiffs request that this Court grant declaratory and injunctive relief, and other relief the Court deems proper. (*Id.* ¶¶ 351(A)–(I).)

## ARGUMENT

## I.    THE COURT HAS JURISDICTION OVER THE REHABILITATION ACT CLAIMS

This Court has jurisdiction over Plaintiffs' Rehabilitation Act Claims. Similar to the Federal Defendants[1], HACLA asserts that, because of the Veterans' Judicial Review Act ("VJRA"), Plaintiffs' claims "are beyond the scope of this Court's jurisdiction and belong in the Veterans Court and the Federal Circuit" while relying on *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2023).  (HACLA MTD at 10, ECF No. 51.)

The VJRA provides that "[t]he Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans" and that "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." 38 U.S.C. § 511(a).

In *Veterans for Common Sense v. Shinseki* 678 F.3d 1013, 1025 (9th Cir. 2012) the Ninth Circuit held that Section 511 precludes jurisdiction over a claim if it requires the district court to review VA decisions that relate to benefits decisions . . .

---

[1] As used herein, Federal Defendants refer to HUD and VA.

OPPOSITION TO HACLA MOTION TO DISMISS

including any decision made by the Secretary in the course of making benefits determinations." 678 F.3d 1013, 1025 (9th Cir. 2012) (en banc) (citations omitted) [hereinafter "*VCS*"]. The court explained that "this preclusion extends not only to cases where adjudicating veterans' claims requires the district court to determine whether the VA acted properly in handling a veteran's request for benefits, but also to those decisions that may affect such cases." *Id*. (citations omitted). Section 511 preclusion does not apply to those claims that "would not possibly have any effect on benefits . . . already awarded." *Id*. at 1023 (citing *Littlejohn v. United States*, 321 F.3d 915, 921 (9th Cir. 2003).

Applying this standard, the Ninth Circuit concluded that the district court did not have jurisdiction to hear claims by a veterans nonprofit organization challenging the average delay in the adjudication of service-related disability benefits. "Because the district court lacks jurisdiction to review the circumstances or decisions that created the delay in any one veteran's case, it cannot determine whether there has been a systemic denial of due process due to unreasonable delay." *Id.* at 1030.

In other words, the Ninth Circuit held that a lawsuit challenging the length of time to process a benefits claim presented "questions of law and fact necessary to a decision . . . that affects the provision of benefits by the Secretary to veterans." *Id.* at 1022 (quoting 38 U.S.C. § 511(a)). Such a close nexus as then required by Section 511 to prohibit judicial review does not exist in a lawsuit where the claims are that HACLA refused "to exercise their funding authorities to address the needs of homeless veterans in Los Angeles, declin[ed] to work with the VA to fund the construction of housing on the VA WLA Grounds, and declin[ed] to fund HUD-VASH vouchers at rates which would allow veterans with disabilities to live near the VA medical services."  (FAC ¶ 23.) Where no "decision" about a "benefit" is called for, Section 511 is no bar to this Court exercising jurisdiction. *Broudy v. Mather*, 460 F.3d 106, 115 (D.C. Cir. 2006) *VCS,* 678 F.3d at 1034.

**a.    Plaintiffs' Section 504 Claims Against HACLA Are Not Subject to the VJRA Because They Do Not Involve a Decision by the Secretary of the VA**

HACLA's construction of Section 511 cannot be reconciled with the plain text of either Section 511 or the Rehabilitation Act. First, Section 511, by its terms, insulates decisions by the Secretary of the VA, not decisions by HACLA.  HACLA makes no VA benefits decisions and is not even a federal agency, let alone the VA Secretary. Here, Plaintiffs challenge HACLA's actions in refusing to "fund HUD-VASH vouchers at rates which would allow veterans with disabilities to live near the VA medical services."  (FAC ¶ 23.)  HACLA's responsibility for the discriminatory consequences of its own actions cannot be insulated from review by a statute applicable exclusively to the VA Secretary.

Even assuming *arguendo* that the VJRA could somehow apply to HACLA's actions concerning HUD-VASH, it does not apply where no decision by the VA Secretary has been made. To the extent that the lack of PSH means that Plaintiffs have not yet applied for HUD-VASH, then "where there has been no such decision, § 511(a) is no bar." *Broudy*, 460 F.3d at 115; FAC ¶ 246 (noting that plaintiffs and NVF members are "eligible" but have not necessarily received or applied "for the full panoply of VA health and housing services.").  To the extent Plaintiffs have been awarded HUD-VASH vouchers but have been unable to use them, the Plaintiffs do not challenge the benefits decision, itself, but challenge the HACLA policies that make those vouchers inadequate as PSH.

Plaintiffs' Section 504 claims are closely similar to the ones at issue in *Broudy v. Mather*.  In that case, a group of veterans sued the VA alleging that they had been prevented from pursuing disability benefits claims for illnesses caused by radiation exposure. *Broudy v. Mather*, 460 F.3d 106, 106 (D.C. Cir. 2006). The D.C. Circuit rejected the VA's Section 511 preclusion argument because the Secretary had never considered the specific issues related to radiation dosage in his denial of

5

benefits that the plaintiffs alleged in their subsequent lawsuit. *Id.* at 114. Therefore, because these issues were not "necessary to a decision by the Secretary," Section 511 did not apply. *Id.* at 115 (quoting 38 U.S.C. § 511(a)).

Likewise, here the issue of meaningful access by way of PSH has never been raised at any benefits hearing. (FAC ¶¶ 254–63.)  Nor do Plaintiffs allege that the issue of sufficient funding of HUD-VASH was raised at any benefits hearing.  (FAC ¶¶ 236–43.)  Accordingly, that issue cannot be deemed "necessary to a decision by the Secretary" because it cannot be shown that it was considered at any point in the decision-making process. *See Broudy*, 460 F.3d at 115. Absent a showing that a Section 504 claim *actually must* involve decisions that would trigger Section 511 preclusion, this Court must decide that Plaintiffs' claims are "sufficiently independent of any VA decision as to an individual veteran's claim for benefits [such] that § 511 does not bar its jurisdiction." *VCS*, 678 F.3d at 1034 (noting that the plaintiff's constitutional claims did "not challenge decisions at all").

As the court explained in *Broudy*, Section 511"does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might touch upon whether someone receives veterans benefits. Rather, it simply gives the VA authority to consider such questions when the VA makes a decision about benefits[.]" *Id.* at 112 (internal quotation marks and citations omitted) (emphasis in original). HACLA's actions violating Section 504 are outside the purview of Congress's stated purpose in the VJRA to lead courts out of "*individual* decision-making" by the VA. H.R. Rep. No. 100-963, at 21 (1988) (emphasis added).

Further, as discussed in Plaintiffs' Opposition to Veterans Affairs Defendants' Motion to Dismiss, ECF No. 45, PSH, itself, is not a "benefit" under the VJRA. Section 511 only precludes claims founded on "questions of law and facts necessary to a decision by the Secretary… that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). A "benefit" refers to "any . . .

service . . . entitlement to which is determined under laws administered by [the VA] pertaining to veterans[.]" 38 C.F.R. § 20.3(e). As alleged in this case, and not disputed by Defendants, PSH is a reasonable accommodation that allows disabled veterans to access needed VA health services.  While the VA may be equipped to determine which benefits are the entitlements of veterans, it has neither authority nor expertise to determine whether Section 504 mandates reasonable accommodations from HACLA.  The court in *Valentini* understood this distinction too. It specifically noted that PSH is "akin to the lack of a wheelchair ramp" when accessing a place of public accommodation. Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss 34, *Valentini v. Shinseki*, No. CV 11-04846, ECF No. 70 (Mar. 16, 2012) (likening PSH to a reasonable accommodation).

To the extent that Plaintiffs' claims relate, however obliquely, to veterans' benefits, those benefits may well have already been granted, but Plaintiffs allege that they cannot meaningfully access those benefits without more PSH and more HUD-VASH funding from HACLA. (*See* FAC ¶¶ 23, 252.) Thus, like the FTCA claims in *Littlejohn* making sufficient PSH available will not "possibly have any effect on the benefits [they have] already been awarded." *VCS*, 678 F.3d at 1023 (citing *Littlejohn*, 321 F.3d at 921).[2]

Thus, even if the VJRA could apply to HACLA (which it does not), it should not be interpreted to relieve HACLA of its Section 504 obligations by making it impossible for a plaintiff to bring a Section 504 claim contesting HACLA's

---

[2] Following *Littlejohn*, the Ninth Circuit held that Section 511 does not preclude certain tort claims under the Federal Tort Claims Act (FTCA) because the FTCA "provides the exclusive means for resolving such claims." *Tunac v. United States*, 897 F.3d 1197, 1205 (9th Cir. 2018). Similarly, Section 504 of the Rehabilitation Act provides the "exclusive means" to ensure that the VA does not discriminate on the basis of disability. *Compare id.* with 29 U.S.C. § 794(a).

7

policies[3] that harm veterans with disabilities. Plaintiffs' Section 504 claims against HACLA do not rest on individual decisions made by HACLA in the course of benefits determinations. This is a case about the categorical denial of access to benefits because of disability. It does not turn on any individual veteran's eligibility for benefits. Review of benefits decisions is an entirely independent analysis. It cannot be conflated with the discriminatory systemic failure by HACLA to make available PSH and HUD-VASH vouchers that denies Plaintiffs meaningful access to VA programs and services.

### b. Plaintiffs' Section 504 Claims Against HACLA Are Not Reviewable by the Board of Veterans' Appeals of the Court of Appeals for Veterans Claims

The VJRA allocates jurisdiction over individual benefits claims to the Board of Veterans' Appeals (Board) and the Court of Appeals for Veterans Claims (CAVC). Neither the Board nor the CAVC would have jurisdiction over Plaintiffs' claims against HACLA, which confirms that the VJRA does not apply. The Board has jurisdiction to issue "[f]inal decisions" on benefits decisions after an appeal to the Secretary of Veterans Affairs. 38 U.S.C. § 7104(a). Likewise, the CAVC's jurisdiction is predicated upon a Board decision. 38 U.S.C. § 7252(a); *Leford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) (noting that the CAVC's jurisdiction is "premised on and defined by the Board's decision concerning the matter being appealed.").

HACLA asserts that all Section 504 claims involving HUD-VASH benefits are within the exclusive jurisdiction of the CAVC pursuant to Section 511. (HACLA

---

[3] While improperly relying on extrinsic evidence, to which Plaintiffs object, HACLA claims it offers vouchers "at the highest amounts allowed." (HUD MTD at 16.) If true, Plaintiffs are willing to entertain a stipulation to dismiss HACLA from this lawsuit if it can provide adequate assurances that it sets vouchers at the maximum allowed rate and will continue to do so after final resolution of this action.

MTD at 11.) HACLA cites several cases for the proposition that all "HUD-VASH claims cannot be heard in district court." (HACLA MTD at 11.) However, the cases do not stand for such a broad proposition. *See Krueger v. United States*, 2017 WL 5467743, at *6 (E.D. Mich. Nov. 14, 2017); *Smart v. U.S. Dep't of Veteran Affs.*, 759 F. Supp. 2d 867, 872-73 (W.D. Tex. 2010); *Bluestein v. US Dep't of Hous. Urb. Dev.*, 2013 WL 6627965, at *3 (D.N.H. Dec. 16, 2013); *Lee v. Modlin*, 2022 WL 1227002, at *7 (D. Md. Apr. 25, 2022) on reconsideration 2022 WL 17968725, at *4 (D. Md. Dec. 27, 2022), aff'd No. 23-1087, 2023 WL6 3675911 (4th Cir. 2023). None of these cases challenge a party's refusal to fund HUD-VASH vouchers at an appropriate rate; and none of these cases challenge a housing agency's refusal to exercise its funding authority to construct proper housing for our veterans.

As explained above, Plaintiffs' claims against HACLA are rooted entirely in HACLA's actions. Because the Board and CAVC have no jurisdiction over HACLA's decisions, they would have no jurisdiction over Plaintiffs' claims against HACLA. *See* 38 U.S.C. §§ 511(a), 7104(a), 7252(a). Thus, HACLA's interpretation of the VJRA would leave Plaintiffs with no recourse whatsoever.

Likewise, Plaintiff National Veterans Foundation would be without a forum to bring its Section 504 claims on behalf of its members. As the Ninth Circuit noted in *VCS*, "the VJRA does not provide a mechanism by which. . .organizational plaintiffs. . .might challenge the absence of system-wide procedures[.]" *See VCS*, 678 F.3d at 1034-35. The Ninth Circuit concluded it would have jurisdiction over organizational claims because of the inability to bring claims under the VJRA's review system. *See id.* Because neither the Board nor the CAVC would have jurisdiction, this Court must exercise its jurisdiction.

## II. PLAINTIFFS HAVE STANDING TO BRING CLAIMS AGAINST HACLA

Plaintiffs have standing to bring their claims against HACLA. Plaintiffs have alleged a sufficient injury-in-fact that is fairly attributable to HACLA. Even if the

standard for mootness did apply, the transitory nature of Plaintiffs' homelessness means their claims are capable of repetition yet evading review.

### a.    Plaintiffs Have Asserted a Case or Controversy against HACLA

While recognizing that the First Amended Complaint alleges that HACLA failed to properly "administer the program" (HACLA MTD at 13), HACLA asserts that Plaintiffs lack standing because Plaintiffs have not alleged that HACLA caused them any harm.

Standing doctrine sets an "irreducible constitutional minimum" for what counts as a justiciable case or controversy under Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). To demonstrate standing, the plaintiff must show that they "(1) have suffered a concrete injury; (2) that injury is fairly traceable to actions of the defendant; and (3) it must be likely—not merely speculative—that the injury will be redressed by a favorable decision." *Id.* at 560–61.

Under Federal Rule of Civil Procedure 12, the bar to allege standing is not high. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (holding that the Rule 12 standard laid out in *Twombly* and *Iqbal* are "ill-suited to application in the standing context); *see also Defenders of Wildlife*, 504 U.S. at 561 ("[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.").

Plaintiffs' First Amended Complaint specifically alleges that HACLA refused to exercise its funding authority to address the needs of homeless veterans, refused to work with the VA to fund the construction of housing, and declined to fund HUD-VASH vouchers at rates which would allow veterans access to medical care. (FAC ¶ 23.) As a result of HACLA's actions, Plaintiffs allege a violation of Section 504 based on discrimination and refusal to provide Plaintiffs with meaningful access. (FAC ¶¶ 307–323.) In particular, HACLA's actions have resulted in

Plaintiffs being denied "appropriate integrated services . . . solely because of their disabilities" and "Defendants' discrimination has irreparably harmed Plaintiffs." (FAC ¶¶ 313–314, 318.) Plaintiffs further assert that Defendants, including HACLA, "administer[ed] the benefits offered by VAGLAHS and HUD-VASH in a manner that denies Plaintiffs meaningful access to those benefits solely because of their disabilities." (FAC ¶ 321.) HACLA's disagreement with these allegations is not a basis to dismiss Plaintiffs' claims.

HACLA also asserts that it "is simply a third-party liaison between HUD, the VA, and the veterans" and "has no authority to administer the program outside of the HUD requirements." (HACLA MTD at 13.) However, this assertion is contrary to the allegations in Plaintiffs' First Amended Complaint, and contrary to the assertions made by Defendant HUD that HACLA bears the ultimate responsibility for administering its program. Specifically, Defendant HUD disclaims any liability because "HUD does not directly administer the program, the local PHA does, and in this case HACLA is the program administrator . . .[and] HACLA administers the program with program participants, including making determinations on eligibility and other related administrative decisions. (Def. Sec'y of Hous. & Urb. Dev. Mot. to Dismiss FAC ("HUD MTD") at 8, ECF No. 49-1.) It is HACLA's own discriminatory actions, not the action of any other party, that are the basis of HACLA's liability.

Nevertheless, HACLA asserts that Plaintiffs do not seek any relief that involves HACLA. Not so. Plaintiffs' request for relief specifically asks that the Court "[d]eclare that Defendants administer the benefits program of VAGLAHS in a manner that discriminates against veterans . . . solely by reasons of their disabilities in violation of Section 504," "[e]njoin Defendants from failing to provide Plaintiffs and veterans with SMI and TBI appropriate Permanent Support Housing," and [e]njoin Defendants from denying Plaintiffs, NVF members, and individuals who are similarly situated meaningful access to the health care and housing benefits for

1  which they are eligible." (FAC ¶ 351.) HACLA's funding is integral to that relief.

2  Plaintiffs have articulated a case and controversy against HACLA.

3          **b.**     **Plaintiffs Have Standing to Bring Claims I–III Against**

4                 **HACLA**

5        Again, while relying on improper extrinsic evidence[4], HACLA asserts that

6  Plaintiffs Lavon Johnson, Joseph Fields, Jeffrey Powers, and Deavin Sessom have

7  no standing because they have not been denied HUD-VASH vouchers.  This

8  argument demonstrates why there is no benefits decision at issue here, and therefore,

9  why the VJRA does not apply.  Moreover, it misconstrues Plaintiffs' claim.  These

10  Plaintiffs do not claim that HACLA denied them HUD-VASH vouchers.  They

11  claim that HACLA's HUD-VASH vouchers are useless to them because of their

12  disabilities because HACLA fails to fund them sufficiently to allow Plaintiffs to

13  access VA mental health services.

14        HACLA also argues that Mr. Johnson and Mr. Sessom do not have standing

15  because their claims are moot, as they have since qualified for on-campus housing.

16  While Mr. Johnson has qualified for housing on the WLA Grounds, he has yet to

17  actually receive housing. (HUD MTD at 8.)  For his part, Mr. Sessom alleges that he

18  was unable to obtain housing because of the overly restrictive AMI rule and that his

19  injury was present at the time the complaint was filed.  (FAC ¶ 59.) Like Defendant

20  HUD, HACLA conflates the issues of standing and mootness. Standing is measured

21  at the time the complaint is filed, as subsequent events that occur after the case is

22  filed are relevant to mootness, not standing. *See Friends of the Earth, Inc. v.*

23  *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–93 (2000).  At the time of the

24  complaint, Plaintiffs did not have meaningful access to housing as a result of their

25  disabilities and, therefore, had standing.

26        Plaintiffs' claims are not moot because they are "capable of repetition, yet

27

28  [4] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting that it was improper to rely on evidence outside four corners of the complaint).

evading review." *S. Pac. Terminal Co. v. ICC,* 219 U.S. 498, 514–15 (1911). To be capable of repetition yet evading review, "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016).

Plaintiffs' claims satisfy both prongs here. The transient nature of homelessness means any controversy linked to a person's homelessness is inherently of limited duration. (*See* Decl. of Benjamin Henwood (filed concurrently with Opposition to HUD MTD), ¶ 16 (describing the "institutional circuit" that makes the population of homeless people with disabilities fluid, as they often "cycle through systems of care such as hospitals, shelters, emergency rooms, or other institutions including jails and prisons, without ever truly ending their homelessness experience."), ECF No. 62-1.) Likewise, because 20% of persons placed in housing end up reentering the homeless population, there is a reasonable expectation that Plaintiffs will become homeless again, and again fail to qualify for a HUD-VASH voucher because of the AMI restriction. *Id.* at ¶¶ 16, 18. Courts have previously been willing to make this assumption when dealing with homeless individuals, whose status and resulting injuries are involuntary. *See, e.g. Glover v. City of Laguna Beach*, 2017 WL 4457507, at *2 (C.D. Cal. June 23, 2017) (holding that homeless plaintiff's ADA claim was not moot after he obtained PSH because it was capable of repetition yet evading review); *Church v. City of Huntsville*, 30 F.3d 1332, 1337–38 (11th Cir. 1994) (holding that homeless plaintiffs demonstrated standing because their homelessness was involuntary because of their disabilities, leaving them subject to challenged conduct in the future).

HACLA further asserts that no Plaintiff alleges that they were "denied HUD-VASH benefits due to discrimination based on their disability due to any traceable conduct of HACLA." However, Plaintiffs specifically allege that Defendants, including HACLA, have refused "to provide services through the HUD-VASH

program that are necessary for the treatment of Plaintiffs' Serious Mental Illness or TBI" (FAC ¶ 261), administered "the benefits offered by VAGLAHS and HUD-VASH in a manner that denies veterans the benefits of VAGLAHS services . . . in the most integrated setting appropriate" (FAC ¶ 309), and that the denial of these benefits "is solely because of their disabilities" (FAC ¶ 313).

Alternatively, even if this Court determines that Plaintiffs do not have standing to bring their claims against HACLA, this Court should join HACLA as a necessary party because any decision against HUD would necessitate a change in HACLA's administration of its program, otherwise, any decision against HUD would be meaningless. *See E.E.O.C. v. Peabody Western Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) (noting that an indispensable party is one who has "an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience").

## III.    PLAINTIFFS HAVE STATED A CLAIM AGAINST HACLA

Under Federal Rule of Civil Procedure 12(b)(6), a complaint can be dismissed only when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (facially plausible claim survives motion to dismiss). The pleadings need only raise the right to relief beyond the speculative level. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Moreover, when a motion to dismiss is granted, the Ninth Circuit has a liberal policy favoring amendments, and except in cases of futility, leave to amend should be freely granted. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir.

1  1987).

2            **a.**      **Plaintiffs have stated a claim for violation of section 504**

3                     **against HACLA, Claims I–III**

4         The parties are not in dispute regarding the elements to bring a claim under

5  Section 504. Instead, HACLA asserts that Plaintiffs have not alleged that HACLA

6  "denied any Plaintiff a benefit, or did so on the basis of disability discrimination."

7  (HACLA MTD at 18.) In particular, HACLA asserts that Plaintiffs need to

8  specifically identify HACLA instead of a reference to "all defendants." However,

9  HACLA's requirement that HACLA be specifically identified as a defendant in each

10  claim is contrary to the law. *See Tivoli LLC v. Sankey*, 2015 WL 12683801, at *3

11  (C.D. Cal. Feb. 3, 2015) ("Group pleading is not fatal to a complaint if the

12  complaint still gives defendants fair notice of the claims against them."). To the

13  contrary, FRCP 8(a)(2) simply requires "a short and plain statement of the claim

14  showing that the pleader is entitled to relief" in order to "give the defendant fair

15  notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*

16  *v. Twombly,* 550 U.S. 544, 545 (2007). Indeed, this Court in *Tivoli* found that

17  allegations against defendants generally did not violate FRCP 12(b)(6) so long as

18  the allegations "can fairly be read to claim that each of the moving Defendants

19  participated in the specific wrongful conduct alleged." *Id.* at *4.

20         Here, HACLA argues that it has not denied any HUD-VASH benefits while

21  choosing to ignore Plaintiffs' allegations in their First Amended Complaint.

22  Plaintiffs have adequately alleged a claim against HACLA for violation of Section

23  504 on behalf of all Plaintiffs and the proposed class based on HACLA's

24  discriminatory practices. (FAC ¶¶ 307–314, 319–323.) Particularly, Plaintiffs

25  alleged that Defendants, including HACLA, "administer[ed] the benefits offered by

26  VAGLAHS and HUD-VASH in a manner that denies veterans the benefits of

27  VAGLAHS services, programs, or activities in the most integrated setting

28  appropriate" and that "Defendants' denial of appropriate integrated services . . . is

solely because of their disabilities." (FAC ¶¶ 309, 313.) The issue here is whether HACLA administers the HUD-VASH programs adequately to avoid unnecessary institutionalization of veterans with disabilities who, because of their disabilities, require mental health services provided on the WLA Grounds. *See Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003) (holding that where the issue is the location of services, they must be provided in community-based, non-institutional settings). Adequate funding and administration of the HUD-VASH vouchers would allow veterans to obtain VA health services in more integrated settings. Accordingly, Plaintiffs stated a claim for relief against HACLA in Counts I–III.[5]

## IV.    NECESSARY AND INDISPENSABLE PARTIES

While requesting that the Court dismiss the claims against it, HACLA also asserts that the Court should also dismiss the First Amended Complaint because Plaintiffs failed to sue other Public Housing Agencies ("PHA"). HACLA cannot have it both ways.

Nevertheless, as the moving party, HACLA bears the burden to establish that the other PHAs are necessary and indispensable parties as defined by FRCP 19. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The Ninth Circuit has set forth a three-step inquiry to determine whether a case should be dismissed pursuant to Rule 12(b)(7). *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 778–79 (9th Cir. 2005). First, the court determines whether an absent party is necessary to the action. *Rivera v. Wells Fargo Bank, N.A.*, 2019 WL 6797246, at *4 (C.D. Cal. June 19, 2019). Second, if an absentee is a necessary party under Rule 19(a), the court determines whether it is feasible to order that the absent necessary party be joined. *Id.* Third, if joinder of the absentee is necessary, but not feasible, the Court must consider several factors in determining whether the case should proceed. *Id.*

---

[5] HACLA rehashes its argument that Plaintiffs' second and third claims should be dismissed for mootness. In the interest of brevity, Plaintiffs refer the Court to their argument as set forth *supra* § II.b of this Opposition.

HACLA has not met its burden as it has not addressed each of the elements required by this Court in *Rivera* and the Ninth Circuit in *EEOC v. Peabody Western Coal*. HACLA generally asserts that there are other PHAs that have provided HUD-VASH vouchers in the greater Los Angeles region and that the "relief sought necessarily requires that all HUD-VASH participants . . . in Los Angeles County be included." (HACLA MTD at 21.) Beyond that statement, HACLA has not explained why these other PHAs are necessary and indispensable as it relates to this lawsuit.

The First Amended Complaint alleges that HACLA's failure to properly exercise its authority to address the needs of homeless veterans, refusal to work with the VA to fund the construction of housing on the VA WLA Grounds, and refusal to fund HUD-VASH vouchers at an appropriate amount. (FAC ¶ 23.) HACLA makes no claim that these other PHAs are responsible for its own actions as alleged in the First Amended Complaint, or why the Court cannot accord complete relief among the existing parties without the other PHAs. *See* FRCP 19(a)(1)(A) & (B).

Nevertheless, in the event that this Court finds that other PHAs are necessary and indispensable, dismissal of this lawsuit is not the solution. HACLA has not explained why it would be unfeasible to join these other parties[6] or why the case should not proceed without the other PHAs. HACLA has failed to meet its burden.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny HACLA's Motion to Dismiss.

---

[6] Should the Court determine that other PHAs are a necessary and indispensable party, Plaintiffs request leave to amend their complaint to add the appropriate parties.

1

2

Respectfully submitted,

3    DATED: August 25, 2023          **PUBLIC COUNSEL LAW CENTER**
4                                          MARK D. ROSENBAUM
                                          KATHRYN A. EIDMANN
5                                          AMANDA K. PERTUSATI

6                                     By: */s/ Mark D. Rosenbaum*
                                          MARK D. ROSENBAUM
7
                                      Attorneys for Plaintiffs
8
9    DATED: August 25, 2023          **BROWN GOLDSTEIN & LEVY, LLP**
                                          EVE L. HILL
10                                         EVAN MONOD

11                                    By: */s/ Eve L. Hill*
                                          EVE L. HILL
12
13                                    Attorneys for Plaintiffs

14   DATED: August 25, 2023          **ROBINS KAPLAN LLP**
                                          ROMAN M. SILBERFELD
15                                         DAVID MARTINEZ
                                          TOMMY H. DU
16
17                                    By: */s/ Tommy H. Du*
                                          Tommy H. Du
18
                                      Attorneys for Plaintiffs
19
20   DATED: August 25, 2023          **INNER CITY LAW CENTER**
                                          T.E. GLENN
21                                         AMANDA POWELL
                                          CHARLES KOHORST
22
                                      By: */s/ T.E. GLENN*
23                                         T.E. GLENN

24                                    Attorneys for Plaintiffs

25

26

27

28

OPPOSITION TO HACLA MOTION TO DISMISS