**Exhibit**

Peter E. Perkowski (Cal. Bar No. 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
515 S. Figueroa Street, Suite 1800
Los Angeles, CA 90071
Tel: (213) 426-2137

Daniel L. Nagin (Mass. BBO No. 601058)*
Dana Montalto (Mass. BBO No. 687436)*
Margaret Kuzma (Ill. Bar No. 6309495)*
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Bolyston Street
Jamaica Plain, MA 02130
Tel: (617) 522-3003
* *not admitted in California*

Maureen E. Siedor (Cal. Bar No. 284982)**
SWORDS TO PLOWSHARES
1060 Howard Street
San Francisco, CA 94103
Tel: (415) 252-4788
** *not admitted in the Central District*

Attorneys for Amicus Curiae
SWORDS TO PLOWSHARES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY POWERS et al., | Case No.: 2:22-cv-08357 DOC (JEMx) |
| *Plaintiffs*, | Hon. David O. Carter |
| v. | **BRIEF OF AMICUS CURIAE SWORDS TO PLOWSHARES** |
| DENIS RICHARD MCDONOUGH, in his official capacity as Secretary of Veterans Affairs, et al., | |
| *Defendants*. | Compl. filed:   Nov. 15, 2022<br>*Trial Date: None set* |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................i
INTEREST OF AMICUS CURIAE.......................................................................1
INTRODUCTION .................................................................................................1
BACKGROUND...................................................................................................3
ARGUMENT .........................................................................................................5
   A.  The VA claims process cannot consider or decide Plaintiffs' Rehabilitation Act causes of action. ..........................................................5
   B.  Dismissing the Rehabilitation Act causes of action under § 511 would deprive veterans of a forum to bring them. ..................................8
CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cacciola v. Gibson*,
  27 Vet. App. 45 (2014) ...................................................................................6

*Camacho v. Nicholson*,
  21 Vet. App. 360 (2007) .................................................................................8

*Henderson v. Shinseki*,
  562 U.S. 428 (2011) ....................................................................................3, 4

*In re [Title Redacted by Agency]*, No. 0401835,
  2014 WL 1974996 (Bd. Vet. App. Jan. 16, 2014) .........................................8

*In re [Title Redacted by Agency]*, No. 0533845,
  2005 WL 3924108 (Bd. Vet. App. Dec. 15, 2005) ........................................8

*In re Names Redacted by Agency*,
  1992 BVA LEXIS 3662 (Bd. Vet. App. Feb. 25, 1992) ................................9

*Jarrell v. Nicholson*,
  20 Vet. App. 326 (2006) .............................................................................4, 8

*Johnson v. Robinson*,
  415 U.S. 361 (1974) .......................................................................................9

*King v. Nicholson*,
  19 Vet. App. 406 (2006) .................................................................................4

*Leddy v. O'Rourke*, No. 1701555,
  2018 WL 3700015 (Vet. App. July 26, 2018) ...............................................6

*Noah v. McDonald*,
  28 Vet. App. 120 (2016) .................................................................................1

*Rice v. Shinseki*,
  22 Vet. App. 447 (2009) .............................................................................6, 7

*Scates v. Principi*,
  282 F.3d 1362 (Fed. Cir. 2002) ......................................................................4

*Smith v. Barton*,
  914 F.3d 1330 (9th Cir. 1990) ........................................................................7

*Thomas v. Principi*,
  394 F.3d 970 (D.C. Cir. 2005) .......................................................................6

*Traynor v. Turnage*,
   485 U.S. 535 (1988) ..........................................................................................8

*Veterans for Common Sense v. Shinseki*,
   678 F.3d 1013 (9th Cir. 2012) ..........................................................................9

*Watson v. McDonough*, No. 21-3700,
   2021 WL 5316773 (Vet. App. Nov. 16, 2021) .................................................9

**Statutes**

38 U.S.C. § 5104B(e) ................................................................................................4

38 U.S.C. § 511 ................................................................................................ passim

38 U.S.C. § 511(a) ....................................................................................................4

38 U.S.C. § 5110(a) ..................................................................................................7

38 U.S.C. § 7101 ......................................................................................................4

38 U.S.C. § 7104(a) ...............................................................................................4, 8

38 U.S.C. § 7252 ...................................................................................................4, 8

38 U.S.C. § 7252(b) ..................................................................................................4

38 U.S.C. § 7261 ......................................................................................................4

38 U.S.C. § 7292 ......................................................................................................5

38 U.S.C. § 7292(a) ..................................................................................................5

38 U.S.C. § 7292(c) ..................................................................................................5

Section 504 of the Rehabilitation Act of 1973 ............................................... passim

**Other Authorities**

VA Handbook 5975.6,
   *Compliance Procedures Implementing Section 504 of the Rehabilitation Act of 1973 – Nondiscrimination Based on Disability in Federally Conducted Programs or Activities* (Jan. 23, 2020) ...................................................................7

VBA Manual M21-1
   Adjudication Procedures Manual ....................................................................7

VBA Manual M21-5
   Appeals and Reviews .......................................................................................7

VBA Manual M22-4
   Education Service ............................................................................................7

ii

BRIEF OF AMICUS CURIAE SWORDS TO PLOWSHARES

## Regulations

38 C.F.R. § 20.104(a)(1)-(29) .................................................................................. 6

38 C.F.R. § 20.104(b) .............................................................................................. 6

38 C.F.R. § 20.3(a) ............................................................................................... 3, 4

38 C.F.R. § 20.3(e) ................................................................................................... 3

38 C.F.R. § 20.3(f) ................................................................................................... 3

38 C.F.R. § 3.1(p) ............................................................................................ 3, 6, 7

38 C.F.R. § 3.103(b)(1) ........................................................................................... 4

38 C.F.R. § 3.2500(a)(2) ......................................................................................... 4

38 C.F.R. § 3.2501 .................................................................................................. 4

## INTEREST OF AMICUS CURIAE

Founded in 1974, amicus curiae Swords to Plowshares ("Swords") is a community-based not-for-profit organization in San Francisco that provides needs assessment and case management, employment and training, housing, and legal assistance to veterans—particularly veterans who are low-income, experiencing housing insecurity, and living with mental health conditions. Swords promotes and protects the rights of veterans through advocacy, public education, and partnerships with local, state, and national entities, as well as direct representation of veterans before the Department of Veterans Affairs ("VA") and other government agencies. In its legal work, Swords assists veterans at every level of the VA adjudicatory system to obtain both benefits and access to healthcare. In its housing work, Swords helps veterans find emergency and temporary shelter and transitional housing, provides permanent supportive housing to 400 veterans, and offers rent support and eviction prevention services.

Through its work, Swords has found that Article III courts are an important venue for advancing veterans' interests, and that such courts are the only place where veterans and veterans' advocacy groups can bring claims under federal laws to challenge systemic VA non-adjudicatory policies and practices. Swords has an interest in preserving such access to Article III courts and frequently files amicus briefs before the U.S. Courts of Appeals and other courts in an effort to do so.

## INTRODUCTION

Veterans' disability benefits reflect our nation's fundamental promise to care for those who have served. *See Noah v. McDonald*, 28 Vet. App. 120, 130 (2016). That promise is broken when VA's policy decisions and inactions cause disabled veterans to face financial hardships, homelessness, increased health problems, and other adversities. This is one of those cases: Despite

their obligations to provide permanent supportive housing and other services on the West Los Angeles Medical Center & Community Living Center Grounds, Defendants have failed to do so. As relevant here, Plaintiffs challenge that failure under Section 504 of the Rehabilitation Act of 1973, and the VA Defendants[1] have argued that 38 U.S.C. § 511 deprives the Court of jurisdiction. ECF 37. In their motion, the VA Defendants argue that Plaintiffs' Rehabilitation Act causes of action cannot be brought in an Article III federal district court. But that leaves open the question: if not here, then where?

    The answer is not that such claims can be brought to VA itself, at least not to VA's claims adjudication process, which is limited to deciding whether an individual claimant is entitled to veterans' benefits, and Rehabilitation Act complaints are not claims seeking entitlement to any benefit under laws administered by VA. Thus, neither VA's claims adjudication process nor the courts set up to review final decisions from that process have the ability or authority to consider and resolve Rehabilitation Act complaints. Were the Court to decide that § 511 deprives it of jurisdiction to consider Plaintiffs' Rehabilitation Act causes of action, veterans would have no judicial forum available to bring them. It cannot be that veterans are denied access to all courts for relief from violations of a statute that Congress intended to apply to all federal agencies.

    In enacting § 511, however, Congress did not intend to leave veterans and veterans' advocacy groups without any forum to challenge VA's systemic, non-adjudicatory policies and practices. Indeed, a primary purpose of the Veterans Judicial Review Act ("VJRA"), which established appellate review of VA claims decisions, was to strengthen veterans' due-process rights

---

[1] The VA Defendants are Denis McDonough, in his official capacity as Secretary of Veterans Affairs, Steven Braverman, in his official capacity as Director of VA Greater Los Angeles Healthcare System, and Keith Harris, in his official capacity as Senior Executive Homelessness Agent, VA Greater Los Angeles Healthcare System.

2

BRIEF OF AMICUS CURIAE SWORDS TO PLOWSHARES

as it pertains to those decisions. A ruling that eliminates access to *any* court for Rehabilitation Act complaints would run contrary to that purpose. Accordingly, because VA's claims process cannot consider and decide the Rehabilitation Act causes of action, the Court must to exercise jurisdiction over them.

## BACKGROUND

VA's primary function is to support and serve veterans—as well as their survivors, dependents, and caregivers—after they leave service. VA accomplishes this function by providing benefits and services authorized by Congress to eligible recipients. *E.g.*, *Henderson v. Shinseki*, 562 U.S. 428, 431 (2011). The benefits that Congress has authorized are set forth in title 38 of the U.S. Code, and many are familiar to veterans and non-veterans alike: home loan guarantees, educational benefits, health care, disability compensation, burial and memorial benefits, and more. *See* 38 C.F.R. § 20.3(e) (defining "benefit" as "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by [VA] pertaining to veterans and their dependents and survivors").

Veterans request benefits by making a "claim," which is any "written or electronic communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by [VA] submitted on an application form prescribed by the Secretary." 38 C.F.R. § 3.1(p); *see also* 38 C.F.R. § 20.3(f).

VA administers its primary function by adjudicating these claims for benefits. The process has several steps. First, veterans present claims to VA regional offices ("VAROs"), where they are considered by the "agency of original jurisdiction" ("AOJ"), which is defined as "the [VA] activity or administration … that [makes] the initial determination on a claim." 38 C.F.R. § 20.3(a). Depending on the benefit the veteran is seeking, the AOJ is one of

three divisions of VA: the Veterans Benefits Administration, the Veterans Health Administration, or the National Cemetery Administration. *See id.* After determining whether the applicant is entitled to the benefit, the AOJ issues a decision and gives notice to the claimant. *See Henderson*, 562 U.S. at 431; 38 C.F.R. § 3.103(b)(1).

If a veteran is dissatisfied with the AOJ's decision, they have several options. The first is to seek *de novo* higher-level review ("HLR") within the AOJ by a more experienced adjudicator who did not participate in the decision on the claim. *See* 38 U.S.C. § 5104B(e); 38 C.F.R. § 3.2601(e). The second is to file a supplemental claim based on new or additional evidence. *See* 38 C.F.R. §§ 3.2500(a)(2), 3.2501. Finally, the veteran may obtain *de novo* review of the AOJ decision—whether an initial decision, a decision after HLR, or a decision on a supplemental claim—by the Board of Veterans' Appeals ("Board"). "The Board is a body within the VA that makes the agency's final decision in cases appealed to it." *Henderson*, 562 U.S. at 431 (citing 38 U.S.C. §§ 7101, 7104(a)). But "the Board has no jurisdiction to adjudicate [a] claim in the first instance." *Jarrell v. Nicholson*, 20 Vet. App. 326, 331 (2006); *see also Scates v. Principi*, 282 F.3d 1362, 1367 (Fed. Cir. 2002) ("The Board is primarily an appellate tribunal [that] serves as the deciding entity 'on appeal to the Secretary' of a question 'subject to decision by the Secretary' under § 511(a).") (quoting 38 U.S.C. § 511(a)).

Thereafter, a claimant may appeal adverse decisions to the Court of Appeals for Veterans Claims ("CAVC"), an Article I court. *See* 38 U.S.C. § 7252. CAVC reviews the "decisions of the Board," *id.*, and the scope of review is limited to the claims and questions that the Board actually considered and decided. *Id.* §§ 7252(b), 7261; *see also King v. Nicholson*, 19 Vet. App. 406, 411 (2006). Claimants still aggrieved after a CAVC decision may appeal to the U.S. Court of Appeals for the Federal Circuit ("CAFC"). *See* 38

4

U.S.C. § 7292. CAFC's authority is limited to reviewing "a decision of [CAVC] on a rule of law or of any statute or regulation … or any interpretation thereof (other than a determination as to a factual matter) that was relied on by [CAVC] in making the decision." *Id.* § 7292(a). CAFC decisions are "final subject to review by the Supreme Court upon certiorari." *Id.* § 7292(c).

## ARGUMENT

Swords agrees with Plaintiffs that the plain language of § 511, and the decisions interpreting it, do not require dismissal of their Rehabilitation Act causes of action and thus does not repeat those arguments. Instead, Swords emphasizes how the VA claims process is not the correct forum for any Rehabilitation Act complaint, so those causes of action belong here, in federal district court. It cannot be the case that veterans are deprived of any judicial forum in which to present a Rehabilitation Act complaint.

### A. The VA claims process cannot consider or decide Plaintiffs' Rehabilitation Act causes of action.

Considering the purpose and structure of VA's administrative system detailed above, there is no question that the process lacks legal authority to decide Rehabilitation Act complaints, including Plaintiffs' causes of action here. VA's administrative system creates a clear distinction between claims for an individual veteran's benefits, which belong in the agency's benefits adjudication system, and claims under federal statutes challenging systemic VA non-adjudicatory policies and procedures, which do not.

First, Rehabilitation Act complaints cannot be presented to VAROs for decision by the AOJ because they are not "claims" and do not seek "benefits," based on how as those terms are defined and understood by agency regulations and cases interpreting them. Veterans' benefits are authorized by Congress and set forth in title 38, U.S.C. *See Leddy v. O'Rourke*, No. 1701555,

2018 WL 3700015, at *2 (Vet. App. July 26, 2018) ("[E]ssential requirements of any claim" includes "an identification of the benefits sought."). Remedies under the Rehabilitation Act, such as the injunctive relief Plaintiffs seek here and compensatory damages, are not among the benefits enumerated in title 38. VA's own regulations are consistent: The Board's Rules of Practice lists more than two dozen examples "of the issues over which the Board has jurisdiction." 38 C.F.R. § 20.104(a)(1)-(29), *see also id.* § 20.104(b). None of the listed examples include relief under federal anti-discrimination statutes like the Rehabilitation Act or the Americans with Disabilities Act ("ADA"). And while the Rule's list is not exhaustive, the issues on the list relate to an individual's entitlement to payments, programs, or services offered by VA under veterans' benefit statutes, not damages or injunctive relief under other federal laws. Plaintiffs' Rehabilitation Act causes of action do not seek a "benefit under the laws administered by [VA]."[2] 38 C.F.R. § 3.1(p); *cf. Thomas v. Principi*, 394 F.3d 970, 975 (D.C. Cir. 2005) (rejecting "any implication that all action or inaction by the VA represents a type of 'service,' and therefore automatically constitutes a 'benefit'" under § 20.3(e)).

Similarly, CAVC decisions have used the term "claim" "to describe a wide variety of circumstances," but all involve VA-administered benefits and processes. *Rice v. Shinseki*, 22 Vet. App. 447, 451 (2009); *accord Cacciola v. Gibson*, 27 Vet. App. 45, 53 n.2 (2014).[3] None have used the term in connection

---

[2] Specifically, permanent supportive housing—the remedy Plaintiffs seek under the Rehabilitation Act—is not "a specific benefit under the laws administered by [VA]." 38 C.F.R. § 3.1(p). VA does partner with local public health agencies ("PHAs") in a program known as HUD-Veterans Affairs Supportive Housing ("HUD-VASH"), which provides rental assistance to veterans experiencing houselessness. HUD-VASH is a program of the Department of Housing and Urban Development ("HUD"), not VA. *See* 42 U.S.C. § 1437f(*o*)(19). VA's role is limited: designated VA medical centers screen veterans and their families using criteria specified in § 1437f(*o*)(19)(D) and refer them to participating PHAs, which provide the housing assistance payments. VA also provides case management services to the veteran.

[3] In *Rice*, CAVC discussed many uses of the term, including "original claim," "claim to reopen," "claim for increased compensation," "CUE claim," "claim

with a claim for relief under the Rehabilitation Act. Moreover, a "claim" must be presented on a "form prescribed by the Secretary," 38 C.F.R. § 3.1(p), but there is no form for seeking relief under Rehabilitation Act. For these reasons, if a veteran were to bring a complaint under the Rehabilitation Act to a VARO, VA would not resolve it through the benefits adjudication process.

VA's internal policies confirm this understanding. VA has a written policy setting forth procedures for ensuring that its programs, activities, and facilities are accessible and comply with the Rehabilitation Act. *See* VA Handbook 5975.6, *Compliance Procedures Implementing Section 504 of the Rehabilitation Act of 1973 – Nondiscrimination Based on Disability in Federally Conducted Programs or Activities* (Jan. 23, 2020).[4] The policy establishes the body within VA responsible for processing external complaints under the Rehabilitation Act and sets forth the ways a veteran may file such a complaint and the procedures for handling it. *Id.* ¶¶ 3.b(4), 4.h & Appendix F. Notably, this process is distinct from that for the adjudication of claims for benefits—which is covered by its own internal manuals[5]—thus confirming that the AOJs play no role in considering and resolving Rehabilitation Act complaints made to VA. Moreover, a veteran aggrieved by the outcome of the internal process set out in the Handbook would still have recourse to federal district courts.[6] Using § 511 to preclude such recourse, as the VA Defendants urge here, does not make sense.

---

for dependency and indemnity compensation," "claim for pension," "claim for service connection," "claim for an earlier effective date," "claim for TDIU" and others. 22 Vet. App. at 451-52; *see also* 38 U.S.C. § 5110(a) (setting "the effective date of an award based on an initial claim, or a supplemental claim, of compensation, dependency and indemnity compensation, or pension").

[4] VA Handbook 5975.6 is available through https://www.va.gov/vapubs/.

[5] *See, e.g.*, VBA Manual M21-1 Adjudication Procedures Manual; VBA Manual M21-5 Appeals and Reviews; VBA Manual M22-4 Education Service.

[6] Veterans may skip the internal process, however, as "private plaintiffs suing under [the Rehabilitation Act] need not first exhaust administrative remedies." *Smith v. Barton*, 914 F.3d 1330, 1338 (9th Cir. 1990).

Second, neither the Board nor CAVC has jurisdiction to review an AOJ's putative decision on a Rehabilitation Act complaint. As detailed above, Board jurisdiction is limited to the review of decisions made by the AOJ. Though it has authority to decide "[a]ll questions" that are necessary to its decision on the matter, 38 U.S.C. § 7104(a), the Board may not "adjudicate [a] claim in the first instance," *Jarrell*, 20 Vet. App. at 331. CAVC likewise may review only final Board decisions. 38 U.S.C. § 7252. Thus, if the AOJ cannot adjudicate a complaint under the Rehabilitation Act, neither can the Board or CAVC.[7] It is therefore unsurprising that CAVC has declared that "neither the Board nor the Court is authorized to hear actions brought under" the Rehabilitation Act or the ADA. *Camacho v. Nicholson*, 21 Vet. App. 360, 366 (2007). There could not be a clearer statement that the VA Defendants' jurisdictional argument is wrong.

In sum, VA's claims adjudication process cannot consider or decide Plaintiffs' Rehabilitation Act causes of action.

> **B.    Dismissing the Rehabilitation Act causes of action under § 511 would deprive veterans of a forum to bring them.**

Should this Court rule that § 511 deprives it of jurisdiction over the Rehabilitation Act causes of action, Plaintiffs would have no forum in which

---

[7] Arguably, under its authority to decide "[a]ll questions" necessary to its decision, the Board (and thus CAVC) could consider a veteran's argument that a particular decision of the AOJ on a claim for benefits violates the Rehabilitation Act. The Board appears to have done so, though rarely. *See, e.g.*, *In re [Title Redacted by Agency]*, No. 0401835, 2014 WL 1974996 (Bd. Vet. App. Jan. 16, 2014) (considering argument that VA's decision on a claim for fee-basis care violated the Rehab Act); *In re [Title Redacted by Agency]*, No. 0533845, 2005 WL 3924108 (Bd. Vet. App. Dec. 15, 2005) (same). (Based on the factual recitations, these cases involve the same claim by a single veteran.) This was the situation in *Traynor v. Turnage*, 485 U.S. 535 (1988), the ruling the VA Defendants argue prompted Congress to pass the VJRA and expand the scope of § 511. ECF 37-1, at 11-12. *Traynor* arose when an individual veteran "sought review" in federal district court of a VA decision denying him benefits. 485 U.S. at 538-39. But unlike *Traynor*, Plaintiffs' Rehabilitation Act causes of action here do not allege that specific individual claims decisions violate the Rehabilitation Act.

to bring those claims. As set forth above, the VA claims adjudication process is not authorized to consider and decide Rehabilitation Act complaints. In turn, if the Court were to accept the VA Defendants' flawed reading of § 511 and dismiss the Rehabilitation Act causes of action, doing so would also oust Plaintiffs from this Court and other Article III courts. Based on Swords' review of prior briefing in this matter, even Defendants do not argue that there is an alternative forum available to Plaintiffs—much less that the VA claims adjudication is appropriate. There are none, and it is not.

The lack of an alternative forum confirms that the Court has jurisdiction here notwithstanding § 511. "[T]he availability of review by both [CAVC] and [CAFC] evinces Congress's intent to protect the federal courts and VA from time-consuming veterans' benefits litigation, while providing a specialized forum [where] complex decisions about benefits can be made." *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1032 (9th Cir. 2012). Conversely, then, where the claims involve a non-benefits statute—such as the Rehabilitation Act here—and the VA claims process is not authorized to adjudicate a complaint under that statute, the claims must be brought in district court. *Cf. Watson v. McDonough*, No. 21-3700, 2021 WL 5316773, at *5 (Vet. App. Nov. 16, 2021) (CAVC lacked authority to "entertain [claimant's] allegations of error that are in furtherance of his FTCA claim"); *In re Names Redacted by Agency*, 1992 BVA LEXIS 3662, at *2-3 (Bd. Vet. App. Feb. 25, 1992) (claims under FTCA were "outside the [Board's] jurisdiction").

Moreover, were the Court to decline to exercise jurisdiction based on § 511, the purposes of the statute would be frustrated. The Supreme Court has explained the rationales behind § 511: to ensure that "*veterans' benefits claims* will not burden the courts and [VA] with expensive and time-consuming litigation" and that "the technical and complex determinations and applications of [VA] policy connected with *veterans' benefits decisions* will

be adequately and uniformly made [by the agency]." *Johnson v. Robinson*, 415 U.S. 361, 370 (1974) (addressing predecessor statute § 211(a) (emphasis added)). Those policy justifications simply do not apply where, as here, the asserted causes of action are not "veterans' benefits claims." By dismissing the Rehabilitation Act causes of action under § 511, the Court would not be deferring to VA's and CAVC's jurisdiction, as they have none. To the contrary, dismissal here would leave disabled veterans—unlike others with disabilities—with no judicial forum at all to bring a discrimination claim.

## CONCLUSION

Congress did not leave veterans without a forum to challenge how VA systems operate. Because the VA claims process is not an authorized forum to adjudicate Plaintiffs' Rehabilitation Act causes of action, and Plaintiffs have no other forum, the Court should decline to apply § 511 and instead decide that it has jurisdiction over those causes of action. The Court can and should hear this systemic challenge.

Dated: October 6, 2023  Respectfully submitted,

By: /s/ Peter Perkowski

Maureen E. Siedor
**SWORDS TO PLOWSHARES**
1060 Howard Street
San Francisco, CA 94103

Peter E. Perkowski
**PERKOWSKI LEGAL, PC**
515 S. Flower St.
Suite 1800
Los Angeles, CA 90071

Daniel Nagin
Dana Montalto
Margaret Kuzma
**LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL**
122 Bolyston Street
Jamaica Plain, MA 02130

Attorneys for Amicus Curiae
SWORDS TO PLOWSHARES