# EXHIBIT

Evelyn Danforth-Scott (SBN 343116)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (212) 549-2653
Fax: (415) 255-1478
EDanforth-Scott@aclu.org

Michael Kaufman (SBN 254575)
AMERICAN CIVIL LIBERTIES
   FOUNDATION OF SOUTHERN
   CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: (213) 977-5232
mkaufman@aclusocal.org

Bridget Lavender
   (*pro hac vice* forthcoming)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
blavender@aclu.org

Attorneys for Proposed Amici Curiae
LEGAL SCHOLARS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY POWERS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DENIS RICHARD MCDONOUGH, in his official capacity as Secretary of Veterans Affairs, *et al.*,<br><br>*Defendants*. | Case No.: 2:22-cv-08357 DOC (JEMx)<br><br>*Hon. David O. Carter*<br><br>**[PROPOSED] BRIEF OF LEGAL SCHOLARS AS *AMICI CURAIE* IN SUPPORT OF PLAINTIFFS**<br><br>Date: Nov. 10, 2023<br>Compl. filed: Nov. 15, 2022<br>*Trial Date*: *No trial date set* |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

IDENTITY AND INTEREST OF *AMICI CURIAE* ........................................... v

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 2

    I.  This Court retains jurisdiction over Plaintiffs' Rehabilitation Act claims. ........................................................................................................ 2

        A. Basic principles of statutory interpretation require construing jurisdiction stripping language narrowly ....................... 2

        B. The text of Section 511 extends only to judicial "review" of previous benefit determinations—something Plaintiffs do not seek ....................................................................................... 3

        C. The Government's position would deprive veterans of any meaningful opportunity to enforce their rights under the Rehabilitation Act ....................................................................... 7

    II.  This plain text reading of Section 511 is fully consistent with the Ninth Circuit's reasoning in *VCS*. ............................................................ 9

CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acre v. United States*,
 899 F.3d 796 (9th Cir. 2018) .................................................................................2

*ANA International, Inc. v. Way*,
 393 F.3d 886 (9th Cir. 2004) .................................................................................2

*Axon Enterprise, Inc. v. Federal Trade Commission*,
 598 U.S. 175 (2023) ................................................................................ 1, 2, 3, 7

*B&B Hardware, Inc. v. Hargis Industries, Inc.*,
 575 U.S. 138 (2015) ...............................................................................................7

*Bax v. Doctors Medical Center of Modesto, Inc.*,
 No. 1:17-cv-01348, 2021 WL 3733113 (E.D. Cal. Aug. 24, 2021) .............................9

*Blue Water Navy Vietnam Veterans Association, Inc. v. McDonald*,
 830 F.3d 570 (D.C. Cir. 2016) ............................................................................1, 4

*Broudy v. Mather*,
 460 F.3d 106 (D.C. Cir. 2006) ................................................................... 1, 4, 10

*Camacho v. Nicholson*,
 21 Vet. App. 360 (Vet. App. 2007) ......................................................................8, 9

*Dismuke v. United States*,
 297 U.S. 167 (1936) ................................................................................................2

*Federal Energy Regulatory Commission v. Electric Power
 Supply Association*,
 577 U.S. 260 (2016) ................................................................................................6

*Floyd-Mayers v. American Cable Co.*,
 732 F. Supp. 243 (D.D.C. 1990) .............................................................................6

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
 561 U.S. 477 (2010) ................................................................................................3

*Hanlin v. United States*,
    214 F.3d 1319 (Fed. Cir. 2000).................................................................................4

*INS v. St. Cyr*,
    533 U.S. 289 (2001)....................................................................................................2

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018)..............................................................................................3, 7

*Sierra v. City of Hallandale Beach*,
    904 F.3d 1343 (11th Cir. 2018)................................................................................5

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) .................................................................................4

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994).............................................................................................3, 7

*Torres v. United States Department of Homeland Security*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019)..................................................................7

*Traynor v. Turnage*,
    485 U.S. 535 (1988)................................................................................................11

*Tunac v. United States*,
    897 F.3d 1197 (9th Cir. 2018)..............................................................................1, 4

*Veterans for Common Sense v. Shinseki*,
    678 F.3d 1013 (9th Cir. 2012) ............................................................... 1, 4, 9, 10

*Wilkie v. Robbins*,
    551 U.S. 537 (2007)...................................................................................................2

*Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004)....................................................................................2

**STATUTES**

29 U.S.C. § 794a ................................................................................................................9

38 U.S.C. § 5100 ................................................................................................................9

38 U.S.C. § 511 ............................................................................................... *passim*

38 U.S.C. § 7104 ......................................................................................................7

38 U.S.C. § 7251 ......................................................................................................7

38 U.S.C. § 7261 ......................................................................................................7

38 U.S.C. § 7292 ......................................................................................................7

8 U.S.C. § 1252(g) ...................................................................................................3

**REGULATIONS**

38 C.F.R. § 20.3(e) ..................................................................................................8

38 C.F.R. § 3.1(p) ....................................................................................................8

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 100-963 (1988),
    *reprinted in* 1988 U.S.C.C.A.N. 5782 ...........................................................6, 11

## IDENTITY AND INTEREST OF *AMICI CURIAE*

Amici Erwin Chemerinsky, David Marcus, Pamela Karlan, Judith Resnik, Laurence Tribe, Michael Wishnie, and Adam Zimmerman are law professors from leading academic institutions. Their scholarship focuses on constitutional law, federal civil rights law, the jurisdiction of the federal courts, alternative adjudicatory schemes, and the law of administrative agencies, and they have published extensively on these topics in national law reviews, best-selling books, and popular media outlets. Amici have also litigated major cases on structural constitutional law, the federal civil rights statutes, agency adjudication processes, and the power of the Article III courts, including as lead counsel delivering oral argument before the United States Supreme Court. *See, e.g.*, *Bostock v. Clayton Cnty.*, 590 U.S. ___ (2020); *Franchise Tax Bd. of California v. Hyatt*, 587 U.S. ___ (2019); *Bush v. Gore I*, 531 U.S. 70 (2000).

The scope of the jurisdiction-stripping provision of the Veterans' Judicial Review Act thus falls comfortably within amici's domains of scholarly expertise, and the statute's proper interpretation is of significant interest to them.

## INTRODUCTION

The Veterans' Judicial Review Act ("VJRA") does not withdraw this Court's jurisdiction over Plaintiffs' Rehabilitation Act claims. The jurisdiction-stripping language in Section 511 prohibits federal district courts from second-guessing the Secretary of Veterans Affairs' previous judgments in individualized benefit determinations. *See, e.g.*, *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc) ("*VCS*"). But, consistent with that statute's plain text and the Ninth Circuit's longstanding principle that even indisputable jurisdiction-stripping language must be narrowly construed, Section 511 is limited to "barr[ing] review in the district court of decisions that the Secretary has actually made." *Blue Water Navy Viet. Veterans Ass'n, Inc. v. McDonald*, 830 F.3d 570, 575 (D.C. Cir. 2016). Section 511 does not vest the VJRA's special review process with exclusive purview over all statutes that implicate veterans' care, particularly not those outside the agency's core areas of expertise. *Broudy v. Mather*, 460 F.3d 106, 112 (D.C. Cir. 2006); *see also Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023). And Section 511 is limited to determinations about benefits actually offered by the agency; it does not cover "all action or inaction by the VA." *Tunac v. United States*, 897 F.3d 1197, 1203 (9th Cir. 2018).

Here, Plaintiffs do not seek review of the Secretary's prior benefit decisions. Instead, in keeping with the Rehabilitation Act's promises, they seek reasonable accommodations to access whatever benefits the Secretary has already accorded them—accommodations that exist outside of statutes the VA administers and which do not qualify as benefits within the agency's own definition of the term. To the extent Plaintiffs' claims require this Court to consider past benefit determinations, it is merely to *acknowledge* the Secretary's prior findings of fact and conclusions of law, something Article III courts routinely do for expert agency determinations. This Court thus retains jurisdiction.

Strengthening that conclusion, the Government's position would deprive Plaintiffs of a meaningful forum to air their claims. Neither the VJRA, nor its implementing regulations, nor the VA's own internal practices contemplate adjudicating Rehabilitation Act claims of this sort through the VJRA's specified dispute resolution process. Even if they did, the VA lacks the power to issue the full remedies Congress authorized for violations of the Rehabilitation Act, including the injunctive relief Plaintiffs seek here. This Court should avoid reading the one statute as foreclosing relief under the other—a result Congress "rarely" expects even when it crafts otherwise-exclusive agency review schemes, *Axon*, 598 U.S. at 186.

## ARGUMENT

**I. This Court retains jurisdiction over Plaintiffs' Rehabilitation Act claims.**

*A. Basic principles of statutory interpretation require construing jurisdiction stripping language narrowly.*

Congress drafts legislation against a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). To rebut that presumption, a statute must contain "compelling" language to the contrary. *Dismuke v. United States*, 297 U.S. 167, 172 (1936). This presumption in favor of Article III jurisdiction applies with equal force for statutes that inarguably limit some aspects of federal courts' reach. "Even where the ultimate result" is to "limit judicial review," the "narrower construction of a jurisdiction-stripping provision is favored over the broader one." *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004); *see also Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) (jurisdiction-stripping language should not be read "broadly" where it can be "subject to a 'much narrower' interpretation"), *overruled on other grounds by Wilkie v. Robbins*, 551 U.S. 537 (2007).

Consider, for example, *Acre v. United States*, 899 F.3d 796 (9th Cir. 2018). There, the Ninth Circuit held that a non-citizen could proceed with FTCA claims

brought in the district court based on injuries he suffered when the Attorney General wrongfully executed a removal order against him. Although 8 U.S.C. Section 1252(g) strips Article III courts of jurisdiction over "any cause or claim . . . arising from the decision or action by the Attorney General" to "execute removal orders," the Ninth Circuit declined to read such language to literally "extend to *any* action taken in connection with a removal order." *Id.* at 799 (emphasis in original). Rather, relying on "the express instructions of the Supreme Court, our precedent, and common sense," it construed the scope of the relevant jurisdiction-stripping provision "narrowly" and permitted suit. *Id.* at 800; *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 840–41 (2018) (plurality).

In the context of statutory review schemes like the one supplied by the VJRA, otherwise-indeterminate jurisdictional grants must also be read against the presumption that "the point of special review provisions" is generally "to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Axon*, 598 U.S. at 186. Where a claim falls outside the agency's bailiwick, "courts are at no disadvantage" to evaluate it, diminishing Congress's underlying rationale for exclusive agency review. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994).

> B. The text of Section 511 extends only to judicial "review" of previous benefit determinations—something Plaintiffs do not seek.

Here, Section 511's jurisdiction-stripping language withdraws Article III jurisdiction over a specific subset of claims. The statute contains two requirements: It prohibits federal district courts from (1) "review[ing]" any "decision of the Secretary" as to (2) "questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Together, those clauses prohibit "review in the

district court of decisions that the Secretary has actually made," *Blue Water Navy Viet. Veterans Ass'n*, 830 F.3d at 575, in "the context of an individual veteran's VA benefits proceedings," *VCS*, 678 F.3d at 1023.

That targeted displacement of jurisdiction incorporates several meaningful limitations. Critically, Section 511 does not "require the Secretary, and only the Secretary, to make all decisions related to laws affecting the provision of benefits." *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000). Instead of granting the agency "*exclusive* jurisdiction to construe laws affecting the provision of veterans benefits" or to "consider all issues that might somehow touch upon whether someone receives veterans benefits," Section 511 "simply gives the VA authority to consider" questions about how specifically to provide for veterans—including for factors such as ease of access—when it makes "a decision about benefits." *Broudy*, 460 F.3d at 112 (emphasis in original). Claims that otherwise touch on the agency's provision of benefits remain justiciable through standard Article III review so long as they do not seek to second-guess the VA's pre-existing, individualized determinations. *Id.*

Relatedly, Section 511 does not capture "all action or inaction by the VA." *Tunac*, 897 F.3d at 1203 (quoting *Thomas v. Principi*, 394 F.3d 970, 974–75 (D.C. Cir. 2005)). It encompasses only those benefits Congress has already provided for veterans through the agency, not any possible action the VA may take outside of the precisely-delineated benefit schemes Congress gave it the power to administer.

Finally, Section 511 does not reach claims that "would not possibly have any effect on the benefits" a veteran has "already been awarded," even where those claims turn intimately on fact-bound, individualized evaluations of the agency's past provision of benefits. *VCS*, 678 F.3d at 1023 (citation and quotations omitted). For example, medical malpractice claims against the VA generally remain subject to district court review. *Id.*

Here, Plaintiffs' Rehabilitation Act claims fall beyond the reach of Section 511 several times over. First, they do not ask the court to "review[]" any prior benefit decision. Far from seeking to dislodge, undermine, or otherwise revise them, Plaintiffs take the Secretary's prior determinations of law and fact about their eligibility for benefits as a given. Plaintiffs instead contest their ability to *reach* previously awarded benefits on account of their significant disabilities. And accommodations to access benefits are analytically distinct from the underlying benefit awards themselves; for example, it would stretch the text of Section 511 well past its breaking point to suggest a disabled veteran who sues the VA under the Rehabilitation Act seeking wheelchair-friendly ramps at the entryway to an agency medical facility had sought judicial "review" of a past benefit determination.

Indeed, Plaintiffs do not even seek "benefits" within the agency's own understanding of the term. The statutes the VA administers do not provide permanent supportive housing for unhoused veterans, and comparable existing programs fall chiefly under the purview of the Department of Housing and Urban Development, not the VA. *See* Br. of *Amicus Curiae* Swords to Plowshares at 12 n.2, ECF No. 92.

Moreover, although rights conferred by the Rehabilitation Act surely "affect[]" the provision of veterans' benefits in the most literal possible sense, § 511, neither a common-sense reading of the statutory text nor traditional limitations on agency review schemes dictate that the VJRA's review process commands exclusive jurisdiction over all Rehabilitation Act Claims. These Plaintiffs seek reasonable accommodations under a statute of general applicability—one that Congress passed to hold the federal government accountable by creating private rights enforceable through suit, not a statute that vests any one expert agency (let alone the VA specifically) with an exclusive grant of administrative and decision-making authority based on the agency's specialized expertise. *Cf. Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1351–52 (11th Cir. 2018) (jurisdiction-stripping

statute did not give the FCC exclusive jurisdiction over Rehabilitation Act claims because "the FCC has no expertise" on "what constitutes a violation under the Rehabilitation Act"); *Floyd-Mayers v. Am. Cab Co.*, 732 F. Supp. 243, 247 (D.D.C. 1990) (despite administrative commission's "greater expertise in its specialized field," Article III courts are "better-equipped to resolve disputes arising out of allegations of discrimination in violation of federal . . . civil rights statutes"). And open-ended clauses that delineate an administrative agency's authority in this manner should generally be given "a non-hyperliteral reading," to "prevent the statute from assuming near-infinite breadth." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 278 (2016) (narrowly constructing agency's power to regulate practices "affecting" electricity rates).

      The prospect that this Court will first need to "determine whether individual Plaintiffs are entitled to VA benefits" and then verify "the scope of those benefits," VA's Reply in Supp. of Mot. to Dismiss at 8–9, ECF No. 57, is not to the contrary. Plaintiffs have asked the district court to recognize their existing entitlement to benefits solely because those entitlements serve as the factual predicate to their denial-of-access Rehabilitation Act claims. But identifying objectively verifiable background information about Plaintiffs by drawing on an administrative agency's pre-determined (and here undisputed) record is not remotely the same as asking this Court to "review" that agency's underlying determinations. To the best of amici's knowledge, no jurisdiction-stripping provision has ever been interpreted to preclude an Article III court from merely acknowledging the fact of an agency's previous factual findings in ancillary litigation. Indeed, reading the VJRA to prohibit judicial recognition of the Secretary's underlying benefits determinations would undermine the statute's very purpose, which was to preserve the agency's primacy in "technical VA decision-making." H.R. Rep. No. 100-963, at 20–21, 27–28 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5802–03, 5809–10. Equally to the point, reading the

VJRA to prohibit judicial recognition of the Secretary's underlying benefits determinations would have perverse consequences more generally: it could prevent the agency's underlying determinations from having preclusive effect in subsequent Article III proceedings even when the standard requirements for issue preclusion are otherwise met, despite the "longstanding" principle the "courts may take" those determinations "as given." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (quotations omitted). This Court should resist such a counter-productive reading of Section 511.

> *C. The Government's position would deprive veterans of any meaningful opportunity to enforce their rights under the Rehabilitation Act.*

As if these building blocks of statutory interpretation were not enough to exercise jurisdiction over Plaintiffs' Rehabilitation Act claims, practical considerations likewise counsel in favor of district court review. Because Congress "rarely allows claims about agency action to escape effective judicial review," even an otherwise-exclusive statutory review scheme may not displace Article III jurisdiction where doing so would "'foreclose all meaningful judicial review' of the claim." *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212–13); *see also Jennings*, 138 S. Ct. at 840 (plurality) (refusing to interpret jurisdiction stripping provision so broadly as to make certain claims "effectively unreviewable"). That is particularly true where forcing a claimant to proceed through a special statutory review scheme would make the form of relief he seeks unavailable. *See Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1049 (C.D. Cal. 2019).

Neither the VJRA nor its implementing regulations authorize VA to review Plaintiffs' Rehabilitation Act claims. Those authorities establish only a limited framework for adjudicating veterans benefit claims. *See generally* 38 U.S.C. §§ 7104, 7251, 7261, 7292(a), (c), (d)(1). Under the statute, veterans must first file individual "claims" for "benefits" through the VA itself; they then may challenge

those determinations through the VJRA's special statutory review scheme. The agency's regulations, in turn, define a "claim" as a request for the "determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by the [VA] submitted on an application form prescribed by the Secretary." 38 C.F.R. § 3.1(p). Benefits encompass the "payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the [VA] pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e).

Those definitions contain two relevant limitations. First, VA regulations permit the agency's frontline processing offices to consider veterans' claims for benefits only "under the laws administered" by the VA. 38 C.F.R. § 3.1(p). But the Rehabilitation Act is not a law administered by the VA; it is a federal anti-discrimination statute that cuts across agencies. Driving this point home, VA forms do not even allow veterans to present Rehabilitation Act "claims" or seek relief under the statute, as required by 38 C.F.R. § 3.1(p). Second, accommodations sought under the Rehabilitation Act do not fall within the definition of "benefits" authorized by VA regulations. 38 C.F.R. § 20.3(e). Plaintiffs have no "entitlement to" permanent supportive housing "under laws administered by the" VA, *id.*, and the VJRA thus provides them with no mechanism by which to make these claims. These two restrictions mean Plaintiffs' Rehabilitation Act claims are neither "benefits" within the meaning of the VJRA review scheme, nor "claims" susceptible to its adjudication. The Court of Appeals for Veterans Claims has even expressly recognized as much, explaining "neither the [Board of Veterans Appeals] nor th[is] Court is authorized to hear actions brought under" the Rehabilitation Act. *Camacho v. Nicholson*, 21 Vet. App. 360, 366 (Vet. App. 2007).

Even if Plaintiffs could pursue their Rehabilitation claims through the VJRA adjudication scheme—and they cannot—that process cannot grant them the

injunctive relief they seek. Rehabilitation Act claimants may recover the full range of "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a. This means "compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract." *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, No. 1:17-cv-01348, 2021 WL 3733113, at *31 (E.D. Cal. Aug. 24, 2021). The VJRA's review system, by contrast, is trained at resolving individual veterans' "claims" for benefits under the VA's laws. *See generally* 38 U.S.C. § 5100 *et seq*. Refereeing the claims administration process is a far cry from awarding the full suite of remedies available under the Rehabilitation Act. *Camacho*, 21 Vet. App. at 366.

In short, dismissing Plaintiffs' Rehabilitation Act claims on the basis of Section 511 would leave veterans in a jurisdictional no man's land—preventing veterans from pursuing such claims in federal district court *and* the VJRA adjudication process. Surely Congress did not intend that unusual result.

## II. This plain text reading of Section 511 is fully consistent with the Ninth Circuit's reasoning in *VCS*.

Holding that Section 511 does not reach Plaintiffs' Rehabilitation Act claims fits comfortably with the Ninth Circuit's prior caselaw interpreting the VJRA. In its most recent extended treatment of Section 511, *Veterans for Common Sense v. Shinseki*, an en banc 9th Circuit concluded that district courts lacked jurisdiction over class-wide claims challenging the VA's lengthy processing times for mental health treatment. The court began by reasoning it would "undoubtedly" lack jurisdiction to consider an individual veteran's claim of "unreasonabl[e] delay[s]" in the provision of mental health care. *VCS*, 678 F.3d at 1026. It then rejected the plaintiffs' efforts to "circumvent" that jurisdictional bar "by disavowing relief on behalf of any individual veteran" and repackaging their claims as an attack on systemic failures. *Id.* Ultimately, adjudicating the plaintiffs' claims would still

[PROPOSED] BRIEF OF *AMICI CURIAE*
LEGAL SCHOLARS 9 Case No.: 2:22-cv-08357 DOC (JEMx)

require "evaluating the circumstances of individual veterans and their requests for treatment" *and* "determining whether the VA handled those requests properly." *Id.* at 1028. Section 511 therefore barred district court review.

These Rehabilitation Act claims, however, are sharply distinguishable from the separate constitutional and statutory claims in *VCS*. Plaintiffs have not asked this Court to reconsider the VA's benefit determinations by dressing up indisputably barred individual claims as system-level problems. Their claims do not attack the VA's adherence to statutes it has been authorized to administer, nor its provision of benefits within the agency's own definition of the term. They take the VA's prior actions administering its own programs for granted, at both an individual and a systemic level. Instead, they seek to vindicate a separate statutory right, created under a law of general applicability, that would enable them to access those pre-determined and undisputed benefits.

Nor does the general analytical approach in *VCS* counsel against exercising jurisdiction here. *VCS* does not dislodge the Ninth Circuit's general maxim that jurisdiction-stripping provisions must be read narrowly, nor the longstanding principles that limit the exclusive reach of special statutory review schemes. And *VCS* itself expressly invokes the D.C. Circuit's more detailed approach to applying Section 511, which that Circuit has developed the course of its extensive consideration of jurisdiction-stripping under the VJRA—an approach which emphasizes that Section 511 does not give the Secretary "*exclusive* jurisdiction" over "all issues that might somehow touch upon whether someone receives veterans benefits," *Broudy*, 460 F.3d at 112 (emphasis in original); *see VCS*, 678 F.3d at 1030 n.21 (applying *Broudy*'s test but distinguishing its facts).

Finally, *VCS*'s characterization of Congress's goals in passing the VJRA also does not counsel against exercising jurisdiction. *VCS* cited one House Report as indicative of Congress's purpose in enacting Section 511. *See VCS*, 678 F.3d

at 1021. Legislative history is an increasingly disfavored means of divining statutory meaning, particularly where—as here—text alone sheds sufficient light on the question at hand. Nevertheless, to the extent that source is relevant to resolving this motion, it is fully consistent with adjudicating Plaintiffs' claims.

The House Report in question discusses Section 511 against the backdrop of the Supreme Court's then-recent decision in *Traynor v. Turnage*, 485 U.S. 535 (1988). There, the Court had allowed district court jurisdiction over a claim alleging that the VA's denial of certain benefits based on a veteran's alcoholism violated his Rehabilitation Act rights. H.R. Rep. No. 100-963, at 21. Congress passed Section 511 to reassert the primacy of "technical VA decision-making" in such individual benefit determinations. *Id.*

But *Traynor*, the same report observes, "involve[d] an individual's application for benefits, and the Administrator's refusal to grant such benefits under laws providing benefits to veterans." *Id.* It follows that in responding to *Traynor*, Congress did not mean to insulate the VA from independent judicial oversight with respect to the full universe of possible statutory challenges affecting veterans' benefits, including any possible challenge brought under the Rehabilitation Act. It merely meant to insulate the VA from judicial second-guessing over the same kind of individual benefit determinations at the heart of *Traynor* itself: those already pressed before the agency and consummated by the Secretary. That is a far cry from excluding any possible Rehabilitation Act claim, particularly those that take prior benefit determinations for granted and do not even seek benefits offered under statutes administered by the VA.

# CONCLUSION

This Court retains jurisdiction over Plaintiffs' Rehabilitation Act claims. By its terms, Section 511 withdraws Article III jurisdiction only over claims that would require collateral judicial review of prior VA benefit awards. Plaintiffs here, however, take those past determinations as a given. Instead, in order to access benefits the VA has already awarded them, Plaintiffs seek disability accommodations that fall outside the scope of agency-awarded benefits and which arise under a statute the agency does not administer. This Court should not read Section 511 so expansively as to cover claims that fall well outside its plain text, particularly since doing so would deprive Plaintiffs of any meaningful alternative forum.

Dated: November 10, 2023

Respectfully submitted,

By: /s/ Evelyn Danforth-Scott

Michael Kaufman (SBN 254575)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF SOUTHERN
   CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Tel: (213) 977-5232
mkaufman@aclusocal.org

Evelyn Danforth-Scott (SBN 343116)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (212) 549-2653
Fax: (415) 255-1478
EDanforth-Scott@aclu.org

Bridget Lavender (*pro hac vice*
   forthcoming)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
blavender@aclu.org

*Attorneys for* Proposed Amici Curiae LEGAL SCHOLARS