BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director

BRAD P. ROSENBERG
Special Counsel

CODY T. KNAPP
JODY D. LOWENSTEIN
AGBEKO C. PETTY
TAYLOR PITZ
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel:    (202) 305-5200
Fax:    (202) 616-8460
brad.rosenberg@usdoj.gov
cody.t.knapp@usdoj.gov
jody.d.lowenstein@usdoj.gov
agbeko.c.petty@usdoj.gov
taylor.n.pitz@usdoj.gov

*Counsel for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY POWERS, *et al.*, | Case No. 2:22-cv-08357-DOC-JEM |
| Plaintiffs, | **FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| DENIS RICHARD MCDONOUGH, in his official capacity as Secretary of Veterans Affairs; *et al.*, | DATE:    MAY 2, 2024<br>TIME:    11:00 AM<br>PLACE:    COURTROOM 10A<br>JUDGE:    HON. DAVID O. CARTER |
| Defendants. | |

BRIDGELAND RESOURCES, LLC,

Intervenor.

# TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Background ................................................................................................................. 2

I.    Plaintiffs' Lawsuit and Class Certification Request ................................................ 2

II.   Individual Plaintiffs' Housing and Health Status................................................ 4

III.  Currently Available Housing and Medical Services ............................................ 7

Argument..................................................................................................................... 8

I.    The proposed class does not satisfy Rule 23(a)'s requirements. ........................... 8

      A.    Commonality and Typicality ........................................................................ 9

            i.    Members of the proposed class have not suffered a
                  common injury. ....................................................................... 10

            ii.   Plaintiffs' Rehabilitation Act claims are not suitable for
                  class-wide resolution........................................................... 13

            iii.  Plaintiffs' proposed class representatives are not typical. ............. 18

      B.    Adequacy ................................................................................................. 21

      C.    Numerosity................................................................................................ 23

II.   Plaintiffs' proposed class does not satisfy Rule 23(b)'s requirements................ 24

III.  Plaintiffs' proposed class is overbroad and insufficiently defined...................... 25

Conclusion.................................................................................................................. 25

i

1

## TABLE OF AUTHORITIES

2

### Cases

3

4
*A.M. v. San Bernadino Cty. Superintendent of Schs.*,
No. EDCV 19-1944 PSG (KKx), 2020 WL 5775169 (C.D. Cal. July 17, 2020) ...... 14

5

6
*Alaska Ctr. for Env't v. U.S. Forest Serv.*,
189 F.3d 851 (9th Cir. 1999) ................................................................................. 19

7

8
*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ................................................................................................. 18

9

10
*B.K. ex rel. Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ........................................................................9, 10, 25

11

12
*Brach v. Newsom*,
38 F.4th 6 (9th Cir. 2022) ...................................................................................... 19

13

14
*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) ............................................................................... 20

15

16
*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................................... 12

17

18
*DL v. Dist. of Columbia*,
713 F.3d 120 (D.C. Cir. 2013) .............................................................................. 14

19

20
*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ................................................................................. 10

21

22
*Fraihat v. USCIS*,
16 F.4th 613 (9th Cir. 2021) ................................................................................. 15

23

24
*Garcia v. Capistrano Unified Sch. Dist.*,
No. SA CV 16-2111-DOC (JCGx), 2018 WL 5858671 (C.D. Cal. Mar. 6, 2018) .... 16

25
*Garcia v. Johanns*,
444 F.3d 625 (D.C. Cir. 2006) .............................................................................. 14

26

27
*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982) ................................................................................................. 9

28

*Glover v. City of Laguna Beach,*
No. SACV 15-01332 AG (DFMx), 2017 WL 4457507 (C.D. Cal. June 23, 2017)... 20

*Greenpeace Action v. Franklin,*
14 F.3d 1324 (9th Cir. 1992) ...................................................................... 19

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .................................................................... 21

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) .............................................................. 10, 18

*Hardin v. Harshbarger,*
814 F. Supp. 703 (N.D. Ill. 1993) .............................................................. 23

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.,*
177 F.R.D. 360 (E.D. La. 1997) ................................................................. 22

*In re Northrop Grumman Corp. ERISA Litig.,*
No. CV 06-06213 MMM (JCx), 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ........ 22

*In re Schering Plough Corp. ERISA Litig.,*
589 F.3d 585 (3d Cir. 2009) ...................................................................... 10

*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.,*
628 F.2d 994 (7th Cir. 1980) ...................................................................... 10

*Kingdomware Techs., Inc. v. United States,*
579 U.S. 162 (2016) .................................................................................. 19

*Kline v. Wolf,*
88 F.R.D. 696 (S.D.N.Y. 1981) ................................................................. 22

*Lee v. Schmidt-Wenzel,*
766 F.2d 1387 (9th Cir. 1985) .................................................................... 19

*Love v. Johanns,*
439 F.3d 723 (D.C. Cir. 2006) ..................................................................... 9

*M.S. v. Brown,*
902 F.3d 1076 (9th Cir. 2018) .................................................................... 13

*Mark H. v. Hamamoto,*
    620 F.3d 1090 (9th Cir. 2010) ...................................................................15-16

*Munns v. Kerry,*
    782 F.3d 402 (9th Cir. 2015) ......................................................................... 11

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.,*
    9 F.4th 2101 (9th Cir. 2021) ........................................................................ 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC (Olean),*
    31 F.4th 651 (9th Cir. 2022) ........................................................... 9, 21, 23, 24

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ...................................................................................... 11

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ........................................................................... 8

*Pharmachemie B.V. v. Barr Lab'ys, Inc.,*
    276 F.3d 627 (D.C. Cir. 2002) ...................................................................... 19

*Probe v. State Teachers' Retirement Sys.,*
    780 F.2d 776 (9th Cir. 1986) ........................................................................ 25

*Republic of Marshall Islands v. United States,*
    865 F.3d 1187 (9th Cir. 2017) ...................................................................... 13

*Reynolds v. Brock,*
    815 F.2d 571 (9th Cir. 1987) ........................................................................ 15

*Santos v. TWC Admin., LLC,*
    No. CV 13-04799 MMM (CWx), 2014 WL 12558009 (C.D. Cal. Aug. 4, 2014)...... 22

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care,*
    968 F.3d 738 (9th Cir. 2020) ........................................................................ 12

*Summit Coastal Living, Inc. v. City of Costa Mesa,*
    No. SACV 18-1369 JVS (PJWx), 2020 WL 4353677 (C.D. Cal. May 1, 2020)......... 16

*Toyota Motor Mfg., Ky., Inc. v. Williams,*
    534 U.S. 184 (2002), *superseded by statute on other grounds*, U.S. Pub. L. 110-325
    (2009)............................................................................................................ 16

iv

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*,
    No. 12-cv-05080-CRB (JSC), 2014 WL 3404608 (N.D. Cal. July 11, 2014) ............. 23

*Vinson v. Thomas*,
    288 F.3d 1145 (9th Cir. 2002) .................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................. *passim*

*Willis v. City of Seattle*,
    943 F.3d 882 (9th Cir. 2019) .................................................................. 9, 14

*Woulfe v. Universal City Studios LLC*,
    No. 2:22-cv-00459-SVW-AGR, 2023 WL 6376152 (C.D. Cal. Aug. 28, 2023)........ 21

## Statutes

29 U.S.C. § 794(a) .................................................................. 15

## Rules

Fed. R. Civ. P. 12(h)(3) .................................................................. 18

Fed. R. Civ. P. 23 .................................................................. *passim*

Fed. R. Civ. P. 65(d) .................................................................. 25

## Administrative and Executive Materials

24 C.F.R. § 5.856 .................................................................. 13, 20

24 C.F.R. § 960.204(a)(4) .................................................................. 13

24 C.F.R. § 982.553(a)(2) .................................................................. 13

29 C.F.R. § 1630.2(j).................................................................. 16

## Other Authorities

5 Moore's Fed. Practice § 23.25(2)(c)(i) .................................................................. 22

7 Moore's Fed. Practice § 33.30(1) .................................................................. 23

32 Moore's Fed. Practice – Civil § 21.23 .................................................................. 20

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Press Release, U.S. Dep't of VA (Mar. 28, 2023),
    https://perma.cc/B999-6F9H....................................................................................... 7

Press Release, U.S. Dep't of VA (Apr. 11, 2023),
    https://perma.cc/2S8C-2FKS....................................................................................... 7

U.S. Dep't of VA, VA Greater Los Angeles Health Care Locations,
    https://perma.cc/X3KP-WZ58..................................................................................... 7

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## INTRODUCTION

The Department of Veterans of Affairs ("VA") and the Department of Housing and Urban and Development ("HUD") are committed to ending veteran homelessness. But, as the stories of the Plaintiffs in this case demonstrate, doing so requires individualized efforts targeted to the specific circumstances of particular veterans. Accordingly, determining whether Defendants have failed to provide veterans meaningful accommodations is not a question suitable to classwide resolution. For that reason, the Court should decline to certify the class Plaintiffs propose, as that class cannot satisfy the prerequisites of Federal Rule of Civil Procedure 23 and exceeds the bounds of this Court's Article III authority.

Plaintiffs move to certify a class of all homeless veterans with serious mental illness or traumatic brain injuries who reside in Los Angeles County as well as a subclass of all class members whose income (including veterans disability benefits) exceeds 50% of the area median income. Plaintiffs bring three claims under the Rehabilitation Act, two breach of fiduciary duty claims, an Administrative Procedure Act ("APA") claim, and a claim for accounting. Nine individuals and the National Veterans Foundation ("NVF") seek to represent a class seeking injunctive and declaratory relief against the VA and HUD. Specifically, Plaintiffs request injunctive relief requiring Defendants to provide thousands of units of permanent supportive housing on or near the VA's West Los Angeles Campus ("WLA Grounds"). This number substantially exceeds the number of units the VA committed to develop in the Master Plan 2022. Plaintiffs also request injunctive relief requiring Defendants to provide a host of other services, as well as an injunction prohibiting the VA from maintaining certain land use agreements. Plaintiffs further request a declaration that Defendants have violated the Rehabilitation Act and that the VA has breached fiduciary duties with respect to the WLA Grounds.

Plaintiffs, however, have failed to carry their burden to demonstrate that the proposed class satisfies Rule 23's prerequisites to class certification. *First*, the proposed class cannot satisfy Rule 23(a)(2)'s commonality requirement because Plaintiffs, along

with the members of the proposed class, do not share the same injuries. Plaintiffs'
disabilities and housing situations are too varied to represent a common injury, as
demonstrated by the individual Plaintiffs bringing suit. And aside from Plaintiffs'
injuries, Plaintiffs' Rehabilitation Act claims turn on questions that are not suited to
class-wide resolution. *Second*, some of Plaintiffs' proposed class representatives' factual
circumstances give rise to defenses that are not typical of the proposed class, like the
Plaintiffs who have already received permanent supportive housing on the WLA
Grounds. *Third*, Plaintiffs' failure to respond fully to Defendants' discovery requests
undermines that they are adequate representatives. And *fourth*, Plaintiffs have not carried
their evidentiary burden to demonstrate that the proposed class satisfies the numerosity
requirement.

Plaintiffs also cannot establish that the proposed class may be maintained under
Rule 23(b)(2). To the extent that members of the proposed class, like some of the
individual Plaintiffs, have already received permanent supportive housing, a single
injunction or declaration of the kind Plaintiffs seek would not provide relief to each
member of the class, as is required by Rule 23(b)(2).

Lastly, Plaintiffs' proposed class is overbroad and insufficiently defined. The
class definition encompasses members who are not eligible for VA medical benefits or
federal housing assistance, and this Court lacks jurisdiction over such individuals.
Additionally, the definition of the proposed class incorporates several ambiguous and
subjective criteria. Therefore, even if the Court is inclined to certify a class, that class
should be narrowed and defined more concretely.

<div align="center">

**BACKGROUND**

</div>

## I.    Plaintiffs' Lawsuit and Class Certification Request

Plaintiffs are the NVF and thirteen individuals who allege they are homeless or
formerly homeless veterans with disabilities. *See* Pls.' Mot. for Class Certification at 2,
ECF No. 167 ("Mot."). Plaintiffs filed their first amended class action complaint on
May 15, 2023. First Am. Compl., ECF No. 33 ("FAC").

<div align="center">

2

</div>

The FAC alleges seven causes of action. The first three are claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. FAC ¶¶ 307–323. Claims I and III allege that Defendants have unlawfully discriminated against Plaintiffs based on their disabilities because Defendants have not provided Plaintiffs with permanent supportive housing as an accommodation to access their VA medical benefits in the most integrated settings appropriate to their needs. *Id.* ¶¶ 307–314, 319–323. Claim II alleges that the applicable income restrictions for housing assistance eligibility discriminate against Plaintiffs on account of their disabilities. *Id.* ¶¶ 315–317. Claims IV and V allege that the VA has breached its fiduciary duties with regards to the WLA Grounds. *Id.* ¶¶ 324–339. Plaintiffs' APA claim contends that the VA's use of the WLA Grounds violates the West Los Angeles Leasing Act of 2016. *Id.* ¶¶ 340–42. And Claim VII alleges that the VA has failed to account for the proceeds, funds, and land use revenues for the leases on the premises of the WLA Grounds. *Id.* ¶¶ 343–350.

Plaintiffs seek injunctive and declaratory relief on a class-wide basis. *See* FAC ¶ 351, Prayer for Relief. Plaintiffs request detailed and sprawling injunctive relief requiring Defendants to provide appropriate permanent supportive housing to Plaintiffs and veterans with severe mental illness ("SMI") and traumatic brain injury ("TBI"). *Id.* Among other things, Plaintiffs request that this relief be provided for at least 3,500 homeless veterans; that the permanent supportive housing incorporate particular percentages of supportive services; that thousands more units of permanent supportive housing be provided in scattered-site homes near the WLA Grounds; that Defendants' supportive services comply with particular standards; that Defendants' outreach comport with Plaintiffs' directives; that Defendants implement specific assessment, intake, and personal care plan procedures in serving veterans; and that Defendants implement transportation services and subsidies for scattered-site permanent supportive housing. *Id.* Additionally, Plaintiffs request that the VA be enjoined from executing or maintaining particular land use agreements. *Id.* Plaintiffs

also seek declaratory relief that Defendants have violated the Rehabilitation Act and the VA has breached fiduciary duties with respect to the WLA Grounds.

On April 1, 2024, Plaintiffs moved to certify a class of "[a]ll homeless veterans with Serious Mental Illness or Traumatic Brain Injuries, who reside in Los Angeles County." Mot. at 2. Plaintiffs also moved to certify a subclass defined as "[a]ll Class Members whose income (including veterans disability benefits) exceeds 50% of the Area Median Income." *Id.* Plaintiffs request that the Court appoint Plaintiffs Jeffrey Powers, Deavin Sessom, Joseph Fields, Lavon Johnson, Laurieann Wright, Joshua Robert Petitt, Samuel Castellanos, Naryan Stibbie, Doe 1, and NVF as class representatives for the proposed class and Plaintiff Lavon Johnson as the representative for the proposed subclass. *Id.* at 2–3.

## II.    Individual Plaintiffs' Housing and Health Status

Plaintiff Jeffrey Powers is currently leasing and living in a permanent supportive housing unit located on the WLA Grounds. *See* Pls.' Resps. to Defs.' Req. for Admis., Response to Request Nos. 2, 3, 4, 5 attached as Exhibit A (herein referred to as "Responses to RFA"). Mr. Powers has "PTSD and spine degeneration." Pls.' Answers to Fed. Defs.' Interrogs., Answer to Interrogatory No. 6, attached as Exhibit B (herein referred to as "Answer to Interrogatory").

Plaintiff Joseph Fields is currently leasing and living in a permanent supportive housing unit located on the WLA Grounds. *See* Response to RFA Nos. 2, 3, 4, 5. Mr. Fields has "PTSD and Gulf War Syndrome." Answer to Interrogatory No. 6. He "experiences nightmares and suicidal ideation," and he has been diagnosed with TBI. *Id.* He also experiences severe back pain and tinnitus. *Id.*

Plaintiff Lavon Johnson is currently leasing and living in a permanent supportive housing unit located on the WLA Grounds. *See* Response to RFA Nos. 2, 3, 4, 5. Mr. Johnson "has service-connected disabilities, including PTSD and TBI." Answer to Interrogatory No. 6.

4

Plaintiff Joshua Robert Petitt is currently leasing and living in a permanent supportive housing unit located on the WLA Grounds. *See* Response to RFA Nos. 2, 3, 4, 5. He has been diagnosed with PTSD and TBI, and he experiences severe nightmares, and knee, back, and hearing issues. *See* Answer to Interrogatory No. 6.

Doe 1 is currently leasing and living in a permanent supportive housing unit located on the WLA Grounds. *See* Response to RFA Nos. 2, 3. She "experiences severe migraine headaches and tinnitus as a result of her military service." Answer to Interrogatory No. 6.

Plaintiff Deavin Sessom is leasing and lives in a housing unit in Brentwood, California, located within one mile of the WLA Grounds. Response to RFA Nos. 15, 16; Answer to Interrogatory No. 9. Mr. Sessom has PTSD as a result of sexual assault and trauma experienced during his military service, and he also has sleep apnea and tinnitus. Answer to Interrogatory No. 6.

Plaintiff Laurieann Wright is currently leasing a housing unit with assistance from a HUD-VASH tenant-based voucher in Lancaster, California. *See* Response to RFA No. 21; FAC ¶¶ 67–68, 73. She experiences SMI, including Bipolar II, PTSD, polysubstance use disorder, anxiety, and depression. Answer to Interrogatory No. 6. She also experiences seizures as a result of cerebral atrophy, and she was diagnosed with multiple sclerosis. *Id.*

Plaintiff Samuel Castellanos is currently living with Ms. Wright, who is leasing a housing unit with a HUD-VASH tenant-based voucher in Lancaster, California. *See* Response to RFA No. 21; FAC ¶¶ 67–68, 73. He has service-connected disabilities including PTSD and major depressive disorder. Answer to Interrogatory No. 6.

Plaintiff Naryan Stibbie has not applied for housing on the WLA Grounds. Answer to Interrogatory No. 7. It appears he has not been successful in finding housing. Answer to Interrogatory No. 13; Decl. of Naryan Stibbie, ¶ 8, ECF No. 167-16. Mr. Stibbie is subject to a registration requirement under a state sex offender registration program. Response to RFA No. 35. It appears he has been deemed ineligible for

5

housing services. Mot. at 22; Stibbie Decl. ¶ 8. Mr. Stibbie has been diagnosed with PTSD, and he also experiences service-connected physical disabilities including tinnitus, hearing loss, and knee and back pain. Answer to Interrogatory No. 6.

Plaintiff Glenn Surrette received an offer for a housing unit through HUD-VASH and PATH, but declined that offer because he could not live with his girlfriend. Response to RFA No. 9; FAC ¶ 117. Defendants are not aware of Mr. Surrette's current housing status. Mr. Surrette has been diagnosed with psychosis and disorganized schizophrenia. Answer to Interrogatory No. 6.

Plaintiff Jessica Miles's housing status is unclear. Ms. Miles has admitted that she is eligible for permanent supportive housing on the WLA Grounds, but it is unclear whether she has applied for such housing.[1] *See* Response to RFA Nos. 1, 2, 3, 8. Ms. Miles has service-connected disabilities, including PTSD and major depressive disorder, and she experiences severe back pain, bilateral arthritis, and a dislocated hip. Answer to Interrogatory No. 6.

Plaintiff Billy Edwards's housing status is unclear to Defendants. Mr. Edwards has PTSD and depression as well as a number of physical disabilities that make it difficult for him to walk. Answer to Interrogatory No. 6.

Doe 2 is currently leasing and living in a permanent supportive housing unit located on the WLA Grounds. *See* Response to RFA Nos. 2, 3. He has been diagnosed with PTSD, and he experiences "elevated paranoia and insomnia." Answer to Interrogatory No. 6.

---

[1] Plaintiff Jessica Miles answered several requests for admission inconsistently. In response to RFA No. 1, she both admitted and denied that she had "applied for Permanent Supportive Housing located on the WLA Grounds," and in response to RFA No. 8, she stated she "has not applied for Permanent Supportive Housing located on the WLA Grounds."

III.   **Currently Available Housing and Medical Services**

The VA has numerous clinics that provide healthcare services throughout the greater Los Angeles area, but its main healthcare facility in the region is the West Los Angeles VA Medical Center, which is located on the WLA Grounds. *See* U.S. Dep't of VA, VA Greater Los Angeles Health Care Locations, https://perma.cc/X3KP-WZ58.

Consistent with the revised Master Plan 2022, new permanent supportive housing on the WLA Grounds continues to open on a rolling basis. Two buildings opened recently, bringing the total to 233 permanent supportive housing units available for veterans experiencing homelessness. Press Release, U.S. Dep't of VA (Apr. 11, 2023), https://perma.cc/2S8C-2FKS. An additional 264 units are expected to open in 2024. Press Release, U.S. Dep't of VA (Mar. 28, 2023), https://perma.cc/B999-6F9H; *see also* U.S. Dep't of VA, Housing EUL Overview 2nd Quarter FY 2024 at 27–31, attached as Exhibit F (listing Buildings 207, 209, 208, and 205 as operational permanent supportive housing on the WLA Grounds and Buildings 156, 157, 402, 404, and MacArthur Field as permanent supportive housing under construction); Deposition Testimony of Andrew Strain ("Strain Dep.") at 85:14–18, attached as Exhibit D ("We have 233 units of permanent supportive housing that are open right now. By January of 2025 we expect to be at 500 units of permanent supportive housing. By the end of 2026, we'll have 730 units open on campus of permanent supportive housing.").

In addition to providing housing on the WLA Grounds, the VA places veterans in permanent housing in the Los Angeles area. In 2022, the VA helped secure 1,301 permanent housing placements to formerly homeless veterans, and in 2023, the VA placed 1,790 formerly homeless veterans in permanent housing. *See* Press Release, https://perma.cc/B999-6F9H; Deposition Testimony of Sally Hammit ("Hammit Dep.") at 82:9–10, attached as Exhibit E.

Separately, in September 2023, HUD announced that in light of "a small number of disabled veterans experiencing homelessness [who] receive income from veterans disability benefits and other sources in amounts that may push them above the very-

7

low income threshold (50% of area median income)," it would authorize public housing authorities to "use available vouchers to serve all eligible, VA-referred veterans with incomes up to 80% of the area median." Letter from Off. of Pub. & Indian Hous., U.S. Dep't of HUD (Sept. 26, 2023) (HUD00000315) ("HUD Letter"), attached as Exhibit H. HUD also announced it is "revising and updating the HUD-VASH Operating Requirements, and is strongly considering adding a new requirement that establishes the low-income limit (80% of area median income) as the applicable income eligibility limit for all HUD-VASH program admissions." *Id.*

<div align="center">

**ARGUMENT**

</div>

## I.    The proposed class does not satisfy Rule 23(a)'s requirements.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). Federal Rule of Civil Procedure 23 governs the certification of class actions. *Id.* at 345; Fed. R. Civ. P. 23.

Under Rule 23(a), Plaintiffs must establish that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See Wal-Mart*, 564 U.S. at 345.

"A party seeking class certification must affirmatively demonstrate his compliance" with Federal Rule of Civil Procedure 23. *Id.* at 350. Indeed, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 350–51 (citation omitted); *see also Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014) (same). Rule 23 "does not set forth a mere pleading standard," and courts therefore require parties seeking class certification "to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Parsons*, 754 F.3d at 674 (citation omitted). In the Ninth Circuit, Plaintiffs must prove that Rule 23's requirements are satisfied by a preponderance of the

<div align="center">

8

</div>

1  evidence. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC (Olean)*, 31 F.4th

2  651, 665 (9th Cir. 2022) ("[P]laintiffs must prove the facts necessary to carry the burden

3  of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the

4  evidence.").

5    *A. Commonality and Typicality*

6    Under Rule 23(a)(2), "class members may sue as representative parties only if

7  'there are questions of law or fact common to the class.'" *B.K. ex rel. Tinsley v. Snyder*,

8  922 F.3d 957, 967 (9th Cir. 2019) (quoting Fed. R. Civ. P. 23(a)(2)). But not every

9  "common" question satisfies Rule 23(a)(2)'s criterion: "at a sufficiently abstract level of

10  generalization, almost any set of claims can be said to display commonality." *Love v.

11  Johanns*, 439 F.3d 723, 729–30 (D.C. Cir. 2006) (citation omitted); *see also Wal-Mart*, 564

12  U.S. at 349. Plaintiffs must demonstrate that proposed class members are bound by

13  something more than having "suffered [from] a violation of the same provision of law."

14  *Wal-Mart*, 564 U.S. at 349–50. Instead, "[c]ommonality requires the plaintiff to

15  demonstrate that class members 'have suffered *the same injury*.'" *Id.* at 349–50 (emphasis

16  added) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)); *see also Willis v. City of

17  Seattle*, 943 F.3d 882, 885 (9th Cir. 2019).

18    In addition, class members' claims "must depend upon a common contention"

19  that is capable of "classwide resolution[.]" *Wal-Mart*, 564 U.S. at 350. This means "that

20  determination of its truth or falsity will resolve an issue that is central to the validity of

21  each one of the claims in one stroke." *Id.* In other words, "[w]hat matters to class

22  certification is not the raising of common 'questions'—even in droves—but rather, the

23  capacity of a class-wide proceeding to generate common answers apt to drive the

24  resolution of the litigation." *Id.* (citation omitted).

25    The commonality and typicality inquiries "tend to merge." *Id.* at 349 n.5. This is

26  because both commonality and typicality "serve as guideposts for determining whether

27  under the particular circumstances maintenance of a class action is economical and

28  whether the named plaintiff's claim and the class claims are so interrelated that the

interests of the class members will be fairly and adequately protected in their absence." *Id.* Typicality furthers Rule 23(a) by ensuring "that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).

Class certification should not be granted if the proposed class representatives are subject to "defenses unique" to them. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted); *see also J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class[.]"). A proposed class representative is not "typical" if his or her factual circumstances give rise to a defense that is not "typical of the defenses which may be raised against other members of the proposed class." *Hanon*, 976 F.2d at 508.

i.    Members of the proposed class have not suffered a common injury.

As detailed above, Plaintiffs bring three claims based on Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, two claims based on breach of fiduciary duty as trustee of a charitable trust, an APA claim, and a claim for accounting. *See* FAC ¶¶307–50. But the individual Plaintiffs—and the proposed class—cannot satisfy Rule 23(a)(2) by "[m]erely alleging a violation of the same provision of law." *Tinsley*, 922 F.3d at 967 (citation omitted). And critically, Plaintiffs face a fundamental obstacle to establishing commonality and typicality: Plaintiffs and the proposed class members do not share the "same injur[ies]." *Wal-Mart*, 564 U.S. at 350 (citation omitted); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Six Plaintiffs have already obtained the injunctive relief they seek: permanent supportive housing on the WLA Grounds. *See* FAC ¶ 351 (requesting the Court "enjoin Defendants from failing to provide Plaintiffs and veterans with SMI and TBI appropriate Permanent Supportive Housing"). Plaintiffs Jeffrey Powers, Joseph Fields,

10

1   Lavon Johnson, Joshua Robert Petitt, Doe 1, and Doe 2 aver that they are currently

2   leasing and living in permanent supportive housing units located on the WLA Grounds.

3   *See* Response to RFA Nos. 2, 3, 4, 5 (admitting Mr. Powers, Mr. Fields, Mr. Johnson,

4   Mr. Pettit Doe 1, and Doe 2's applications for housing on WLA grounds have been

5   approved, and they are currently leasing and living in housing units located on the WLA

6   Grounds); Answer to Interrogatory No. 7 (Mr. Fields, Doe 1, and Doe 2 received

7   housing on the WLA Grounds in May 2023); Decl. of Jeffrey Powers ("Powers Decl."),

8   ¶ 6, ECF No. 167-13 ("I moved into a unit in Building 205 on the WLA Grounds.").

9         For class certification purposes, unlike other members of the proposed class, in

10  the language of Article III standing, these Plaintiffs have not alleged any continuing or

11  present injury-in-fact to support injunctive relief or a declaratory judgment. "Past

12  exposure to illegal conduct does not in itself show a present case or controversy

13  regarding injunctive relief . . . if unaccompanied by any continuing, present adverse

14  effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). "Despite being harmed in the

15  past, [plaintiffs] must still show that the threat of injury in the future is 'certainly

16  impending' or that it presents a 'substantial risk' of recurrence for the court to hear their

17  claim for prospective relief." *Munns v. Kerry*, 782 F.3d 402, 411–12 (9th Cir. 2015)

18  (citation omitted). Although some Plaintiffs have indicated they have concerns about

19  losing their housing, no evidence in the record suggests that these Plaintiffs are at

20  substantial risk of losing their permanent housing. *See* Powers Decl. ¶ 6; *see infra* pp. 18–

21  20. Accordingly, these Plaintiffs have not established that they face any injury or

22  impending threat of injury and thus have not identified an injury similar to other

23  members of the proposed class.

24        Although other Plaintiffs may not have obtained permanent supportive housing

25  on the WLA Grounds, their precise circumstances are varied and do not reflect a

26  common injury. For instance, Plaintiff Deavin Sessom avers he is leasing and living in

27  a housing unit in Brentwood located within one mile of the WLA Grounds. Response

28  to RFA Nos. 15, 16; Answer to Interrogatory No. 9. It's therefore unclear whether or

<div align="center">11</div>

how Mr. Sessom is injured by Defendants' alleged failure to provide housing. Nor is it apparent how his housing prevents him from accessing his medical benefits on the WLA Grounds. At the very least, any injury arising from being housed close to, but not on, the WLA Grounds would be unique to Mr. Sessom's personal circumstances and not common to the broad class Plaintiffs wish to represent.

Plaintiffs Laurieann Wright and Samuel Castellanos' housing circumstances demonstrate that Mr. Sessom's injury is not common to the proposed class, and further highlight the range of experiences encompassed within Plaintiffs' proposed class. Ms. Wright and Mr. Castellanos are currently living in a housing unit with assistance from a HUD-VASH tenant-based voucher in Lancaster, California. *See* Response to RFA No. 21; FAC ¶¶ 67–68, 73. Thus, unlike other members of the proposed class, their injuries appear to stem, largely, from the distance between that housing and the WLA Grounds. *See, e.g.,* FAC ¶ 67 (explaining this housing is located "more than [an] hour away from her primary caregiver" and "the VA has discontinued the rideshare benefit"). Their injuries are therefore distinct from proposed class members like Mr. Sessom who are housed close to the WLA Grounds, as well as proposed class members without housing.

And even aside from the proximity of housing to the WLA Grounds, other aspects of Plaintiffs' individual circumstances demonstrate the unique nature of their alleged injuries. For instance, in contrast to other individual Plaintiffs or members of the proposed class, it is not clear whether Plaintiffs Naryan Stibbie and Jessica Miles have applied for housing on the WLA Grounds. *See* Response to RFA No. 8; Answer to Interrogatory No. 7. And although Plaintiff Glenn Surrette was offered housing through HUD-VASH and PATH, he declined that offer because he was told he could not live with his girlfriend. *See* Answer to Interrogatory No. 8. Details like these are often central to how courts consider and characterize injury. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020) (explaining "'self-inflicted injuries' are insufficient" for Article III standing (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415–18 (2013)). And these details may be particularly relevant

12

to the Court's consideration of whether Defendants have denied Plaintiffs' benefits solely on account of their disability, or failed to provide a reasonable accommodation.

Further, one individual Plaintiff's alleged injury is unique because it cannot be remedied by the relief Plaintiffs request. Plaintiff Naryan Stibbie is subject to a registration requirement under a state sex offender registration program. *See* Pls.' Response to RFA No. 35. That registration requirement may render him ineligible for admission to federally assisted housing, and therefore, he may not be eligible to live in any permanent supportive housing constructed on the WLA Grounds. *See* 24 C.F.R. § 5.856 ("You must establish standards that prohibit admissions to federally assisted housing if any member of the household is subject to a lifetime registration requirement under a State sex offender registration program."); *see also* 24 C.F.R. §§ 982.553(a)(2), 960.204(a)(4). In contrast to other members of the proposed class, his injuries may be traced to independent causes and may not be redressed by a favorable court order in this case. *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (holding no cognizable injury where plaintiff sought "only remedies that would not be substantially likely to redress her claimed injury"); *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) ("Redressability requires an analysis of whether the court has the power or right to prevent the claimed injury." (citation omitted)). This separates his alleged injury from others of the proposed class.

In sum, the circumstances of the individual Plaintiffs demonstrate that the proposed class encompasses individuals without cognizable injuries as well as those with disparate injuries not similar to other members of the proposed class. Thus, a similar injury is lacking and Plaintiffs cannot satisfy Rule 23's commonality requirement.

    ii.    Plaintiffs' Rehabilitation Act claims are not suitable for class-wide resolution.

Even apart from Plaintiffs' varied injuries, Plaintiffs' claims under the Rehabilitation Act do not "depend upon . . . common contention[s]" capable of "classwide resolution[.]" *Wal-Mart*, 564 U.S. at 350. Plaintiffs purport to challenge a

system-wide practice or policy, *see* Mot. at 26–27, but to satisfy Rule 23(a)'s commonality requirement, Plaintiffs must "identif[y] . . . a policy or practice that affects *all members* of the class in the manner *Wal-Mart* requires." *DL v. Dist. of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013) (emphasis added); *see also A.M. v. San Bernadino Cty. Superintendent of Schs.*, 2020 WL 5775169, at *5 (C.D. Cal. July 17, 2020) (same); *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006) (requiring plaintiffs to "make a significant showing . . . that members of the class suffered from a common policy of discrimination that pervaded all of the [defendant's] challenged . . . decisions").

Plaintiffs' Motion vaguely frames Defendants' policy or practice as their failure "to reasonably accommodate unhoused veterans suffering from disabilities with housing on or near the WLA Grounds." Mot. at 27. But Defendants have no system-wide policy or practice of refusing to provide housing to veterans experiencing homelessness with SMI or TBI. *See Willis*, 943 F.3d at 885 (affirming denial of class certification where plaintiff-appellants "d[id] not point to a specific practice that applies uniformly to all proposed class members" and there was "no evidence that every Appellant . . . experienced the same challenged practice or suffered the same injury"). Defendants are currently providing permanent supportive housing on or near the WLA Grounds to veterans with SMI and TBI, as demonstrated by the fact that some of the individual Plaintiffs are veterans with SMI and TBI who have been placed in that housing. *See* Housing EUL Overview 2nd Quarter FY 2024 at 27–31 (listing four buildings on the WLA Grounds as operational permanent supportive housing and five more as under construction); Strain Dep. at 85:14–18 ("We have 233 units of permanent supportive housing that are open right now. By January of 2025 we expect to be at 500 units of permanent supportive housing. By the end of 2026, we'll have 730 units open on campus of permanent supportive housing."); Answer to Interrogatory No. 7 (Mr. Powers housed in Building 205). And Defendants' goal is "to work with veterans experiencing homelessness and . . . provide those veterans with a safe place to call home." Hammit Dep. at 10:25–11:2. And even aside from housing on the WLA

Grounds, in the Los Angeles area, the VA used tenant-based vouchers to place 1,301 formerly homeless veterans in permanent housing in 2022 and 1,790 formerly homeless veterans in permanent housing in 2023. *See id.* at 82:3–15; *see also* Press Release, https://perma.cc/B999-6F9H. Thus, Defendants' practices do not affect all proposed class members in the same manner.

Without a common policy or practice affecting all members of the class in the same manner, Plaintiffs' Rehabilitation Act claims are better understood as an amalgamation of individual claims, and key elements of those claims are not suitable to classwide resolution. *See* FAC ¶¶ 307–323.

For instance, a plaintiff bringing a section 504 claim must show that (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program or activity is conducted by an Executive agency. 29 U.S.C. § 794(a); *Fraihat v. U.S. Immigration and Customs Enforcement*, 16 F.4th 613, 650 (9th Cir. 2021); *Reynolds v. Brock*, 815 F.2d 571, 573 (9th Cir. 1987). But whether an individual was denied the benefits of a program *solely by reason of his disability* is a fact-specific inquiry. In other words, that Defendants did not provide permanent supportive housing on the WLA Grounds to particular individuals may hinge on individualized factors unrelated to disability. Take Plaintiffs Jessica Miles and Naryan Stibbie: it is unclear whether either applied for housing on the WLA Grounds, and in any case, Mr. Stibbie may not be eligible for that housing. Accordingly, it cannot be assumed they were denied housing solely by reason of their disabilities when there are separate compelling reasons why they have not received housing. Likewise, other members of the proposed class may not be residing in housing on the WLA Grounds for those same reasons or others unrelated to disability.

Similarly, Plaintiffs' meaningful access claim requires fact-specific and individualized determinations. An agency "violates § 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in

order to enjoy meaningful access to the benefits of public services." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010). But the "[r]easonableness" of an accommodation "depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to enjoy meaningful access to the program." *Id.* at 1098 (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)); *see also Garcia v. Capistrano Unified Sch. Dist.*, 2018 WL 5858671, at *12 (C.D. Cal. Mar. 6, 2018) (Carter, J.) (same). This is, in part, because disabilities are defined not necessarily by "the name or diagnosis of the impairment the person has, but rather [by] the effect of that impairment on the life of the individual." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (citation omitted), *superseded by statute on other grounds*, U.S. Pub. L. 110-325 (2009); *see also* 29 C.F.R. § 1630.2(j). And "[a]n individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Toyota Motor Mfg.*, 534 U.S. at 199; *Summit Coastal Living, Inc. v. City of Costa Mesa*, 2020 WL 4353677, at *5 (C.D. Cal. May 1, 2020) ("Congress intended the existence of a disability to be determined in a case-by-case manner." (citation omitted)).

Here, the specific symptoms of an individual's disability and the effect of those symptoms on his or her life shape what constitutes a reasonable accommodation to access medical benefits. It follows that this determination is not suited for classwide resolution. It is not sufficient that the proposed class seeks to represent veterans with SMI or TBI because the effects of those impairments vary drastically from person to person. The individual Plaintiffs' disabilities demonstrate this point. Consider just a few of Plaintiffs' disabilities: Doe 1 "experiences severe migraine headaches and tinnitus as a result of her military service"; Mr. Powers experiences "PTSD and spine degeneration"; Mr. Fields experiences "nightmares and suicidal ideation," TBI, and "severe back pain and tinnitus"; and Mr. Surrette "is diagnosed with psychosis and disorganized schizophrenia." Answer to Interrogatory No. 6. For some Plaintiffs,

16

reliable transportation to and from the VA Medical Center might constitute a reasonable accommodation sufficient to access their benefits. For others, a reasonable accommodation may be permanent housing near the WLA Grounds. And yet others might argue that permanent supportive housing on the WLA grounds with supportive services is necessary to access their benefits, and even the scope of reasonable supportive services might vary from person to person. What is a "reasonable" accommodation (and whether Defendants failed to provide it) is thus highly fact-dependent based on individual circumstances and cannot be resolved en masse.

Further, the particular symptoms an individual experiences also informs what support he or she needs to achieve and maintain stable housing, and may interact with the other factors that may lead to homelessness. Dr. Steven Braverman, the Medical Center Director for the VA Greater Los Angeles Healthcare System, has explained that "everyone has different individual reasons or contributions of how they ended up homeless in the first place." Deposition Testimony of Dr. Steven Braverman ("Braverman Dep.") at 36:5–11, attached as Exhibit C. Accordingly, what support individuals need varies from person to person: "In some cases, it may be occupation related. In other cases, it may be substance use disorder treatment. In other cases, it may be other medical care or mental health care treatment. In other cases, it may be family dynamics and situations." *Id.* at 36:12–16. For this reason, the "VA's plan to end veteran homelessness in Los Angeles needs a vast array of environments and solutions, because not all homeless veterans are the same, not all have the same interests or needs." Strain Dep. at 76:18–77:1; *see also id.* at 91:22–92:4 ("[V]eterans are not . . . a monolith in their opinions and expectations and demands."). And Defendants have worked to address veterans' needs at that individual level. As Sally Hammit, the Chief of the VA's Community Engagement & Reintegration Service ("CERS") at the West LA Campus has explained, "we don't want to script our services to veterans that we serve, we really want to get to know them individually and understand what they want and what they need," Hammit Dep. at 15:9–13; *see also id.* at 12:22–13:2 ("[T]he first

17

goal that we have is to find out what that veteran needs and wants to be successful. And so that could be very different for each veteran that we serve."); *id.* at 106:16–24 ("[C]ase management looks different for everyone . . . . my team works really hard to develop a relationship with a veteran to understand what works for them[.]"). All of which is to say, providing meaningful accommodations to help veterans access their medical benefits is a complicated and highly individualized effort. It is important that such work be done, but the determination of whether Defendants have failed to provide reasonable accommodations is not a question suitable to classwide resolution.

> iii.    Plaintiffs' proposed class representatives are not typical.

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses," but many of Plaintiffs' proposed class representatives are arguably subject to unique defenses that make them not typical of the class. *Hanon*, 976 F.2d at 508 (citation omitted). Most notably, the five individual Plaintiffs placed in permanent supportive housing on the WLA Grounds who seek appointment as class representatives may be subject to jurisdictional defenses, including that their claims are moot. "The case or controversy requirement of Article III . . . deprives federal courts of jurisdiction to hear moot cases." *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 2101, 1208 (9th Cir. 2021) (citation omitted); *see* Fed. R. Civ. P. 12(h)(3). Plaintiffs Jeffrey Powers, Joseph Fields, Lavon Johnson, Joshua Robert Petitt, and Doe 1 have acquired permanent supportive housing on the WLA Grounds. Although these Plaintiffs may not have had permanent housing placements when they filed the complaint, they subsequently received the remedy they seek, and accordingly, they no longer have cognizable injuries. *See supra* pp. 10–11. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Plaintiffs' Motion preemptively invokes the capable of repetition yet evading review exception to the mootness doctrine. *See* Mot. at 31. But that "'exception is

limited to extraordinary cases where (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again.'" *Brach v. Newsom*, 38 F.4th 6, 15 (9th Cir. 2022) (quoting *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854–55 (9th Cir. 1999)); *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985) ("Specifically, the plaintiff must establish a demonstrated probability that the same controversy will recur involving the same litigants[,] . . . [and] [s]peculative contingencies afford no basis for finding the existence of a continuing controversy between the litigants as required by article III."). The exception "applies only in exceptional situations." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (citation omitted).

While this Court relied upon that exception at the motion to dismiss stage, *see* Order Denying Defs.' Mots. to Dismiss at 25-26, ECF No. 106 ("Order Denying Mots. To Dismiss"), facts revealed through discovery demonstrate that the exception does not apply here. Plaintiffs frame the issue in terms of Plaintiffs' homelessness, but that misunderstands the inquiry—the exception looks to the duration of Defendants' action, not to Plaintiffs' circumstances. *See, e.g., Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329–30 (9th Cir. 1992) (finding exception applied where "*regulation challenged* was in effect for less than one year, making it difficult to obtain effective judicial review" (emphasis added); *Pharmachemie B.V. v. Barr Lab'ys, Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (explaining the inquiry as to duration is "whether the *challenged action* is by its very nature" too short to be "adjudicated while fully live" (cleaned up and emphasis altered)). Additionally, there is no reasonable expectation that the Plaintiffs placed in permanent supportive housing on the WLA Grounds will become homeless again. In part, Plaintiffs are suing for permanent supportive housing because it provides supportive services including case management and wraparound services that help ensure that veterans do not fall out of housing. *See* Strain Dep. at 87:15–22 ("[W]e're also creating an environment that has all the wraparound services and support."); Hammit Dep. at 10:6–11:9 (describing the goal of CERS is "to provide wrap-around services to veterans

on their journey to housing," which includes "counseling," "assistance with engaging in different benefits, food resources, transportation," and "connections to medical care"). Additionally, in Los Angeles, Defendants have been able to meet their goal of ensuring that "95 percent of all veterans that are housed remain housed," and in 2023, only about 3.8 percent of individuals who were housed lost their housing. *Id.* at 76:21–77:5. Defendants also "work to ensure that the greater percentage of those individuals were placed on a pathway back to housing or rehoused." *Id.* at 77:6–16. Thus, there is no "reasonable expectation" these Plaintiffs will lose their housing.

The cases Plaintiffs cite on this score are inapposite. *Church v. City of Huntsville* is factually distinguishable because the issue there was not whether plaintiffs would become homeless again. 30 F.3d 1332, 1337–39 (11th Cir. 1994). Rather, plaintiffs alleged they would remain homeless because of "involuntary" conditions, and therefore, they could not avoid future exposure to the city's challenged practice of arresting and harassing homeless individuals. *Id.* at 1338. *Glover v. City of Laguna Beach*, concluded with almost no analysis that even though one of the plaintiffs had "recently retained permanent housing," his claim was capable of repetition. 2017 WL 4457507, at *2 (C.D. Cal. June 23, 2017). But as explained above, Plaintiffs here have not just been placed in housing, they have been placed in permanent supportive housing with wraparound services to help ensure that they remain housed. The likelihood of repetition, then, is substantially reduced.

While other Plaintiffs' claims may not be moot, they may be subject to separate unique defenses. For instance, Mr. Stibbie may be subject to a standing defense because he is independently ineligible for admission to federally assisted housing, *see* 24 C.F.R. § 5.856. Therefore, in contrast to other members of the proposed class, his injury is not redressable by a favorable court order in this case.

Additionally, although "[e]ach . . . subclass must independently satisfy all the prerequisites of Rules 23(a) and (b)," 32 Moore's Fed. Practice – Civil § 21.23, Plaintiffs have supplied no evidence to support that Plaintiff Lavon Johnson is typical of the

subclass he purports to represent. *See* Order Denying Mots. to Dismiss at 25–26 (finding only Mr. Johnson has standing to pursue claims challenging Defendants' determination of eligibility for housing vouchers); Mot. at 30–32 (providing no explanation for how Mr. Johnson's claims with regards to voucher eligibility are typical of the subclass). Plaintiffs have thus failed to "carry their burden of proof before class certification." *Olean*, 31 F.4th at 664 (citation omitted); *see also Woulfe v. Universal City Studios LLC*, 2023 WL 6376152, at *1 (C.D. Cal. Aug. 28, 2023) ("[T]he party seeking certification must affirmatively prove they comply with the requirements of Rule 23.").

Even aside from Plaintiffs' failure to carry their burden on this issue, there is reason to believe that Mr. Johnson is not typical of the subclass. In September 2023, HUD announced that it would authorize public housing authorities to "use available vouchers to serve all eligible, VA-referred veterans with incomes up to 80% of the area median." HUD Letter at 1. If Mr. Johnson's income is between 50 and 80% of the area median income, then, he may be subject to jurisdictional defenses to which members of the proposed subclass with incomes above 80% area median income would not be subject. Plaintiffs' Response to RFA No. 17, which states that "all named Plaintiffs admit that they are currently eligible to participate in the HUD-VASH program," supports that this may be the case.

In sum, Plaintiffs have not carried their burden to demonstrate common injuries or that their Rehabilitation Act claims can be resolved with common answers, and some proposed class representatives may be subject to unique defenses not typical of the proposed class.

### B. *Adequacy*

Plaintiffs also must demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine the adequacy of representation, courts consider: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their

counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1020 (9th Cir. 1998).

Class representatives' failure to cooperate in discovery may support a finding that
they will not adequately protect the interests of the class. *See In re Ford Motor Co. Bronco
II Prod. Liab. Litig.*, 177 F.R.D. 360, 367 (E.D. La. 1997) ("Failure to cooperate in
discovery may support a finding that class representatives are inadequate."); *Kline v. Wolf*,
88 F.R.D. 696, 700 (S.D.N.Y. 1981); *Santos v. TWC Admin., LLC*, 2014 WL 12558009,
at *21 (C.D. Cal. Aug. 4, 2014) ("Individuals are not adequate representatives of a class
when it appears that they have abdicated any role in the case beyond that of furnishing
their names as plaintiffs." (citation omitted)); *In re Northrop Grumman Corp. ERISA Litig.*,
2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011) ("A class representative . . . bears a
responsibility to comply with discovery requests, to possess a basic knowledge of the
facts, and to participate to some minimal degree in the lawsuit." (citation omitted)).
"[F]ailure to comply with . . . discovery requests . . . suggest[s] that the class
representative is inadequate." 5 Moore's Fed. Practice § 23.25(2)(c)(i).

Plaintiffs' participation in this action has not demonstrated that they are adequate
representatives. To start, some proposed class representatives have failed to respond to
Defendants' discovery requests. *See generally* Defs.' Apr. 3, 2024 Letter re: Discovery
Responses ("Defs.' Discovery Letter"), attached as Exhibit G.[2] Mr. Stibbie failed to
answer a number of Defendants' requests for admission. *See id.* Additionally, Mr.
Stibbie, Mr. Sessom, and Doe 1 failed to answer several of Defendants' interrogatories.
*See id.* These Plaintiffs neither indicated they were incapable of answering the requests

___

[2] Plaintiffs' counsel has since responded to Defendants' Discovery Letter. As a
discovery matter, the inadequacy of Plaintiffs' responses is not yet ripe for review by
the Special Masters or this Court, as the parties have not yet exhausted the meet-and-
confer process. Nevertheless, as of the time that Plaintiffs filed their class certification
motion, Plaintiffs failed to provide adequate responses to straightforward discovery
requests regarding core issues in this litigation, to the extent they provided any
responses at all.

directed to them, nor otherwise explained why they answered some requests but not others, nor asserted an objection that would excuse them from answering all requests. Parties do not "get to pick and choose to which discovery [they] wish[] to respond," *Tweghe v. Pharmaca Integrative Pharmacy, Inc.*, 2014 WL 3404608, at *2 (N.D. Cal. July 11, 2014), and Plaintiffs failure to respond at all to some of Defendants' requests illustrates that they are not adequate representatives. *See also* 7 Moore's Fed. Practice § 33.30(1) ("'[It] would clearly be improper" for a responding party to "select[]" the discovery requests "of its choosing to answer.").

The NVF also refused to answer a single one of Defendants' requests for admission. *See* Defs.' Discovery Letter at 2–3; Response to RFA Nos. 42–49. Although Defendants framed their requests as straightforward statements, such as admit that "not all homeless veterans with a [SMI] or a [TBI] who reside in Los Angeles are eligible for Permanent Supportive Housing located on the WLA Grounds," or are "eligible to participate in the HUD-VASH program," the NVF responded with only boilerplate objections such as the requests "call[] for speculation" or are "unintelligible." *See id.*

Additionally, "it is settled law that the presence of even an arguable defense against the named plaintiff that is not applicable to the proposed class . . . can vitiate the adequacy of named plaintiff's representation." *Hardin v. Harshbarger*, 814 F. Supp. 703, 708 (N.D. Ill. 1993) (citing cases). As previously explained, a number of defenses may arguably be asserted against the proposed class representatives, *see supra* pp. 10–13, supporting that they are not adequate class representatives.

Accordingly, Plaintiffs have failed to carry their burden on this prerequisite too.

*C. Numerosity*

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Like all requirements for class certification, Plaintiffs must demonstrate numerosity by a preponderance of the evidence. *See Olean*, 31 F.4th 651. But in support of class certification, Plaintiffs cite only deposition testimony regarding the *total* number of veterans experiencing homelessness in Los

1    Angeles. *See* Mot. at 26. They provide no evidence regarding the number of individuals
2    that could constitute the proposed class of "[a]ll homeless veterans with Serious Mental
3    Illness or Traumatic Brain Injuries, who reside in Los Angeles County," nor do they
4    provide any evidence regarding the number of individuals that could constitute the
5    proposed subclass of "[a]ll Class Members whose income (including veterans disability
6    benefits) exceeds 50% of the Area Median Income." *Id.* at 2. Plaintiffs have thus failed
7    to "carry their burden of proof" regarding numerosity. *Olean*, 31 F.4th at 664.

8    **II.    Plaintiffs' proposed class does not satisfy Rule 23(b)'s requirements.**

9         In addition to meeting the requirements set forth in Rule 23(a), the proposed
10   class must also qualify under Rule 23(b). *Wal-Mart*, 564 U.S. at 345. Plaintiffs seek
11   certification under Rule 23(b)(2), which permits class actions for declaratory or
12   injunctive relief where the party opposing the class has acted or refused to act on
13   grounds that apply generally to the class. "The key to the (b)(2) class is the indivisible
14   nature of the injunctive or declaratory remedy warranted—the notion that the conduct
15   is such that it can be enjoined or declared unlawful only as to all of the class members
16   or as to none of them." *Id.* at 360 (citation omitted). In other words, class certification
17   is appropriate under Rule 23(b)(2) "only when a single injunction or declaratory
18   judgment would provide relief to each member of the class." *Id.*

19        Plaintiffs contend they "have not raised individual claims requiring individual
20   injunctive relief," rather, "Defendants' practices and policies uniformly discriminate
21   against members of the Proposed Class[.]" Mot. at 37. But the factual circumstances of
22   the Plaintiffs placed in permanent supportive housing on the WLA Grounds reveal the
23   flaws in this argument, as they will not benefit from injunctive or declaratory relief.
24   Additionally, proposed class members who are ineligible for VA medical benefits or
25   federal housing assistance also will not benefit from such relief. Similarly, because an
26   individualized inquiry into each veteran's circumstances is required to determine
27   whether Defendants have violated the Rehabilitation Act, a class-wide declaration
28   would also be improper. Therefore, neither "a single injunction" nor single declaration

1 | would "provide relief to each member of the class," *Wal-Mart*, 564 U.S. at 360, and this
2 | class cannot be maintained under Rule 23(b)(2).

**III.    Plaintiffs' proposed class is overbroad and insufficiently defined.**

4 |      Rule 23 "must be interpreted in keeping with Article III constraints." *Tinsley*, 922
5 | F.3d at 967 (citation omitted). But Plaintiffs' proposed class includes members over
6 | whom this Court lacks jurisdiction. Plaintiffs' proposed class seeks to represent "[a]ll
7 | homeless veterans with [SMI] or [TBI], who reside in Los Angeles County," Mot. at 2,
8 | without regard to whether those veterans are in fact eligible for either (1) VA medical
9 | benefits, or (2) federal housing assistance. As explained above, class members who are
10 | not eligible for VA medical benefits and/or federal housing cannot establish a live case
11 | or controversy because this Court is without power to remedy their injuries through the
12 | requested relief. Therefore, even if this Court is inclined to certify a class, that class
13 | should be narrowed to those eligible for the relief sought.

14 |      Additionally, Plaintiffs' proposed class is inadequately defined because it
15 | incorporates ambiguous and subjective criteria. *See Probe v. State Teachers' Retirement Sys.*,
16 | 780 F.2d 776 (9th Cir. 1986) (explaining class must be "sufficiently definite to conform
17 | to Rule 23" and must not be "so vague as to preclude certification"). For instance, it is
18 | not clear which veterans are "homeless," particularly when many individual Plaintiffs
19 | are housed. Further, the terms "Serious Mental Illness" and "Traumatic Brain Injuries"
20 | are ambiguous—it is not clear which mental illnesses or injuries would bring individuals
21 | within the class definition, nor is it apparent who would make that determination. This
22 | would make it all but impossible for Defendants to determine to whom any injunction
23 | applies, contrary to Federal Rule of Civil Procedure 65(d). *See* Fed. R. Civ. P 65(d)
24 | ("Every order granting an injunction . . . [must] describe in reasonable detail . . . the acts
25 | or acts restrained or required.").

26 | <center>**CONCLUSION**</center>

27 |      For all the reasons stated above, Defendants request that the Court deny
28 | Plaintiffs' Motion for Class Certification.

<center>25</center>

DATED: April 15, 2024                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney
                                         General

                                         JOHN R. GRIFFITHS
                                         Director

                                         BRAD P. ROSENBERG
                                         Special Counsel

                                         */s/ Taylor Pitz*
                                         TAYLOR PITZ
                                         (C.A. Bar No. 332080)
                                         CODY T. KNAPP
                                         (N.Y. Bar No. 5715438)
                                         JODY D. LOWENSTEIN
                                         (M.T. Bar No. 55816869)
                                         AGBEKO C. PETTY
                                         (N.Y. Bar No. 5525381; D.C. Bar
                                         No. 90011766)
                                         Trial Attorneys
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, DC 20005
                                         Tel:    (202) 305-5200
                                         Fax:    (202) 616-8460
                                         brad.rosenberg@usdoj.gov
                                         cody.t.knapp@usdoj.gov
                                         jody.d.lowenstein@usdoj.gov
                                         agbeko.c.petty@usdoj.gov
                                         taylor.n.pitz@usdoj.gov

                                         *Counsel for Federal Defendants*

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## CERTIFICATE OF SERVICE

On April 15, 2024, I served the foregoing document on all other parties using the Court's ECF system, which satisfies the service requirements pursuant to L.R. 5-3.2.

*/s/ Taylor Pitz*
TAYLOR PITZ
*Counsel for Federal Defendants*

27