# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY POWERS, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>DENIS RICHARD MCDONOUGH, in his official capacity as Secretary of Veterans Affairs; et al.,<br><br>    Defendants. | Case No. 2:22-cv-08357-DOC-KS<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS [167] |

Before the Court is Plaintiffs Jeffrey Powers, Deavin Sessom, Laurieann Wright, Joseph Fields, Lavon Johnson, Billy Edwards, Jessica Miles, Joshua Robert Petitt, Glenn Surette, Naryan Stibbie, Does 1-2, and the National Veterans Foundation[1] (collectively, "Plaintiffs") Motion to Certify Class ("Motion") (Dkt. 167). Having reviewed the briefing submitted by the parties and listened to oral arguments, the Court now GRANTS Plaintiffs' Motion.

## I. Background

The Court has previously discussed the facts of this case in detail and adopts those facts here. *See* December 14, 2023 Order denying Motion to Dismiss (Dkt. 106).

Plaintiffs filed the instant Motion to Certify Class (Dkt. 167) on April 1, 2024. On April 15, 2024, Defendants Denis Richard McDonough, in his official capacity as Secretary of Veterans' Affairs, Robert Merchant in his official capacity as Acting Director, VA Greater Los Angeles Healthcare System, and Keith Harris, in his official capacity as Senior Executive Homeless Agent, VA Greater Los Angeles Healthcare System ("VAGLAHS"), and Adrianne Todman, in her official capacity, Secretary, Department of Housing and Urban Development ("HUD") (collectively, "Federal Defendants") filed their Opposition (Dkt. 181). Plaintiffs submitted their Reply (Dkt. 184) on April 22, 2024. The Court heard oral arguments on May 2, 2024.

## II. LEGAL STANDARD

Courts may certify a class action only if it satisfies all four requirements identified in Federal Rule of Civil Procedure 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(a) requires the moving party to show the following:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[1] At the hearing on May 2, 2024, the parties agreed that former plaintiff Samuel Castellanos was dismissed by stipulation.

(4) the representative parties will fairly and adequately protect the interests of the
               class.

     See Fed. R. Civ. P. 23(a). These requirements are often referred to as "numerosity,"
"commonality," "typicality," and "adequacy." *United Steel, Paper & Forestry, Rubber, Mfg.
Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d
802, 806 (9th Cir. 2010).

     In addition to the four prerequisites under Rule 23(a), the moving party must also
demonstrate that at least one of the requirements of Rule 23(b) is satisfied. Fed. R. Civ. P. 23(b).
Here, Plaintiffs seeks certification under Rule 23(b)(2) (for injunctive and declaratory relief).
Mot. at 36-37. A class action may be maintained under Rule 23(b)(2) if "the party opposing the
class has acted or refused to act on grounds that apply generally to the class, so that final
injunctive relief or corresponding declaratory relief is appropriate respecting the class as a
whole." Fed. R. Civ. P. 23(b)(2).

     The decision to grant or deny a motion for class certification is committed to the trial
court's broad discretion. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).
However, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v.
Dukes*, 564 U.S. 338, 350 (2011). A party seeking class certification must affirmatively
demonstrate compliance with Rule 23—that is, the party "must be prepared to prove that there
are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.*

     In resolving a class certification motion, it is inevitable that the trial court will touch on
the merits of the movant's claims or defenses. *See Wal-Mart*, 564 U.S. at 351 (quoting *Gen. Tel.
Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[C]lass determination generally involves
considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause
of action"). But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at
the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).
Accordingly, any consideration of the merits must be limited to those issues necessary to
deciding whether to certify the class. *Id.* ("Merits questions may be considered to the extent—
but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites

for class certification are satisfied."). "[W]hether class members could actually prevail on the merits of their claims is not a proper inquiry in determining the preliminary question of whether common questions exist." *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

A court that certifies a class generally must also appoint class counsel. Fed. R. Civ. P. 23(g)(1). Class counsel have a duty to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). When deciding whether class counsel is adequate to carry out this duty, courts must consider four factors:

    (i) the work counsel has done in identifying or investigating potential claims in the action;

    (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

    (iii) counsel's knowledge of the applicable law; and

    (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Courts may also consider any other information relevant to "counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## III. DISCUSSION

Plaintiffs ask the Court to certify the following Class and Subclass:

(1) The "Class": "All homeless veterans with Serious Mental Illness [SMI] or Traumatic Brain Injuries [TBI], who reside in Los Angeles County."

(2) The "Subclass": "All Class Members whose income (including veterans disability benefits) exceeds 50% of the Area Median Income."

Mot. at 2-3. Plaintiffs seek to appoint Plaintiffs Powers, Sessom, Fields, Johnson, Wright, Petitt, Stibbie, Doe 1, and National Veterans Foundation as Class Representatives for the Proposed Class and Plaintiff Johnson as Class Representative for the Proposed Subclass. *Id.* As explained below, Plaintiffs have demonstrated that certification of both the Class and Subclass is proper.

### A. The Proposed Class and Subclass Are Sufficiently Numerous

#### 1. Legal Standard

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no bright-line numerical cutoff, and other factors can be taken into consideration, courts generally find that numerosity obtains when a class has forty or more members and fails when there are twenty-one or fewer members. *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Courts may find that a class is numerous without knowing its exact size or membership, *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)), and courts "may make common sense assumptions to support a finding that joinder would be impracticable," *Californians for Disability Rights*, 249 F.R.D. at 347 (citing 1 Newberg on Class Actions, § 3:3).

#### 2. Discussion

The Court finds that the proposed Class and Subclass are sufficiently numerous. As Plaintiffs point out, the VA itself cites data showing that one in five people experiencing homelessness in the United States has a Serious Mental Illness ("SMI"). Reply at 2-3 (citing U.S. Dept. Vet. Aff., *Serious Mental Illness* (2020), https://www.va.gov/PREVENTS/docs/PRE013_FactSheets_SeriousMentalillness_508.pdf). With approximately 3,874 unhoused veterans in Los Angeles, that data indicates at least 779 of those veterans are experiencing SMI. This number is likely higher for the veteran population, as research shows that veterans who have been deployed are more likely than civilians to experience mental health conditions or cognitive injuries. *See, e.g.*, RAND, *Veterans' Mental Health Issues* (2023), https://www.rand.org/health-care/projects/navigating-mental-health-care-for-veterans/mental-health-issues.html. This figure alone is sufficient to establish that the proposed class is numerous, and that joinder would be impracticable. The Court accordingly finds that the numerosity requirement is satisfied.

For similar reasons, the Court finds Plaintiffs have met their burden to demonstrate the subclass is sufficiently numerous. Plaintiffs point to Pew Research Center data that shows 13% of veterans have a 100% service-connected disability rating and therefore would likely exceed the Average Median Income (AMI) requirements of the housing provided on the Grounds. Reply at 3. Using the estimated population of 3,874 unhoused veterans in Los Angeles, the proposed subclass would consist of around 503 veterans. As "courts find the numerosity requirement satisfied when a class includes at least 40 members," *Rannis v. Recchia*, 380 F.Appx. 646, 651 (9th Cir. 2010), the Court finds the numerosity requirement easily satisfied for both the Class and Subclass here.

### B. The Proposed Classes Present Common Questions of Law and Fact

Plaintiffs contend that the Class meets the commonality requirement because its members' injuries stem from systemic policies and practices attributable to centralized agencies, including Defendants' failure to build adequate permanent supportive housing (PSH) on the WLA Grounds and their choice to enter into leases and land use agreements that allegedly do not comply with their fiduciary duties. Mot. at 26-29. Similarly, Plaintiffs assert the Subclass's claims arise from the Government's use of general income eligibility criteria which exclude the most disabled class members from PSH on the WLA Grounds. *Id.* Defendants respond that 1) Plaintiffs have not suffered a common injury; and 2) Plaintiffs' Rehabilitation Act Claims do not present a common policy or practice affecting all members of the class in the same manner and so cannot be resolved with common answers. *See* Opp'n at 13-21.

#### 1. Legal Standard

Rule 23(a)(2) requires courts to perform a "rigorous analysis" to determine whether "there are questions of law or fact common to the class." *See Wal-Mart*, 564 U.S. at 350-51. Commonality obtains when the class members' claims "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Put differently: "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather, the capacity of a classwide proceeding to generate

1 | common *answers* apt to drive the resolution of the litigation." *Id.* (first omission in original)
2 | (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.
3 | Rev. 97, 132 (2009)).
4 |     The moving party need not show, however, that "every question in the case, or even a
5 | preponderance of questions, is capable of classwide resolution. So long as there is 'even a single
6 | common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."
7 | *Wang v. Chinese Daily News*, 737 F.3d 538 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at
8 | 359).

**2.   Discussion**

Here, the proposed Class and Subclass satisfy the commonality requirement. Plaintiffs identify questions under each of their claims that are capable of generating common answers as to both the Class and the Subclass. *See* Mot. at 27-30. Defendants' arguments in opposition are inadequate.

First, Defendants argue that the named Plaintiffs do not share a common injury with members of the proposed Class, as several have been approved for housing on the WLA Grounds since the Complaint was filed, others have been housed outside the Grounds, and still others have individualized barriers to accessing housing. Opp'n at 10-13. Plaintiffs, however, are not requesting any individual grant of housing for any particular class member. Rather, Plaintiffs challenge a government policy, asserting that Defendants' failure to provide PSH on or near the WLA Grounds results in the systematic discrimination against class members that prevents them from accessing the medical and other benefits to which they are entitled. Stated differently, their common injury is being subject to that systematic discrimination. Thus, a particular member of the Class or Subclass's current housing status does not defeat commonality. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005) ("[I]ndividual factual differences among the individual litigants or groups of litigants" do "not preclude a finding of commonality."). Furthermore, the question of whether the Government's failure to provide PSH on the WLA

1 Grounds is contrary to their fiduciary duty and federal law does not depend on individualized
2 determinations.

3       Defendants next argue Plaintiffs' Rehab Act Claims are not suitable for classwide
4 resolution as Plaintiffs have not met their burden to "identif[y] . . . a policy or practice that
5 affects all members of the class in the manner *Wal-Mart* requires." *DL v. Dist. of Columbia*, 713
6 F.3d 120, 126 (D.C. Cir. 2013); Opp'n at 14. Defendants do not directly challenge that
7 Plaintiffs' Fiduciary Duty and APA Claims are capable of class-wide resolution. *See generally*
8 Opp'n. As to the Rehab Act Claims, Defendants assert that because they have no systemwide
9 policy or practice of refusing to provide housing to veterans experiencing homelessness with
10 SMI or TBI, Plaintiffs' Rehab Act Claims are not suitable for classwide resolution. *Id.*

11       Defendants, however, misread Plaintiffs' allegations. Plaintiffs do not contend that
12 Defendants have an *affirmative* policy of denying housing to members of the class— instead,
13 they challenge Defendants' "systemic failure to meet its obligations to these veterans." Reply at
14 4. As in *Parsons v. Ryan,* the policies and practices identified by Plaintiffs contributing to this
15 alleged systemic failure "are defined with sufficient precision and specificity; they involve
16 particular and readily identifiable conduct on the part of the defendants[.]" 754 F.3d 657, 683
17 (9th Cir. 2014). Plaintiffs' point to Federal Defendants' failure to build adequate PSH on the
18 WLA Grounds and their choice to enter into numerous identified leases and land use agreements
19 that they contend do not comply with Defendants' fiduciary duties. Similarly, they identify the
20 Defendants' use of income eligibility criteria which exclude the members of the Subclass from
21 PSH on the WLA Grounds. Reply at 4. This is sufficient to establish a policy or practice
22 affecting all members of the class for the purpose of class certification.

23       Defendants argue that in the absence of a common policy or practice, Plaintiffs' Rehab
24 Act Claims are better understood as an amalgamation of separate claims subject to highly
25 individualized determinations. Opp'n at 16-18. As noted above, however, this understanding of
26 Plaintiffs' allegations is incorrect— Plaintiffs have in fact established the existence of a
27 common practice, such that individual resolution of their claims would be needlessly
28 duplicative. "[P]olicies and practices are the "glue" that holds together the putative class and the

putative subclass; either each of the policies and practices is unlawful as to every [class member] or it is not." *Parsons*, 754 F.3d at 678. Because the issue of whether Federal Defendants' policies and practices systematically deprive Plaintiffs of access to permanent supportive housing on the WLA Grounds does not require individualized determinations and can be resolved on a classwide basis, the Court finds that commonality obtains.

As Plaintiffs have demonstrated the existence of common questions and Defendants' objections are unavailing, the Rule 23(a)(2) commonality requirement is satisfied.

### C. Plaintiffs' Claims Are Typical of the Claims of the Proposed Class and Subclass

According to Plaintiffs, their claims are typical of the class in that each individual plaintiff is: eligible for medical benefits from the VA; has a service-connected disability rating; seeks treatment from VA Greater Los Angeles Healthcare System (VAGLAHS); has sought housing from VAGLAHS; has been denied permanent housing on or near the Grounds; has been or remains unhoused, or is at risk of being unhoused; and has faced difficulty or been unable to access their medical or other VA benefits. Mot. at 30. In response, Defendants primarily argue that several Plaintiffs placed in permanent supportive housing on the WLA Grounds who seek appointment as class representatives may be subject to jurisdictional defenses, including that their claims are moot. Opp'n 19-20. They additionally argue that Mr. Johnson may not be typical of the Subclass is his income is between 50 and 80% of the area median income, due to a recent policy change by HUD that it would authorize public housing authorities to "use available vouchers to serve all eligible, VA-referred veterans with incomes up to 80% of the area median." *Id.* at 21.

#### 1. Legal Standard

A class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement ensures "that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality inquiry turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Representative claims must be "reasonably co-extensive with those of absent class members," but "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

### 2. Discussion

As discussed above in the context of commonality, Plaintiffs have adequately demonstrated that they share a common injury with members of the Class and Subclass. The Court therefore only addresses here Defendants' arguments regarding whether several of the representative Plaintiffs' claims are moot. As the Court previously held in its prior Order denying Defendants' Motions to Dismiss, Defendants' mootness argument is unavailing as Plaintiffs satisfy the exception for wrongs "capable of repetition yet evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016).

Plaintiffs' placement into PSH on the WLA Grounds does not moot their case as there is a reasonable expectation that they may become unhoused again in the future. A controversy is "capable of repetition yet evading review" where (1) "its duration [is] too short to be fully litigated prior to cessation or expiration" and (2) "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (cleaned up). As Plaintiffs' own experiences demonstrate, unhoused persons often cycle through periods of being housed and unhoused. Expert Report of Benjamin F. Henwood, Ph.D. MSW ("Henwood Report") ¶ 17, Dkt. 167-8; Mot. at 22-23. While some Plaintiffs have been housed since the Complaint was filed, Plaintiffs point to evidence of veterans placed into housing who then lost vouchers due to HUD-VASH staff's failure to complete certification renewals. Henwood Report ¶¶ 39, 41; Reply at 6. Given the cyclical nature of homelessness and Defendants' past failures to ensure that veterans placed into housing remain permanently housed, the Court again finds the wrong capable of repetition yet evading review exception applies here to Defendants' mootness argument. As a practical matter, accepting Defendants' argument would incentivize the government to house the named class

representatives to avoid facing a class action, while thousands of unnamed homeless veterans remain on the streets.

The same reasoning applies to Plaintiff Johnson and the typicality of his claims to the Subclass— like Class members, his injury in being denied Permanent Supportive Housing because of area median income requirements is a wrong capable of repetition yet evading review, regardless of interim changes in HUD policy. The Court accordingly finds that the typicality requirement is met for both the Class and Subclass.

### D. Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Represent the Proposed Class and Subclass

Plaintiffs argues that the proposed class representatives and their counsel adequately represent the proposed classes as their representation would not be compromised by any conflicts of interest and they will vigorously prosecute the action on behalf of the class. Mot. at 33. Defendant argues that Plaintiffs' participation in this action has not demonstrated that they are adequate representatives, primarily because some proposed class representatives have failed to respond to Defendants' discovery requests. Opp'n at 22-23. Defendants' Opposition does not address the adequacy requirement as to Plaintiffs' counsel. *See generally* Opp'n.

#### 1. Legal Standard

Representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Ninth Circuit, this inquiry requires a court to answer two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

#### 2. Discussion

In challenging the adequacy of Plaintiffs' proposed class representatives, Defendants do not contend that Plaintiffs have any conflicts of interest, but instead assert that proposed representatives' failure to respond to Defendants' discovery requests renders them inadequate. Opp'n at 22-23. Specifically, Defendants point to Mr. Stibbie's failure to answer a number of

Defendants' requests for admission and Mr. Stibbie, Mr. Sessom, and Doe 1's failure to answer several of Defendants' interrogatories without explanation. *Id.* Similarly, Defendants argue the National Veteran's Foundation (NVF) is inadequate because they responded to Defendants' requests for admission with boilerplate objections such as the requests "call[] for speculation" or are "unintelligible." *Id.* Plaintiffs respond that individual plaintiffs' status as homeless veterans may impair their ability to respond fully to discovery requests due to their disability and lack of stable housing, but this does not render them inadequate representatives.

As Plaintiffs and Defendants both acknowledge, named representatives are only required to "participate to some minimal degree in the lawsuit to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney." *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011). The Plaintiffs have met that standard here. The representative veterans have "reviewed the [First Amended Complaint] FAC, met with counsel on several occasions, made themselves available for deposition, and participated in responding to discovery requests to the best of their ability." Reply at 8. Where, as here, Plaintiffs are representatives of a class defined by mental disabilities and unstable access to housing, denying class certification because several interrogatory responses were subpar would be inappropriate. Additionally, while Plaintiffs do not respond to Defendants' issues with National Veteran's Foundation (NVF), a nonprofit entity that advocates for veterans and an organizational plaintiff here, the Court finds that NVF's discovery responses, while perhaps not satisfactory to Defendants, do not defeat their ability to serve as a class representative when they have actively participated in the lawsuit thus far.

Defendants also raise the potential defenses against Plaintiffs who have subsequently been housed as a challenge to the named Plaintiffs' adequacy. Opp'n at 22-23. As the Court has discussed throughout this Order, that Defendants have procured housing for some individual plaintiffs since the Complaint was filed is not sufficient to defeat class certification here. Further, Plaintiffs note, and the Court agrees, that NVF as an organizational plaintiff is not subject to any of the defenses Defendants raise. Reply at 8.

Turning to Plaintiffs' proposed counsel, courts in this district, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument. *See, e.g.*, *Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015) (citing *Tatum v. Schwartz*, No. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007), for the proposition that the plaintiff "tacitly concedes this claim by failing to address defendants' argument in her opposition"); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."). The Court thus finds that Defendants have conceded that Plaintiffs' counsel would adequately represent the proposed class and subclass.

In its own analysis, moreover, the Court agrees that Plaintiffs' counsel would be fair and adequate representatives. None of the firms serving as class counsel appear to have any conflict of interest. The Court also finds that Plaintiffs' counsel will vigorously prosecute this case, as all counsel appear to have diligently pursued this case so far. The Court therefore finds that the adequacy requirement of Rule 23(a)(4) is satisfied as to Plaintiffs' counsel.

### E.  The Proposed Classes Meet the Requirements of Rule 23(b)(2)

In support of certification under Rule 23(b)(2), Plaintiffs argue that Defendants' practices and policies uniformly discriminate against members of the Class and have failed to provide meaningful access to the healthcare benefits to which they are entitled, such that injunctive and declaratory relief would be appropriate respecting the Class as a whole. Mot. at 37. Similarly, Plaintiffs seek declaratory and injunctive relief to ensure that Defendants fulfill their fiduciary duty to the entire class to provide housing on the WLA Grounds and to only engage in land leases on the Grounds that principally benefit veterans. *Id.* Defendants respond that a single injunction or declaration would not uniformly benefit the Class as some members have been placed in permanent supportive housing on the WLA Grounds and others may be ineligible for VA medical benefits or federal housing assistance also will not benefit from such relief. Opp'n at 24-25.

### 1. Legal Standard

As noted above, a class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is only appropriate "when a single injunction or declaratory judgment would provide relief to each member of the class," and should not be granted if "each individual class member would be entitled to a *different* injunction or declaratory judgment." *Wal-Mart*, 564 U.S. at 360.

### 2. Discussion

As discussed throughout this Order, Plaintiffs do not seek relief in the form of individualized grants of housing, but instead seek classwide resolution of Defendants' systemic failure to provide Permanent Supportive Housing on the WLA Grounds. Plaintiffs' interim change in housing status since the Complaint was filed is therefore not determinative. Rule 23(b)(2) is "unquestionably satisfied" where "members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019). Here, the policies and practices that Plaintiffs identify are Defendants' systemic failure to provide the housing they are allegedly legally obligated to provide and their continued engagement in leases and land-use deals in contravention of federal law. Because injunctive and declaratory relief could be awarded on a unified, classwide basis, the proposed Class and Subclass can be certified under Rule 23(b)(2) as to these remedies.

### F.  Plaintiffs' Counsel Meets the Standard for Appointment Under Rule 23(g)

Having now found that class certification is warranted, the Court must also appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1). The Court finds Plaintiffs' counsel qualified to fulfill the duty of class counsel to "fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(4).

Federal Defendants do not oppose the appointment of Plaintiffs' counsel as class counsel, *see generally* Opp'n, and as such have conceded that Plaintiffs' counsel is adequate under Rule

23(g), *see, e.g.*, *Day*, 191 F. Supp. 2d at 159. The Court agrees that Plaintiffs' counsel is qualified to serve as class counsel under Rule 23(g), as Public Counsel Law Center, Inner City Law Center, Brown Goldstein & Levy, LLP and Robins Kaplan LLP have demonstrated the ability, resources, and motivation to vigorously pursue the current case on behalf of the Class and Subclass.

### G.   The Proposed Class is Not Overbroad

Defendants argue that, even if the Court were to grant class certification, Plaintiffs' proposed class is overbroad and includes members over whom this Court lacks jurisdiction. The proposed class seeks to represent "[a]ll homeless veterans with [SMI] or [TBI], who reside in Los Angeles County." Mot. at 2. Defendants contend that the Court's jurisdiction is limited to those veterans who are in fact eligible for either (1) VA medical benefits, or (2) federal housing assistance, Opp'n at 25, and ask the Court to narrow the class to those eligible for those benefits. In response, Plaintiffs ask the Court to reject Defendants' attempt to restrict Plaintiffs' proposed class definition "based on exclusions arising from its own discriminatory policies and practices." Reply at 10.

In this case, Plaintiffs challenge the Defendants' handling of income-based housing assistance restrictions that limit certain class members' access to housing subsidies. *See, e.g.*, FAC ¶ 317 ("Defendants' delegation of its housing construction obligations to allow imposition of restrictive AMI measures and counting veterans' disability benefits as income discriminates on the basis of disability."). Narrowing the class as Defendants suggest would inappropriately deprive plaintiffs of the opportunity to seek classwide relief because of criteria set by Defendants. In other words, the Court will not exclude members from the class because policies set by the Defendants excluded them from seeking benefits.

Lastly, Defendants argue that Plaintiffs' proposed class is inadequately defined because it incorporates ambiguous and subjective criteria, such as "homeless," "Serious Mental Illness," and "Traumatic Brain Injuries." Opp'n at 25. Defendants argue these terms would make it "all but impossible" for them to determine to whom any injunction applies, contrary to Federal Rule of Civil Procedure 65(d). *Id.* Plaintiffs respond that the supposedly ambiguous terms in fact have

been clearly defined. Specifically, Plaintiffs define "homeless" veterans as those who "[have] been or remain[] unhoused, or [are] at risk of being unhoused." Mot. at 30; Reply at 10. They further define Serious Mental Illness as "a mental, behavioral or emotional disorder that results in serious functional impairment, which substantially interferes with or limits one or more major life activities," FAC ¶ 7; Reply at 10. Lastly, they argue that Traumatic Brain Injury is "a broadly recognized term in the scientific literature." Reply at 10; Jacob L. Stubbs et al., *Traumatic Brain Injury in Homeless and Marginally Housed Individuals: A Systematic Review and Meta-Analysis*, 5 The Lancet Pub. Health E19, E19 (2020). Additionally, at the hearing on May 2, 2024, Plaintiffs agreed to adopt the definitions of SMI and TBI that are currently used by the VA. The Court finds the terms contested by Defendants have all been adequately defined by the Plaintiffs, and so DENIES Defendants' request to narrow the proposed class.

## IV.  DISPOSITION

For the reasons set forth above, the Court GRANTS Plaintiffs' Motion to Certify Class. The Court CERTIFIES the Class and Subclass to pursue class claims, APPOINTS Plaintiffs Powers, Sessom, Fields, Johnson, Wright, Petitt, Stibbie, Doe 1, and National Veterans Foundation as Class Representatives for the Proposed Class and Plaintiff Johnson as Class Representative for the Proposed Subclass, and APPOINTS Public Counsel Law Center, Inner City Law Center, Brown Goldstein & Levy, LLP and Robins Kaplan LLP as Class Counsel for both the Proposed Class and Subclass.

DATED: May 3, 2024

*[signature: David O. Carter]*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE