# EXHIBIT A

## Settlement Agreement

<u>SETTLEMENT AND RELEASE AGREEMENT</u>

      This Settlement and Release Agreement (the "**Agreement**") is entered into as of the Execution Date (defined below) by and among (i) Plaintiffs Jeffrey Powers, Deavin Sessom, Laurieann Wright, Joseph Fields, Lavon Johnson, Joshua Robert Petitt, and National Veterans Foundation (collectively, the "**Plaintiffs**"), on behalf of themselves and the Class and Subclass (defined below), (ii) Bridgeland Resources, LLC, a Delaware limited liability company ("**Bridgeland**"), and (iii) Denis Richard McDonough, in his official capacity as Secretary of Veterans Affairs, Adrianne Todman, in her official capacity as Acting Secretary of Housing and Urban Development, Robert Merchant, in his official capacity as Director, VA Greater Los Angeles Healthcare System, and Keith Harris, in his official capacity as Senior Executive Homelessness Agent, VA Greater Los Angeles Healthcare System (collectively, the "**Defendants**").

<u>RECITALS</u>

      A.    On November 15, 2022, Plaintiffs filed *Jeffrey Powers, et al. v. Denis Richard McDonough, et al.*, Case No. 2:22-cv-08357 (United States District Court, Central District of California) (the "**Action**").

      B.    In the Action, Plaintiffs assert claims against the Defendants arising out of Defendants' alleged failure to provide certain housing and services to Plaintiffs and similarly situated veterans.  Among other things, Plaintiffs also seek an order enjoining Defendants from continuing to maintain certain leases and land use agreements at the West Los Angeles VA Campus (the "**WLA Grounds**") with third parties.  Plaintiffs contend, and Defendants and Bridgeland deny, that certain leases and land use agreements at the WLA Grounds with third parties are maintained in violation of the West Los Angeles Leasing Act of 2016 (Pub. L. 114-226, as amended through Pub. L. 117-263) (the "**WLALA2016**").

      C.    Bridgeland is an oil and gas producer that operates wells and associated infrastructure on a portion of the WLA Grounds.

      D.    Among other leases, Bridgeland operates pursuant to the "Offer to Lease for Oil and Gas Noncompetitive Acquired Lands Lease," with the United States of America, as lessor, and Tom Dowlen, as lessee, Serial No. 0138800, dated February 21, 1956, and entered into by the United States on November 1, 1963 (the "**1956 BLM Lease**"), which authorizes Bridgeland's use of the drillsite currently located on the WLA Grounds (the "**Current Drillsite**").

      E.    On or about 1964, Bridgeland's predecessor to the 1956 BLM Lease, Tom H. Dowlen, granted the United States of America a 2.5% overriding royalty interest (the "**Dowlen Charitable ORRI**") on all oil produced from wells drilled pursuant to the 1956 BLM Lease as a charitable gift ("**Dowlen Wells**").

      F.    Bridgeland also operates pursuant to the "Protective Oil and Gas Lease" with the United States of America, as lessor, and Occidental Petroleum Corporation, as lessee, dated January 1, 1969 (the "**1969 BLM Lease**").  The 1969 BLM Lease granted the lessee and its successors use of an additional drillsite located north of Constitution Avenue on the WLA

Grounds (the "**Additional Drillsite**").

G.      On December 23, 2016, Breitburn Operating LP, the U.S. Department of Veterans
Affairs, and United States of America through the Bureau of Land Management ("**BLM**")
entered into the Amendment, Partial Surrender of Surface Rights and Ratification of Protective
Oil and Gas Lease (the "**2016 Partial Surrender**"). The 2016 Partial Surrender surrendered
Breitburn Operating LP's rights to the Additional Drillsite, as successor to Occidental Petroleum
Corporation, and granted to Breitburn Operating LP certain surface rights to the "Replacement
Drill Site" (as that term is defined in the 2016 Partial Surrender) at the WLA Grounds (the
"**Replacement Drill Site**"), as more particularly described in the 2016 Partial Surrender.
Bridgeland is the successor to Breitburn Operating LP's rights and interests under the 2016
Partial Surrender.

H.      Bridgeland also currently maintains a revocable license with the Department of
Veterans Affairs: the Amendment, Revival, and Extension of the Revocable License for Non-
Federal Use of Real Property Agreement, Department of Veterans Affairs License No. 691-97-
01-1L, effective March 7, 2017 (the "**2017 Amendment**").

I.      Under the 2016 Partial Surrender and the 2017 Amendment, Bridgeland is
required to donate to the Disabled American Veterans Los Angeles Chapter ("**DAV-LA**") an
amount equal to a 2.5% overriding royalty on all proceeds from oil and gas produced from wells
drilled pursuant to the 2016 Partial Surrender and the 2017 Amendment, respectively
(collectively, the "**License Wells**", and together with the Dowlen Wells, the "**ORRI Wells**")).
Additionally, pursuant to the 2017 Amendment, the Dowlen Charitable ORRI also is donated to
the DAV-LA. The 2016 Partial Surrender and the 2017 Amendment each state that the DAV-LA
shall use the royalty proceeds "solely for the purpose of providing transportation to Veterans on
and around the VA Greater Los Angeles Healthcare System Campus."

J.      Pursuant to the 2016 Partial Surrender, Breitburn Operating LP entered into that
certain Donation Agreement with Disabled American Veterans, Department of California
("**DAV-CA**"), dated December 12, 2017, to allow the royalties payable to the DAV-LA pursuant
to the 2016 Partial Surrender to be paid to DAV-CA (the "**Donation Agreement**").

K.      Plaintiffs contend that the 2016 Partial Surrender and the 2017 Amendment
violate the WLALA2016, which Defendants and Bridgeland deny.

L.      On January 22, 2023, the Court ordered the Plaintiffs and Defendants to provide
written notice of the Action to certain third parties whose leases and land use agreements the
Plaintiffs sought to invalidate.

M.      Following notice of the Action, on March 4, 2024, Bridgeland filed a motion for
leave to file a Complaint in Intervention in the Action against Plaintiffs. On April 5, 2024, the
Court granted Bridgeland's motion to intervene, and Bridgeland filed its Complaint in
Intervention (the "**Intervenor Complaint**"). The Intervenor Complaint asserts a single claim for
Declaratory Relief against the Plaintiffs. The Intervenor Complaint requests a judicial
declaration regarding its rights, obligations, and interests with respect to the 2016 Partial
Surrender, the 2017 Amendment, and, specifically, a judicial determination that the 2016 Partial

Surrender and the 2017 Amendment comply with the WLALA206.  On April 26, 2024, Plaintiffs filed an answer denying the allegations in the Intervenor Complaint.

N.      On April 1, 2024, Plaintiffs filed a motion for class certification (the "**Class Certification Motion**").  Plaintiffs sought certification of a class of "[a]ll homeless veterans with Serious Mental Illness or Traumatic Brain Injuries, who reside in Los Angeles County" (the "**Class**") and a subclass of "[a]ll Class Members whose income (including veterans disability benefits) exceeds 50% of the Area Median Income" (the "**Subclass**").  On May 3, 2024, the Court granted the Class Certification Motion, certified the Class and Subclass, and named Plaintiffs as the representatives of the Class and Subclass.

O.      Plaintiffs, on behalf of themselves, the Class, and the Subclass, now desire to settle all of Plaintiffs' claims concerning the validity and/or legality of the 2016 Partial Surrender and the 2017 Amendment asserted in the Action (the "**Plaintiffs' Settled Claims**"), Bridgeland now desires to settle the claims asserted in the Intervenor Complaint (the "**Bridgeland Settled Claims**") (the Plaintiffs' Settled Claims and the Bridgeland Settled Claims are collectively referred to as the "**Settled Claims**"), and Defendants now desire to settle the **Settled Claims**, on the terms contained in this Agreement.

## AGREEMENT

For good and valuable consideration, the sufficiency of which is hereby acknowledged, Plaintiffs, Bridgeland, and Defendants agree as follows:

1.      Incorporation of Recitals.  The Recitals listed above are incorporated herein by reference.

2.      Execution Date.  This Agreement shall become effective only after full execution by all parties to this Agreement.  Upon such an occurrence, the "**Execution Date**" of this Agreement shall be the date that the last party executes this Agreement.

3.      Agreement Subject to Court Approval.  This Agreement is contingent upon Court approval.  Plaintiffs, Bridgeland, and Defendants intend to file a motion for preliminary approval of this Agreement and the settlement of the Settled Claims and a motion for a fairness hearing.  This Agreement, including the obligations and releases in this Agreement, shall become effective only if and when the Court grants final approval of this Agreement.

4.      Modification of Donation Under 2017 Amendment.  Upon approval of this Agreement by the Court, and beginning thereafter and so long as the 2017 Amendment (including any extension or renewal thereof) is effective, Bridgeland shall make a monthly rental payment to a trust account to be established that is equal to an overriding royalty on gross revenue, subject to deductions for transportation, treatment, processing, and marketing, from any and all of the ORRI Wells Bridgeland operates at the WLA Grounds as follows:

a.      2.5% if the price of oil is at or below $75.00 per barrel;

b.      3.0% if the price of oil is at or above $75.01 and at or below $90.00 per barrel;

3

Docusign Envelope ID: E6F8983D-624A-4E15-B825-E0F9A8B9633E

    c.   3.5% if the price of oil is at or above $90.01 but at or below $100.00 per barrel;

    d.   4.0% if the price of oil is at or above $100.01 but at or below $130.00 per barrel; or

    e.   5.0% if the price of oil is at or above $130.01 per barrel

The trust proceeds shall be distributed to an entity jointly designated by Plaintiffs and VA. Such designee shall use the proceeds to principally benefit veterans and their families pursuant to WLALA2016. In the event Plaintiffs and VA are unable to jointly designate a designee, the dispute shall be resolved by the United States District Court for the Central District of California.

Upon approval of this Agreement by the Court, and effective at that time, Bridgeland shall have no further obligation to donate monthly payments to the DAV-LA or the DAV-CA pursuant to the 2016 Partial Surrender, the 2017 Amendment, and/or the Donation Agreement.

5.   <u>Determination of Price of Oil for Calculating Overriding Royalty</u>. For purposes of calculating the monthly payment under this Agreement, the price of oil shall be the price actually paid to Bridgeland by Bridgeland's oil purchaser to purchase the oil.

6.   <u>Agreement Not to Contest 2017 Amendment Extension or Similar License</u>. Plaintiffs, for themselves, the Class, and the Subclass, agree that the terms of the 2017 Amendment, as modified by this Agreement, principally benefit veterans for purposes of the WLALA2016, and Plaintiffs agree not to object or challenge any extension to the term of the 2017 Amendment or any new license with substantially similar terms as the 2017 License.

7.   <u>Surrender of the Replacement Drill Site; Use for Supporting Housing</u>. Upon approval of this Agreement by the Court, Bridgeland, as the successor Lessee under the 2016 Partial Revocation, shall execute and cause the recordation of the Conditional Quitclaim Deed, in the form attached as **<u>Exhibit 1</u>** to this Agreement.

8.   <u>Bureau of Land Management</u>. The Parties agree that this Agreement shall have no impact or effect on any of the rights of the BLM and shall have no impact or effect on the 1956 BLM Lease, the 1969 BLM Lease, or Bridgeland's use of the Current Drillsite.

9.   <u>Attorneys' Fees and Costs</u>. Plaintiffs intend to submit an application for recovery of up to $200,000 in reasonable attorneys' fees and costs incurred as to Bridgeland in relation to the Settled Claims. Bridgeland agrees not to oppose such application. Except as provided in this section, Plaintiffs and Bridgeland will each bear their own attorneys' fees and costs in connection with the Action. The provisions of this paragraph do not apply to Defendants.

10.   <u>Release by Plaintiffs</u>. In exchange for the consideration and obligations set forth in this Agreement, subject to Court approval of this Agreement, and except for those obligations set forth in this Agreement, Plaintiffs, for themselves, the Class, and the Subclass, as well as their insurers, administrators, attorneys, agents, representatives, assignees, employees, managers, members, trusts, shareholders, affiliates, alter-egos, beneficiaries, and personal representatives, and any other related persons or entities (collectively, the "**<u>Plaintiff Releasing Parties</u>**") do

hereby irrevocably and unconditionally release, acquit, hold harmless, and forever discharge Bridgeland, Defendants, the United States of America, the U.S. Department of Veterans Affairs, and the U.S. Bureau of Land Management and their respective insurers, administrators, attorneys, agents, representatives, assignees, employees, managers, members, trusts, shareholders, affiliates, alter-egos, beneficiaries, personal representatives, and any other related persons or entities (collectively, the "**Bridgeland and Defendants Released Parties**"), from and against the Plaintiffs' Settled Claims, and the Plaintiff Releasing Parties shall be forever barred from prosecuting the Plaintiffs' Settled Claims against the Bridgeland and Defendants Released Parties.  For the avoidance of doubt, the release, acquittal, hold harmless, and discharge contained in this section applies only to Plaintiffs' claims concerning the validity and/or legality of the 2016 Partial Surrender and the 2017 Amendment asserted in the Action, and Plaintiffs specifically do not release, acquit, hold harmless, and discharge Defendants from the other claims and causes of action that Plaintiffs have asserted against Defendants in the Action.

11.    Release by Bridgeland. In exchange for the consideration and obligations set forth in this Agreement, subject to Court approval of this Agreement, and except for those obligations set forth in this Agreement, Bridgeland, as well as its insurers, administrators, attorneys, agents, representatives, assignees, employees, managers, members, trusts, shareholders, affiliates, alter-egos, beneficiaries, and personal representatives, and any other related persons or entities (collectively, the "**Bridgeland Releasing Parties**") do hereby irrevocably and unconditionally release, acquit, hold harmless, and forever discharge the Plaintiff Releasing Parties from and against the Bridgeland Settled Claims, and the Bridgeland Releasing Parties shall be forever barred from prosecuting the Bridgeland Settled Claims against the Plaintiff Releasing Parties.

12.    Dismissals.  Upon the Court's final approval of this Agreement, the Settled Claims shall be dismissed with prejudice.  Plaintiffs, Bridgeland, and Defendants shall cooperate in filing any documents as may be necessary to accomplish such dismissals.

13.    Notice.  All notices required to be given under this Agreement shall be as follows:

a.    To the Plaintiffs:        Roman Silberfeld
Robins Kaplan LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
RSilberfeld@RobinsKaplan.com

*With copy to*:
Mark D Rosenbaum
Public Counsel
610 S Ardmore Ave.
Los Angeles, CA 90005
mrosenbaum@publiccounsel.org

b.    To Bridgeland:        Scott Wood
Bridgeland Resources, LLC
109 N. Post Oak Lane, Ste 230
Houston, Texas 77024

*With copy to*:
Ernest J. Guadiana, Esq.
Elkins Kalt Weintraub Reuben Gartside LLP
10345 W. Olympic Boulevard
Los Angeles, California 90064
EGuadiana@elkinskalt.com

    c.   To Defendants:    Brad P. Rosenberg
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
brad.rosenberg@usdoj.gov

14.    <u>Release Made Without Reliance on Other Parties</u>.

    a.   The parties to this Agreement acknowledge that in making this Agreement it is understood and agreed that the parties, and each of them individually, rely solely upon their own judgment (or that of their attorneys, experts, and/or advisors), belief, and knowledge of the nature, extent, and duration of said claims, rights, injuries, and/or damages, and that they have not been influenced to any extent whatsoever in executing or making this Agreement by any representations or statements regarding said claims, rights, injuries, and/or damages, or any other matter, made by the persons, firms, or corporations constituting those other individuals or by any person or persons representing them.

    b.   The parties acknowledge and agree that each party has been represented by counsel of its own choosing in the negotiation and preparation of this Agreement and/or has been afforded the opportunity to consult with such counsel; that such party has, by and through its duly authorized representatives, read this agreement; that such party has been advised by counsel or its representatives and is fully aware of the contents of this Agreement and its legal effect; that such party assumes the risk of any mistake of fact or law with regard to any aspect of this Agreement, the claims waived and released by this Agreement and any rights released by this Agreement; that the paragraphs of this Agreement recite the sole consideration for this Agreement; that all Agreements, expectations, and understandings among the parties are embodied and expressed herein and that such party enters into this Agreement freely, without coercion and based upon its own judgment and not in reliance upon any representations or promises made by the parties, other than those contained herein.

15.    <u>Time of the Essence</u>.  Time is of the essence with respect to any act, performance, or payment under this Agreement.

16.    <u>Warranties and Representations</u>. Each party to this Agreement hereby warrants

Docusign Envelope ID: E6F8983D-624A-4515-B825-E0F9A8B9633E

and represents, as of the Execution Date, that: (i) that party has had the opportunity to review and discuss this Agreement; (ii) that party is aware that the Agreement affects significant legal rights of the parties; (iii) that party has full capacity, right, power and authority to execute, deliver, and perform this Agreement; (iv) this Agreement are being executed solely in reliance on each party's own respective judgment, belief, and knowledge of the matters set forth here and on the advice of such party's respective attorneys following an independent investigation of all relevant matters to the extent he or it deem necessary and reasonable; and (v) none of the parties has made, or is relying on, any representations or warranties except as set forth herein.

17.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors in interest and assigns.

18.    <u>Further Assurances</u>.  Bridgeland, Plaintiffs, and Defendants agree to execute any additional documents and take any further actions which reasonably may be required of them or their respective counsel in order to consummate this Agreement or otherwise to fulfill the intent of the parties hereunder.

19.    <u>Entire Agreement</u>.  This Agreement, including the attached exhibits, constitutes an integration of the entire understanding and agreement of the parties with respect to the settlement set forth in this Agreement.  By executing this Agreement, the parties represent to one another that they have not relied upon any other representation, promise, or condition not specifically contained in or disclosed by this Agreement.

20.    <u>Counterparts; Electronic Signatures</u>.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which taken together shall constitute one and the same instrument as and when signed by each of the parties.  A copy of a party's signature on this Agreement shall be acceptable in any action against that party to enforce this Agreement.  Facsimile or electronic copies of this Agreement shall be deemed for all purposes to have the same force and effect as the original hereof.  A facsimile or image scan of a signature shall be binding against the party whose signature appears on the facsimile or image scan, provided such facsimile or image scan is delivered by the party whose signature appears on the facsimile or image scan.  The parties expressly agree that this Agreement may be executed via electronic signatures, including but not limited to electronic signatures effectuated via DocuSign or PDF, and such electronic signatures are binding and have the same force and effect as wet signatures.

21.    <u>Governing Law</u>.  This Agreement shall be construed under the law of the United States, and the State of California where not inconsistent with U.S. law.

22.    <u>Amendment</u>.  This Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties.

23.    <u>Waiver</u>.  The waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver of any provision of this Agreement shall be binding on the parties hereto unless it is executed in writing by the party making the waiver.

24.    <u>Captions</u>.  Captions and paragraph headings used herein are for convenience only and shall not be deemed relevant in construing this Agreement.

25.    <u>Survival of Provisions</u>.  All promises, covenants, releases, representations, and warranties contained in this Agreement shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated herein.

26.    <u>Enforceability</u>.  The parties agree that this Agreement is fully binding and enforceable.  If any provision of the Agreement or the application thereof is held invalid by a court, arbitrator, or government agency of competent jurisdiction, the parties agree that such a determination of invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions and thus shall remain in full force and effect or application.

27.    <u>Modifications</u>.  No modification, amendment, or waiver of any of the provisions contained in this Agreement, or any future representations, promises, or conditions in connection with the subject matter of this Agreement, shall be binding upon any party to this Agreement unless made in writing and signed by the parties.

28.    <u>Agreement Drafted by All Parties</u>.  This Agreement is the product of negotiation and preparation by and among the parties and their respective attorneys and advisors.  Neither this Agreement nor any provisions thereof shall be deemed prepared or drafted by any one party or another, or their attorneys or advisors, and shall not be construed more strongly against any party.


SIGNATURES FOLLOW ON NEXT PAGE

DATED:  August 13, 2024          BROWN GOLDSTEIN & LEVY, LLP

By: _____
EVE HILL
*Counsel forPlaintiffs, the Class, and the Subclass*


DATED:  August 13, 2024          PUBLIC COUNSEL LAW CENTER

By: _____
MARK ROSENBAUM
*Counsel forPlaintiffs, the Class, and the Subclass*


DATED:  August 13, 2024          ROBINS KAPLAN LLP

By: _____
ROMAN M. SILBERFELD
*Counsel forPlaintiffs, the Class, and the Subclass*


DATED:  August 13, 2024          BRIDGELAND RESOURCES, LLC

By: _____
SCOTT WOOD
President, Bridgeland Resources, LLC

Docusign Envelope ID: E6F8983D-624A-4E15-B025-E0E0A8B0633E

DATED:  August 13, 2024          ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

By: *Ernest J. Guadiana*

ERNEST J. GUADIANA
*Counsel for Intervenor Bridgeland Resources, LLC*

DATED:  August 13, 2024          U.S. DEPARTMENT OF JUSTICE

By: *Brad P. Rosenberg (Signed 8-14-2024)*

BRAD P. ROSENBERG
*Counsel for Federal Defendants Denis Richard McDonough, in his official capacity as Secretary of Veterans Affairs, Adrianne Todman, in her official capacity as Acting Secretary of Housing and Urban Development, Robert Merchant, in his official capacity as Director, VA Greater Los Angeles Healthcare System, and Keith Harris, in his official capacity as Senior Executive Homelessness Agent, VA Greater Los Angeles Healthcare System (collectively, the Defendants)*

Docusign Envelope ID: E6F8983D-624A-4E15-B025-E0F0A8B0633E

<u>Exhibit 1</u>

(Conditional Quitclaim Deed)

RECORDING REQUESTED BY
REQUESTED BY and
WHEN RECORDED MAIL TO

BRIDGELAND RESOURCES, LLC
109 N. POST OAK LANE, SUITE 230
HOUSTON, TX 77024
ATTN: LAND DEPARTMENT

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

**"This is a conveyance of an easement and the consideration and value is less than $100.00, R & T 11911."**

## CONDITIONAL QUITCLAIM DEED

THIS CONDITIONAL QUITCLAIM DEED (this "**Deed**") is made as of _____, 2024 (the "**Effective Date**"), by **BRIDGELAND RESOURCES, LLC**, a Delaware limited liability company ("**Bridgeland**"), as successor in interest to BREITBURN OPERATING LP, a Delaware limited partnership ("**BreitBurn**"), to the U.S. DEPARTMENT OF VETERANS AFFAIRS ("**VA**", and referred together with Bridgeland as the "**Parties**").

### *Recitals*

A.     VA is the surface owner of the West Los Angeles VA Campus (the "**WLA Grounds**").

B.     Bridgeland operates wells and associated infrastruture on a portion of the WLA Grounds (the "**Bridgeland Drillsite**") pursuant to the "Offer to Lease for Oil and Gas Noncompetitive Acquired Lands Lease," with the United States of America, as lessor, and Tom Dowlen, as lessee, Serial No. 0138800, dated February 21, 1956, and entered into by the United States on November 1, 1963 (the "**1956 BLM Lease**"), which authorizes Bridgeland's use of the Bridgeland Drillsite.  The Bridgeland Drillsite is delineated by a chain link fence on the southern border.

C.     Among other equipment, the Bridgeland Drillsite contains a flare near the southwest corner of the Bridgeland Drillsite (the "**Flare**"), which is identified as South Coast Air Quality Management District Facility No. 195338.

D.     As surface owner of the WLA Grounds, VA is the surface owner of those certain lands identified as the "Replacement Drill Site" (as that term is defined in the *Amendment, Partial Surrender of Surface Rights and Ratification of Protective Oil and Gas Lease*, recorded on January 10, 2017, as Document No. 20170033917 in the Official Records of Los Angeles County, California (the "**2016 Partial Surrender**") (the "**Replacement Drillsite**").

E.     On December 23, 2016, BreitBurn, the VA, and the United States of America through the Bureau of Land Management entered into the 2016 Partial Surrender.

F.      The 2016 Partial Surrender granted to BreitBurn certain surface rights to utilize the Replacement Drillsite for oil and gas operations.

G.      Through that certain *Assignment*, recorded on June 29, 2021, as Document No. 20211018629 in the Official Records of Los Angeles County, California, BreitBurn assigned to Bridgeland its interest in the 2016 Partial Surrender, including the right to utilize the Replacement Drillsite for oil and gas operations.

H.      On November 15, 2022, Plaintiffs Jeffrey Powers, Deavin Sessom, Laurieann Wright, Joseph Fields, Lavon Johnson, Joshua Robert Petitt, and National Veterans Foundation ("**Plaintiffs**") filed *Jeffrey Powers et al. v. Denis Richard McDonough et al.*, Case No. 2:22-cv-08357 (United States District Court, Central District of California) (the "**Action**") against Denis Richard McDonough, in his official capacity as Secretary of Veterans Affairs, Adrianne Todman, in her official capacity as Acting Secretary of Housing and Urban Development, Robert Merchant, in his official capacity as Director, VA Greater Los Angeles Healthcare System, and Keith Harris, in his official capacity as Senior Executive Homelessness Agent, VA Greater Los Angeles Healthcare System (collectively, the "**Defendants**").

I.      On April 1, 2024, Plaintiffs filed a motion for class certification (the "**Class Certification Motion**"), which sought certification of a class of "[a]ll homeless veterans with Serious Mental Illness or Traumatic Brain Injuries, who reside in Los Angeles County" (the "**Class**") and a subclass of "[a]ll Class Members whose income (including veterans disability benefits) exceeds 50% of the Area Median Income" (the "**Subclass**").

J.      On April 5, 2024, Bridgeland was permitted to intervene in the Action.

K.      On May 3, 2024, the Court granted the Class Certification Motion, certified the Class and Subclass, and named Plaintiffs as the representatives of the Class and Subclass.

L.      Pursuant and subject to an agreement between Plaintiffs and Bridgeland to settle their respective claims concerning the Bridgeland's oil and gas operations on the WLA Grounds, Bridgeland seeks to provide the VA with land on the WLA Campus to allow for the supportive housing for veterans sought by the Plainitffs through the Action.

### *Conditional Quitclaim*

NOW, THEREFORE, Bridgeland does hereby conditionally surrender and quitclaim to the VA any and all rights, title, and interest which Bridgeland may have or claim to have in the portion of the Replacement Drillsite that lays outside the bounds of the Bridgeland Drillsite, which lands are legally described in Exhibit A and depicted in Exhibit B, that were obtained through the 2016 Partial Surrender, subject to the following conditions and obligations:

1.      Bridgeland's rights in the Replacement Drillsite shall only be surrendered and quitclaimed to the extent that the Replacement Drillsite is used to construct supportive housing for veterans or is utilized by the VA for another purpose to allow additional land on the WLA Grounds to be utilized for supportive housing for veterans.

2.      To the extent that federal, state or local rules or regulations applicable to a proposed supportive housing development for veterans on the Replacement Drillsite require the relocation

of the Flare, then Bridgeland, or the successor to the lessee's interest in the 1956 BLM Lease, shall take good faith actions to relocate the flare at its sole cost.

The Exhibits to this Deed are hereby incorporated by reference and constitute a part of this Deed.

This Deed shall extend to, be binding upon, and inure to the benefit of the Parties and their respective successors and assigns.

*[Signature on following page]*

IN WITNESS WHEREOF, this Deed has been executed as of the Effective Date.

**BRIDGELAND RESOURCES, LLC**

By: _____

Name: Scott Wood

Its: President

## EXHIBIT A

## LEGAL DESCRIPTION OF REPLACEMENT DRILLSITE

A PARCEL OF LAND SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, LYING WITHIN AND BEING A PORTION OF THE UNITED STATES VETERAN'S ADMINISTRATION LANDS AS SHOWN ON THE MAP OF THAT PORTION OF THE RANCHO SAN VICENTE AND SANTA MONICA KNOWN AS THE VILLA FARMS, RECORDED IN BOOK 70, PAGE 54 ET SEQ. OF MISCELLANEOUS RECORDS IN THE OFICE OF THE RECORDER OF SAID COUNTY; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE POINT OF INTERSECTION OF THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE ROUTE 405 AND THE SOUTHERLY RIGHT-OF-WAY LINE OF CONSTITUTION AVENUE (60' R/W) AS SHOWN ON THE RECORD OF SURVEY OF STATE ROUTE 405 RECORDED IN BOOK 237, PAGES 41 THROUGH 70, INCLUSIVE, OF OFFICIAL RECORDS IN THE OFFICE OF THE RECORDER OF SAID COUNTY AND IDENTIFIED BY SAID RECORD OF SURVEY AS THE NORTHWESTERLY CORNER OF THE LAND DESCRIBED AS UNIT 111 PER DEED BOOK 48033, PAGES 392 THROUGH 409 AND IN THE DEED OF CORRECTION PER BOOK 3633, PAGES 681 THROUGH 691, OF SAID OFFICIAL RECORDS: THENCE SOUTH 54°39'55" WEST ALONG SAID SOUTHERLY RIGHT OF-WAY LINE OF CONSTITUTION AVENUE 20.03 FEET TO AN INTERSECTION WITH THE WESTERLY LINE OF THE "LICENSE TO OPERATE FREEWAY" PARCEL NO. 79711-1 SHOWN ON THE CALTRANS SR 11-287 SURVEY REPORT DATED DECEMBER 14, 2011; THENCE SOUTH 32° 07' 43" EAST ALONG SAID WESTERLY LINE, 379.78 FEET; THENCE SOUTH 25°43'33" EAST ALONG SAID WESTERLY LINE, 58.15 FEET TO THE TRUE POINT OF BEGINNING AT THE INTERSECTION WITH THE SOUTHERLY LINE OF A PARCEL OF LAND DESIGNATED AS A DRILLSITE PURSUANT TO A LEASE ISSUED TO TOM H. DOWLEN ON OCTOBER 18. 1963 AND ASSIGNED TO GULF OIL CORPORATION OF CALIFORNIA ON JANUARY 24, 1964 SAID PARCEL ORIGINALLY OPERATED BY OCCIDENTAL PETROLEUM CORPORATION AND CURRENTLY OPERATED BY BRIDGELAND RESOURCES, LLC; THENCE CONTINUE SOUTH 25°43'33" EAST ALONG SAID WESTERLY LINE, 117.94 FEET; THENCE LEAVING SAID WESTERLY LINE OF THE "LICENSE TO OPERATE FREEWAY" PARCEL NO. 79711-1, SOUTH 46°48'39" WEST, 317.94 FEET; THENCE NORTH 44°15'12" WEST, 69.34 FEET; THENCE NORTH 11°30'44" EAST, 31.09 FEET TO THE POINT OF CURVATURE OF A CURVE CONCAVE WESTERLY AND HAVING A RADIUS OF 263.00 FEET AND A CENTRAL ANGEL OF 18°05'24"; THENCE NORTHERLY ALONG SAID CURVE, AN ARC DISTANCE OF 83.04 FEET; THENCE LEAVING SAID CURVE ON A NON-TANGENTIAL LINE NORTH 49°15'41" EAST, 60.60 FEET TO AN INTERSECTION WITH THE WESTERLY LINE OF SAID DRILL SITE CURRENTLY OPERATED BY BREITBURN ENERGY; THENCE SOUTH 43°36'35" EAST ALONG SAID WESTERLY LINE, 30,.00 FEET TO THE MOST SOUTHERLY CORNER OF SAID DRILL SITE; THENCE NORTH 46°48'39" EAST ALONG THE SOUTHERLY LINE OF SAID DRILL SITE, 209.34 FEET TO THE SAID POINT OF BEGINNING.

**BUT EXCLUDING** THE PARCEL OF LAND SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, LYING WITHIN AND BEING A PORTION OF THE UNITED STATES VETERAN'S ADMINISTRATION LANDS AS SHOWN ON THE MAP OF THAT PORTION OF THE RANCHO SAN VICENTE AND SANTA MONICA KNOWN AS THE VILLA FARMS, RECORDED IN BOOK 70, PAGE 54 ET SEQ. OF MISCELLANEOUS RECORDS IN THE OFFICE OF THE RECORDER OF SAID COUNTY; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE POINT OF INTERSECTION OF THE WESTERLY RIGHT-OF-WAY LINE OF INTERSTATE ROUTE 405 AND THE SOUTHERLY RIGHT-OF-WAY LINE OF CONSTITUTION AVENUE (60' R/W) AS SHOWN ON THE RECORD OF SURVEY OF STATE ROUTE 405 RECORDED IN BOOK 237, PAGES 41 THROUGH 70, INCLUSIVE, OF OFFICIAL RECORDS IN THE OFFICE OF THE RECORDER OF SAID COUNTY AND IDENTIFIED BY SAID RECORD OF SURVEY AS THE NORTHWESTERLY CORNER OF THE LAND DESCRIBED AS UNIT III PER DEED BOOK 48033, PAGES 392 THROUGH 409 AND IN THE DEED

OF CORRECTION PER BOOK 3633, PAGES 681 THROUGH 691, OF SAID OFFICIAL RECORDS; THENCE SOUTH 54°39'55" WEST ALONG SAID SOUTHERLY RIGHT-OF-WAY LINE OF CONSTITUTION AVENUE 20.03 FEET TO AN INTERSECTION WITH THE WESTERLY LINE OF THE "LICENSE TO OPERATE FREEWAY" PARCEL NO. 79711-1 SHOWN ON THE CALTRANS SR 11-287 SURVEY REPORT DATED DECEMBER 14, 2011; THENCE SOUTH 32°07'43" EAST ALONG THE WESTERLY LINE OF SAID LICENSE, 379.78 FEET; THENCE SOUTH 25°43'33" EAST ALONG SAID WESTERLY LINE, 58.15 FEET TO THE POINT OF BEGINNING AT THE INTERSECTION WITH THE SOUTHERLY LINE OF A PARCEL OF LAND DESIGNATED AS A DRILLSITE PURSUANT TO A LEASE ISSUED TO TOM H. DOWLEN ON OCTOBER 18, 1963 AND ASSIGNED TO GULF OIL CORPORATION OF CALIFORNIA ON JANUARY 24, 1964, SAID PARCEL ORIGINALLY OPERATED BY OCCIDENTAL PETROLEUM CORPORATION AND CURRENTLY OPERATED BY BRIDGELAND RESOURCES, LLC; THENCE CONTINUING ALONG SAID WESTERLY LINE,

1. SOUTH 25°43'33" EAST, 30.90 FEET; THENCE LEAVING SAID WESTERLY LINE OF THE "LICENSE TO OPERATE FREEWAY" PARCEL NO. 79711-1,

2. SOUTH 55°55'44" WEST, 23.33 FEET; THENCE,

3. SOUTH 46°29'47" WEST, 184.38 FEET; THENCE,

4. NORTH 42°57'25" WEST, 57.08; THENCE,

5. NORTH 49°15'41" EAST, 6.90 FEET TO A POINT IN THE WESTERLY LINE OF SAID LEASE PARCEL CURRENTLY OPERATED BY BREITBURN ENERGY; THENCE,

6. SOUTH 43°36'35" EAST ALONG SAID WESTERLY LINE, 30.00 FEET TO THE MOST SOUTHERLY CORNER OF SAID LEASE PARCEL; THENCE,

7. NORTH 46°48'39" EAST ALONG THE SOUTHERLY LINE OF SAID LEASE PARCEL, 209.34 FEET TO THE SAID POINT OF BEGINNING.

TOGETHER WITH THE RIGHT TO USE THE SURFACE LOCATION REPLACEMENT DRILL SITE FOR THE PURPOSE OF DRILLING AND BORING FOR OIL, GAS, PETROLEUM AND OTHER MINERAL OR HYDROCARBON SUBSTANCES, UNDER SAID LEASE OR ANY OTHER LANDS, TOGETHER WITH ALL RIGHTS AND PRIVILEGES NECESSARY AND PROPERLY INCIDENT THERETO, INCLUDING THE RIGHT TO COMPLETE, RECOMPLETE, MAINTAIN, OPERATE, DEEPEN, REDRILL, AND/ OR REPAIR ANY AND ALL WELLS DRILLED ON THE SURFACE LOCATION REPLACEMENT DRILL SITE, THE RIGHT TO PRODUCE WATER FROM SURFACE LOCATION REPLACEMENT DRILL SITE AND USE THE WATER SO PRODUCED IN CONNECTION WITH THE PRODUCTION AND DEVELOPMENT OF OIL, GAS, PETROLEUM, AND OTHER MINERAL OR HYDROCARBON SUBSTANCES, THE RIGHT TO INJECT WATER, OTHER FLUIDS AND/ OR GAS INTO THE SUBSURFACE STRATA, AND THE RIGHT TO CONSTRUCT, MAINTAIN, USE AND REMOVE SUCH TANKS, BUILDINGS, APPLIANCES, MACHINERY, FIXTURES AND APPURTENANCES AS MAY BE REASONABLY NECESSARY IN CARRYING ON SUCH OPERATIONS, AND THE RIGHT TO CONSTRUCT, MAINTAIN AND USE OVER, THROUGH, AND ACROSS THE SURFACE LOCATION REPLACEMENT DRILL SITE, AND TO REMOVE THEREFROM SUCH TELEPHONE, TELEGRAPH OR ELECTRIC LINES, PIE LINES, ROADWAYS AND OTHER STRUCTURES AS MAY BE NECESSARY IN CONNECTION WITH THE DEVELOPMENT OF OIL, GAS, PETROLEUM AND OTHER MINERAL OR HYDROCARBON SUBSTANCES UNDER SAID LEASE AND UNDER ANY OTHER LANDS.

# EXHIBIT B

## DEPICTION OF REPLACEMENT DRILLSITE



## BUT EXCLUDING THE LAND DEPICTED BELOW



Docusign Envelope ID: E6F8983D-624A-4E15-B025-E0E0A8B0633E

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of Los Angeles                       )


On _____, before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature        _____