1  Raymond A. Cardozo (SBN 173263)
   rcardozo@reedsmith.com
2  Kasey J. Curtis (SBN 268173)
   kcurtis@reedsmith.com
3  Corinne Fierro (SBN 329499)
   cfierro@reedsmith.com
4  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
5  Los Angeles, CA  90071-1514
   Telephone: (213) 457-8181
6  Facsimile: (213) 457-8080
7
8  Attorneys for Non-Party, The Regents of
   the University of California
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13  JEFFREY POWERS, et al.,              No.:  2:22-CV-08357-DOC-JEMx

14         Plaintiffs,                   **Honorable David O. Carter**

15      vs.

16  DENIS RICHARD MCDONOUGH, et al.,     **NON-PARTY THE REGENTS OF
                                         THE UNIVERSITY OF
17         Defendants.                   CALIFORNIA'S NOTICE OF
                                         MOTION AND MOTION TO
18                                       MODIFY INJUNCTION BASED ON
                                         MODIFIED PROPOSAL; MOTION
19                                       TO INTERVENE**

20                                       [*Filed Concurrently Herewith*
                                         Declarations of Anthony DeFrancesco,
21                                       Stephen Agostini, Martin Jarmond, and
                                         Raymond A. Cardozo; [Proposed] Order]
22
23                                       Date:  October 4, 2024
                                         Time:  1:30 p.m.
24                                       Place:  Courtroom 1
25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

**PLEASE TAKE NOTICE** that on October 4, 2024, or as soon thereafter as counsel may be heard by the above-entitled court, located at Courtroom 1, United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Non-Party The Regents of the University of California (the "University" or "The Regents"), by and through its counsel of record, will and hereby does present this Court with a modified proposal and based on that proposal and the accompanying evidence and briefing move this Court for: (1) an Order modifying its September 25, 2024 Order enjoining its UCLA campus from using Jackie Robinson Stadium and its neighboring practice fields ("Stadium"); (2) leave to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure.

As further explained in the accompanying memorandum, good cause exists to modify the Court's September 25 Order enjoining UCLA from using the Stadium.

Further, good cause exists to grant the University's motion to intervene. The University has a right to intervene in this action under Rule 24(a) because the outcome directly impacts the University's interests, the current representation is inadequate to address these interests, and this motion is timely made. Additionally, the Court should grant the University permission to intervene under Rule 24(b) to address the change in circumstances brought on by this Court's September 6, 2024 Post-Trial Order and subsequent September 25, 2024 Order enjoining UCLA's use of the Stadium, and the Court's October 2, 2024 comments regarding the building of temporary housing units on the Stadium parking lot.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Raymond Cardozo, Anthony DeFrancesco, Stephen Agostini, and Martin Jarmond, the files and records of this Court, all pleadings and records submitted in this litigation, and such other matters as may be raised during oral argument if so ordered.

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

1    Given the Court's September 25, 2024 Order, its scheduling of a hearing on

2 Friday, October 4, and the University's desire to appear and move the Court

3 immediately at that hearing for relief from the ongoing irreparable harm that the

4 September 25, 2024 injunction inflicts and will continue to inflict until modified, the

5 University is unable to comply with Local Rule 7-3.

6

7    DATED:  October 3, 2024                          REED SMITH LLP

8

9                                                              By: /s/ Raymond A. Cardozo
                                                                   Raymond A. Cardozo

10                                                             Attorneys for Non-Party, The Regents
                                                                   of the University of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I.    MODIFIED PROPOSAL ................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................3

III.    THE COURT SHOULD MODIFY THE INJUNCTION TO ADOPT UCLA'S PROPOSAL ................................................................7

IV.    RULE 24 ALLOWS THE UNIVERSITY TO INTERVENE TO PARTICIPATE IN SUPPORTIVE HOUSING DISCUSSIONS ....................12

    A.  Rule 24(a) Provides The University With The Right To Intervene To Contribute To A Supportive Housing Plan Pursuant To The Court's September 6, 2024 Post-Trial Order ...............................12

        1.  The Motion To Intervene Is Timely ................................12

        2.  The University Has An Interest Relating To The Subject Of The Litigation ................................13

        3.  The University's Interests Will Be Practically Impaired If Intervention Is Not Granted................................14

        4.  The Existing Parties Are Not Adequate To Represent The University's Interests................................14

    B.  The University Should Be Permitted To Intervene Under Rule 24(b) ................................16

V.    CONCLUSION ................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alemite Mfg. Co. v. Staff,*
  42 F.2d 832 (2d Cir. 1930) ........................................................................ 8

*Armstrong v. Brown,*
  768 F.3d 975 (9th Cir. 2014) ..................................................................... 8

*Cioffe v. Morris,*
  676 F.2d 539 (11th Cir. 1982) ................................................................... 9

*County of Fresno v. Andrus,*
  622 F.2d 436 (9th Cir. 1980) ................................................................... 12

*Doe v. Trump,*
  957 F.3d 1050 (9th Cir. 2020) ................................................................... 7

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998) ................................................................... 11

*Evans Prod. Co. v. W. Am. Ins. Co.,*
  736 F.2d 920 (3d Cir. 1984) ..................................................................... 9

*Forest Conservation Council v. United States Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) ............................................................. 12, 13

*Forest Conservation Council v. United States Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) ................................................................... 12

*Kootenai Tribe of Idaho v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) ................................................................. 14

*Lado v. Wolf,*
  952 F.3d 999 (9th Cir. 2020) ..................................................................... 7

*League of United Latin Am. Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) ................................................................. 11

*United States ex rel. McGough v. Covington Technologies. Co.,*
  967 F.2d 1391 (9th Cir. 1992) ................................................................. 11

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Niken v. Holder*,
   556 U.S. 418 (2009).................................................................................... 7

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967).................................................................. 12

*Nw. Forest Res. Counsel v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ...................................................................... 11

*Pellegrino v. Nesbit*,
   203 F.2d 463 (9th Cir. 1953) .................................................................... 11

*Sierra Club v. United States EPA*,
   995 F.2d 1478 (9th Cir. 1993) .................................................................. 12

*Smith v. L.A. Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) .................................................................... 11

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) .................................................................... 11

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) .................................................................... 14

*United States v. Washington*,
   86 F.3d 1499 (9th Cir. 1996) .............................................................. 10, 11

*Wilderness Soc'y v. United States Forest Serv.*,
   630 F.3d 1173 (9th. Cir. 2011) ................................................................ 12

**Rules**

Fed. R. Civ. P. 24 ............................................................................................ 12

Fed. R. Civ. P. 24(a) ...................................................................................... 13

Fed. R. Civ. P. 24(b)(3) ................................................................................. 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

# MODIFIED PROPOSAL AND LEGAL ANALYSIS

## I.    MODIFIED PROPOSAL

The Court's September 25, 2024 Order states:  "UCLA is hereby enjoined from accessing the UCLA baseball fields and facilities on the West LA VA Campus until UCLA proposes a position on how the ten acres it currently occupies can be put to a use such that the provisions of services to Veterans is the predominant focus of the activities of the Regents at the campus."  Here is a proposal that not only meets that standard, but exceeds it by a wide margin, furthering UCLA's goal of supporting Veterans:

- UCLA will increase the rent it pays the VA from the current $320,000 annual rent, to a total of $600,000 for the next 12 months (commencing upon the modification of the injunction).

- For the next 12 months, UCLA will commit to demonstrating that it is providing in-kind services valued at $2.7 million—a sum that is double the amount the Court stated in its September 6, 2024 Order.

- For the next 12 months, UCLA will have use of the baseball stadium, associated facilities, parking lot, and practice field, while prior Veteran use of and shared use arrangements for these facilities will continue in like manner to how they have heretofore proceeded under the Lease.

- For the next 12 months (and thereafter and as it has done for decades), UCLA will continue to provide world class health care services to Veterans and all the other extensive services to Veterans that UCLA has been providing for decades at the campus.

- UCLA will cede at least 2 acres in 12 months—and potentially more if the long-term outcome so provides.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

As explained below, this proposal exceeds the requirements of the 2016 West Los Angeles Leasing Act ("WLALA" or the "Act").  UCLA was absent from the trial at which Plaintiffs surprisingly injected a claim—despite not having pleaded it—that the Lease violated the Act.  The claim was surprising because Congress in the Act enacted a provision uniquely applicable to the University that differed expressly from the provisions applicable to other lessees, and that provision specifically blessed the Lease arrangement between UCLA and the VA that is highly beneficial to Veterans and that UCLA faithfully has followed.  Under the University's proposal to modify the injunction for 12 months, the status quo would be maintained as to UCLA's student athletes and their season, while the services UCLA has been providing to Veterans would be preserved and further boosted by increased rent payments and in-kind services at double the level the Court states in its September 6 order.

In the Act, Congress expressly approved the lease of this land to the University, knowing that UCLA's use of the baseball facilities was the primary benefit UCLA would get under the Lease.  In a provision that Congress enacted solely for UCLA's Lease—using different language from that which applies to the other leases, Congress made the touchstone for legal compliance an assessment of *all of the activities* that UCLA conducts at the broader VA Greater Los Angeles Healthcare System ("VA Campus"), i.e. if "the provision of services to Veterans is the predominant focus of the *activities* of the University *at the Campus* during the term of the lease."  And that is the exact language that the Court states UCLA must meet to lift the September 25, 2024 injunction.

Given the extensive world class health services that UCLA has been providing *for decades* to Veterans at this Campus, along with the extensive other services that UCLA provides to Veterans at the Campus *and* the $3 million annually in additional Veterans-focused in-kind services that UCLA has *added* after Congress enacted the 2016 Act, UCLA has at all times not just met but substantially exceeded the requirements of the Act.  Thus, there was never a basis to challenge the UCLA Lease,

- 2 -

never a basis to void the lease, and never a basis to lock UCLA out from the baseball facilities.  Certainly, when one adds in the *additional* consideration that UCLA has added in the above proposal, to the vast and already compliant Veteran-serving UCLA activities at the campus, UCLA has greatly exceeded what the Court's injunction states its proposal must do.

The Court should immediately end the lockout by adopting the proposed modification above as an immediate short-term solution.

UCLA enthusiastically shares the goal of providing housing and other benefits to Veterans—indeed, that is the basis of the decades-long partnership between UCLA and the Veterans at the Campus.  However, although intended to serve the Veterans' interests, the voiding of the Lease and the injunction does the opposite and risks irreparable harm to Veterans by voiding UCLA's legal obligation to provide the considerable Veteran-serving benefits that the Lease required, much less the additional consideration that UCLA offers in the above proposal.   Further, since its entry, the injunction has inflicted irreparable harm on UCLA and its students, coaches, and staff that use the baseball facilities, and their families.

To serve the paramount goal of the Veterans' interests, while also mitigating the continuing irreparable harm to UCLA, its students, coaches, staff, and their families, UCLA proposes the Court modify the injunction immediately as an interim measure, pending further proceedings to determine the long-term rights of all stakeholders.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

**UCLA has played baseball at this site since 1963.**  Since 1963, UCLA leased a 10 acre parcel on the VA campus and the UCLA baseball team has played at that site for the last 60 years.  At this site, the Jackie Robinson Stadium, opened in 1981.  UCLA Hospital and Medical School have similarly longstanding programs with the VA Hospital at the VA Campus through which Veterans receive health care from world-class physicians and medical students at little to no cost.  *See* Declaration

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

of Anthony DeFrancesco ("DeFrancesco Dec."), ¶¶ 12-13.  Veterans also receive care from students at the UCLA School of Dentistry, UCLA School of Nursing, and UCLA Department of Social Work.  *Id.* ¶¶ 14-16.

**In 2016, Congress expressly authorized UCLA to continue playing baseball at the site, in exchange for Veteran-focused consideration that UCLA has not simply met, but substantially exceeded.**  Following the earlier *Valentini* litigation and settlement, the VA issued its 2016 Draft Master Plan, and Congress passed the West Los Angeles Leasing Act ("WLALA" or the "Act"), later amended in 2021.  *See* Pub. L. No. 114-226.  The Act specifically authorized certain leases with the University on behalf of its UCLA Campus, on terms uniquely applicable to the University and that differed from the requirements applicable to other VA leases.  *Id.* § 2(b)(3).  The University is required to provide at the VA campus "additional services and support" that "principally benefit Veterans and their families, including Veterans that are severely disabled, women, aging, or homeless[.]"  *Id.* § 2(b)(3)(C).  Such services can "consist of activities relating to the medical, clinical, therapeutic, dietary, rehabilitative, legal, mental, spiritual, physical, recreational, research, and counseling needs of Veterans and their families or any of the purposes specified in any of subparagraphs (A) through (I) of paragraph (2)[.]"  *Id.*

Going well beyond the Act's requirements, UCLA has provided steadily increasing additional services, programs, and events to benefit Veterans at the VA campus.  The in-kind services alone have averaged 4,272 hours per year compared to UCLA's average use of 980 hours per year.  *See* DeFrancesco Dec., ¶ 8.  UCLA has provided three types of in-kind services to Veterans at the VA campus:  (i) the UCLA Veterans Legal Clinic; (ii) a Family Resource & Well-Being Center and a Mental Health & Addiction Center; and (iii) in-kind services to Veterans.  *Id.* ¶ 3.  It also provides education and training in-kind services to Veterans including the Success Academy, Word Commandos, Financial Literacy classes, and certificate courses through UCLA Extension, Veteran Job Education and Training (VetJET).  *Id.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    For the period of September 29, 2023, through September 28, 2024, the value of

2    UCLA's in-kind services provided was $3.2 million.  *Id.* ¶ 6.

3    **While finding other leases non-compliant, the VA OIG has repeatedly**

4    **found UCLA's lease to be compliant.**  The VA and VA OIG have conducted two

5    audits of the 2016 Lease to determine compliance with the WLALA.  *Id.* ¶ 5.  In all

6    instances, the VA OIG found the UCLA Lease to be compliant—while finding the

7    other leases that have been at issue not complaint.  *Id.*  In 2021, the VA found that

8    UCLA not only met its compensation obligations under the lease agreement, but that

9    the value of this compensation was $2,358,947.27, far above the minimum

10   requirement.  *Id.*  This value comes from an annual payment of $314,522.55, and an

11   additional $2,044,424.72 in in-kind benefits.  *Id.*  This number does not include free

12   tickets provided to Veterans to attend a variety of athletic events, valued at

13   $383,863.50.  *Id.*  The practice field was also available to Veterans for a variety of

14   sports and recreational activities; VA programs publicized the hours of availability.

15   *Id.* ¶ 9.

16   **Plaintiffs not only did not join UCLA in this action, and made no specific**

17   **allegations directed at UCLA's lease, their complaint specifically targets other**

18   **leases.**  Plaintiffs commenced this lawsuit on November 15, 2022.  *See* ECF No. 1.

19   Plaintiffs then filed an amended complaint on May 15, 2023.  ECF No. 33.  The

20   University was not a named defendant, and the complaint focused on the VA's failure

21   to provide "Permanent Supportive Housing" to disabled Veterans.  *Id.*  The complaint

22   made no claim that the UCLA lease violated the Master Plan or WLALA.  The

23   complaint even referenced audits that expressly found UCLA's lease to be compliant.

24   **The Court ruled that the University's joinder as a party is not essential to**

25   **this action.**  On January 4, 2024, this Court solicited briefing on trial bifurcation and

26   whether lessees to the challenged land deals should be joined as parties.  *See* ECF No.

27   129, Order Regarding Joinder and Bifurcation at 2.  While Defendants argued that the

28   lessees, including non-party UCLA, were indispensable parties, the Court disagreed.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Id.* at 5.  The Court found that the only claims for which the leesses might be required were the "Land Use" claims—that is, the claims that challenged the legality of the VA's land use agreements on the VA campus.  *Id.*  The Court reasoned, however, that the lessees were nonessential to these claims because, "as the government conceded at the most recent hearing, the [VA campus is] likely large enough that adequate housing could likely be built *without disturbing any of the existing land use agreements.*"  *Id.* (emphasis added).  Further, this Court found that existing Defendants adequately presented the lessees' interests.  *Id.*

**In UCLA's absence, Plaintiffs selectively presented the evidence and law relevant to non-party UCLA's Lease.**  This case then proceeded to trial.  During trial, Anthony DeFrancesco was questioned as a representative for UCLA.  September 6, 2024 Order at 47 n.1.  However, only Plaintiffs examined Mr. DeFrancesco, while the Defendants did not question him regarding the UCLA Lease at all.  *See generally* ECF No. 270.

**Non-party UCLA was invited to a hearing after the trial and the entry of an order invalidating its lease; by the end of the hearing, it was evicted from its use of the baseball facilities.**  On September 6, 2024, this Court issued its Post-Trial Opinion; Findings of Fact & Conclusions of Law, ruling that UCLA's lease was void. September 6, 2024 Order at 66-68.  Subsequently, on September 18, 2024, this Court issued a Supplemental Order Re: Hearing On Injunctive Relief, which added for discussion "[s]uitable locations on the West LA VA Grounds for the 750 Temporary Supportive Housing units;" "Initial steps for the development of a plan within six months to create 1,800 Permanent Supportive Housing Units on the campus within six years…" and "Exit strategies for the leaseholds with UCLA and the Brentwood School[.]"  *See* ECF No. 306.  This Court also invited representatives from UCLA to attend.  *Id.*

The University attended the hearing on September 25, 2024.  *See* Declaration of Raymond A. Cardozo ("Cardozo Dec.") at ¶ 4.  At the conclusion of the September

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

25th hearing, the Court enjoined UCLA from using the Stadium or practice fields effective September 26, 2024 at noon.  As a result of the injunction, UCLA's baseball team was forced to rush to collect all of their equipment and vacate the premises on the morning of September 26, having no prior notice.  *See* Declaration of Martin Jarmond ("Jarmond Dec."), ¶ 3.

Upon entry of the injunction, UCLA had extensive internal discussions to decide how to respond to the sudden and summary blockade of the baseball facilities, discussed the matter with Plaintiffs' counsel and scheduled a mediation for the morning of October 4.  *See* Cardozo Dec., ¶¶ 6-9.

On October 1, 2024, the University's counsel received an email from Plaintiffs' counsel that relayed a hearsay message that the Court wanted to get an update from UCLA at a hearing the following day, October 2.  *See* Cardozo Dec., Ex. 2.  The University submitted a status report to advise the Court of their intention to mediate with Plaintiffs on October 4 and promptly thereafter present a proposal to the Court. *See* Cardozo Dec. ¶ 9.

On the afternoon of October 2, 2024, the University's counsel received an email from a lawyer who was attending a hearing in this Court that advised that the Court had ordered 220 housing units be built on the Stadium parking lot site.  *See* Cardozo Dec., Ex. 3, October 2, 2024 Transcript.  About an hour later, Plaintiffs' counsel advised that they could not mediate on Friday October 4 because they were due back in court on this matter.  The University accordingly is appearing at the October 4 hearing to present this proposal to the Court, and to have any necessary further discussions with the Court and other parties.

## III.    THE COURT SHOULD MODIFY THE INJUNCTION TO ADOPT UCLA'S PROPOSAL

In this post-trial context, the most relevant authorities for assessing what temporary interim status quo type relief is appropriate are the standards applied in

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

deciding whether to grant a stay of an order or judgment pending appeal, as well as the standards for preliminary injunctive relief.

"A request for a stay pending appeal is committed to the exercise of judicial discretion." *Doe v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). There are four factors courts consider when determining whether to grant such a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Niken v. Holder*, 556 U.S. 418, 434 (2009). "Under the 'sliding scale' approach [the Ninth Circuit] use[s], 'the elements of preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'" *Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

The University respectfully submits that these factors justify the requested modification of the injunction. This is particularly true given the serious risk of irreparable injury absent a modification, the absence of any harm from the modification, as well as the likelihood of success on the merits in any appeal or other further consideration of the merits of the Lease's compliance with the Act.

**Irreparable Harm Absent a Stay.** The most important factor to consider is the irreparable harm that will occur absent a stay. *See Doe*, 957 F.3d at 1058 (absent irreparable harm "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors"); *Lado*, 952 F.3d at 1007 ("We first consider the government's showing on irreparable harm, then discuss the likelihood of success on the merits under the sliding scale approach."). The irreparable harm factor focuses on whether "a stay is necessary to avoid likely irreparable injury." *Lado*, 952 at 1007.

The risk of irreparable harm absent a modification of the injunction is plain. While the academic year is underway, the injunction has abruptly and completely

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

displaced non-party UCLA from accessing the baseball facilities that it has used for

decades, devastating the players, coaches, staff and their families, and disrupting

scheduled pre-season activities.  *See* Jarmond Dec., ¶¶ 3-14; *see also* Declaration of

Stephen Agostini, ¶¶ 4-8.  The proposed modification of the injunction not only does

not threaten any countervailing harm to Veterans (or anyone else), it provides

*additional* monetary and in-kind benefits to Veterans that go above the already

valuable and beneficial consideration that UCLA had been providing as consideration

for the Lease.  *See* pp. 1-2, supra (outlining UCLA's proposal).

**<u>Likelihood of Success on the Merits.</u>**  The University also has a likelihood of

success on the merits of further proceedings that evaluate the findings made in its

absence for three reasons.

*First*, the Court did not have jurisdiction to void UCLA's lease and enjoin

UCLA.  As Judge Learned Hand wrote nearly a hundred years ago:  "No court can

make a decree which will bind anyone but a party; a court of equity is as much so

limited as a court of law; it cannot lawfully enjoin the world at large, no matter how

broadly it words its decree …. It is not vested with sovereign powers to declare

conduct unlawful; its jurisdiction is limited to those over whom it gets personal

service, and who therefore can have their day in court."  *Alemite Mfg. Co. v. Staff*, 42

F.2d 832, 832-33 (2d Cir. 1930); *see also Armstrong v. Brown*, 768 F.3d 975, 979-80

(9th Cir. 2014) ("Before issuing injunctive relief, the court must provide the affected

party with notice and an opportunity to be heard.").

Despite this jurisdictional limitation, the Court has enjoined UCLA (a non-

party) from accessing the baseball facilities.  What is more, the Court did so despite

previously concluding that UCLA was not a necessary party because "as the

government conceded at the most recent hearing, the [VA campus is] likely large

enough that adequate housing could likely be built *without disturbing any of the*

*existing land use agreements*."  *See* ECF No. 129, Order Regarding Joinder and

Bifurcation at 5 (emphasis added).  The University maintains that this aspect of the

- 9 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   voiding of the Lease and related injunction was issued in excess of jurisdiction and is

2   therefore void.

3       *Second*, and relatedly, the voiding of UCLA's lease and the ensuing injunction

4   is beyond the scope of the claims pleaded in this case. *See Evans Prod. Co. v. W. Am.*

5   *Ins. Co.*, 736 F.2d 920, 923–24 (3d Cir. 1984) ("[R]elief may be based on a theory of

6   recovery only if the theory was presented in the pleadings or tried with the express or

7   implied consent of the parties."); *Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir. 1982)

8   ("[J]udgment may not be based on issues not presented in the pleadings and not tried

9   with . . . consent of the parties."). In their First Amended Complaint, Plaintiffs did not

10  name the University as a party, did not seek a judicial declaration that the Lease was

11  void, and did not seek injunctive relief against the University's UCLA campus. *See*

12  *generally* ECF No. 33. And, when asked to brief whether the University and other

13  leaseholders were necessary parties, Plaintiffs reiterated that their claims did not

14  require the VA to "break its leases to fulfill its obligation to provide permanent

15  supportive housing." ECF No. 116 at 9. The Court thus lacked jurisdiction to take

16  action against UCLA.

17      *Third*, had Plaintiffs pleaded a claim against the University and made it a party,

18  the University would have demonstrated that UCLA's lease complies with the

19  WLALA. In that regard, as discussed above, although the relevant evidence and

20  applicable law was not fully presented at trial in the University's absence, its UCLA

21  campus provides services, programs, and events to benefit Veterans at the VA campus

22  for an average of 4,272 hours per year, whereas it occupied the Stadium for athletics

23  an average of 980 hours per year. *See* DeFrancesco Dec., ¶ 8. Based on the most

24  recent data, the value of the in-kind services UCLA provides to Veterans is $2.9

25  million in the last year. *Id.* at ¶ 6. The VA and VA OIG have conducted two audits of

26  the Lease to determine compliance with the WLALA and, in each, the VA OIG found

27  the Lease to be compliant. *Id.* ¶ 5. Had the University been afforded the notice and

28

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    opportunity to present this evidence and its case, it would have been able to

2    demonstrate that the Lease complies with applicable laws.

3         *Fourth*, because the Lease's purported non-compliance with the WLALA

4    serves as the predicate of the injunction, the Court's injunction states that it shall only

5    remain in place "*until* UCLA proposes a position on how the ten aces it currently

6    occupies can be put to a use such that the provisions of services to veterans is the

7    predominant focus of the activities of the Regents at the campus."  ECF No. 309

8    (emphasis added).  As set forth above, UCLA has made such a compliant proposal and

9    the Court should thus dissolve the injunction pursuant to the injunction's own terms.

10        **Lack of Prejudice to the Other Parties.**  Unlike the risk of irreparable harm to

11   the University and UCLA students, coaches, staff and their families, there is no

12   corresponding risk of prejudice to the other parties.  When the Court enjoined UCLA

13   from utilizing its leasehold interest, there was no competing use of the land proposed

14   and the land has not been utilized.  Further, even though the Court has reportedly

15   stated at a hearing on October 2, 2024 that the parking lot on UCLA's leasehold

16   should be repurposed and housing constructed on it, the remainder of UCLA's

17   leasehold (including the baseball stadium and practice facilities) remain unutilized

18   with no clear plans for their redevelopment.  As to the parking lot, there is no reason

19   why UCLA should not be permitted to continue utilizing it until an actual

20   redevelopment is ready.

21        **The Public Interest.**  Finally, the public interest factors favor the proposed

22   modification because, as things stand now under the current injunction, UCLA is

23   evicted from its Lease, such that it has no legal obligation to continue to pay *any* rent,

24   nor to provide $3 million annually of in-kind services to Veterans; further, the

25   students, coaches, staff and their families would also be harmed.  The proposed

26   modification represents a clear "win win" short term solution for the next 12 months

27   that is vastly preferable to the current injunction.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 11 -

## IV.    RULE 24 ALLOWS THE UNIVERSITY TO INTERVENE TO PARTICIPATE IN SUPPORTIVE HOUSING DISCUSSIONS

Rule 24 provides that intervention may be allowed as of right or permissively. the University requests leave to intervene on both grounds for purposes of (a) receiving notice and an opportunity to be heard on all further proceedings relating to the injunction; and (b) preserving its right to appeal.[1]

### A.    Rule 24(a) Provides The University With The Right To Intervene To Contribute To A Supportive Housing Plan Pursuant To The Court's September 6, 2024 Post-Trial Order

The Ninth Circuit requires a district court to grant intervention "if four criteria are met:  [1] timeliness, [2] an interest relating to the subject of the litigation, [3] practical impairment of an interest of the party seeking intervention if intervention is not granted, and [4] inadequate representation by the parties to the action."  *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).  These factors are construed broadly in favor of intervention.  *See id.*; *see also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *Nw. Forest Res. Counsel v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).

The University's motion satisfies all four criteria.

### 1.    The Motion To Intervene Is Timely

"Timeliness is determined by the totality of the circumstances facing would-be intervenors," and focuses on the stage of the proceeding, prejudice to the parties, and any reason for delay.  *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).

---

[1] Because the Court enjoined usage by UCLA, even though it is not a party, and given UCLA's direct interest in the voided Lease, it likely would have a right to appeal, even if this motion were not granted.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1547 (9th Cir. 1989) ("[A] non-party against whom judgment is entered has standing without having intervened in the district court action to appeal the district court's exercise of jurisdiction over him.").  Out of an abundance of caution, however, the University seeks the express assurance of its appeal right that intervention guarantees.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Even post-judgment motions to intervene are timely if "necessary to preserve some
2   right which cannot otherwise be protected." *Pellegrino v. Nesbit*, 203 F.2d 463, 465
3   (9th Cir. 1953); *see also United States ex rel. McGough v. Covington Technologies.*
4   *Co.*, 967 F.2d 1391, 1394-95 (9th Cir. 1992).

5          Where, as here, the intervenor seeks to address a change of circumstances, the
6   stage of proceedings factor should be analyzed by reference to the change in
7   circumstances, and not the commencement of the litigation. *See L.A. Unified Sch.*
8   *Dist.*, 830 F.3d at 854.

9          The University moves to intervene now because the Court's September 6, 2024
10  Order prompted this litigation to enter a new phase, and the September 25 injunction
11  established yet another new phase that was then altered further by the October 2
12  injunction.  This motion for leave to intervene is timely based upon this recent change
13  in circumstances.  The University has been diligent in this application, and has not
14  unreasonably delayed or prejudiced the parties in any way.  The paramount goal here
15  should be the best outcome for the Veterans and UCLA's direct participation will aid
16  that goal.

17         **2.      The University Has An Interest Relating To The Subject Of**
18                   **The Litigation**

19         Although an intervenor must show a significant protectable interest relating to
20  the subject of the action, it need not establish a specific legal or equitable interest.  *See*
21  *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th
22  Cir. 1995), *overruled on other grounds in Wilderness Soc'y v. United States Forest*
23  *Serv.*, 630 F.3d 1173 (9th. Cir. 2011) ("Whether an applicant for intervention
24  demonstrates sufficient interest in an action is a practical, threshold inquiry.  No
25  specific legal or equitable interest need be established.") (citations omitted).  A
26  significant protectable interest is established where the intervenor's interest "is
27  protectable under some law, and [] there is a relationship between the legally protected
28  interest and the claims at issue." *Sierra Club v. United States EPA*, 995 F.2d 1478,

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- 13 -

1484 (9th Cir. 1993); *see also Forest Conservation Council*, 66 F.3d at 1494. Because the September 6, 2024 Order rules that UCLA's lease of ten acres on the VA campus is void, and the injunction purports to enjoin usage of that acreage by UCLA, the University has an interest related to the subject of this litigation.

### 3. The University's Interests Will Be Practically Impaired If Intervention Is Not Granted

An intervenor's interests are "practically impaired" absent a grant of intervention if they "would be substantially affected in a practical sense by the determination made in an action."  Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment.  This "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

The September 6, 2024 Order and September 25, 2024 injunction substantially affects the University's property and contractual interests in the ten acre parcel. Among other things, the valuable services that UCLA provides to Veterans in connection with its lease and the future of the Jackie Robinson Stadium and practice field are in limbo under the Order, so UCLA should be allowed to participate in the determination of future proceedings relating to those services and Lease.  Rule 24(a) allows the University to intervene in this action to address the impairment of these interests, and to supply information to the Court that ensures that services to Veterans remain the predominant focus of UCLA's activities on the VA campus.  *See Forest Conservation Council*, 66 F.3d at 1498 (collecting cases).

### 4. The Existing Parties Are Not Adequate To Represent The University's Interests

With respect to the final criterion, the Court must assess "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Id.* at 1498-99. An intervenor's burden to show that existing representation is inadequate is "minimal: it is sufficient to show that representation *may* be inadequate." *Id.* at 1498 (emphasis in original). This is consistent with the requirement that the Rule 24(a) factors must be construed in favor of intervention.

The current parties do not fully represent the University's interests in optimizing the benefits and services that Veterans receive as a result of the Lease to UCLA. Plaintiffs do not represent these interests because they did not take direct aim at UCLA's Lease in their operative complaint and did not introduce all of the evidence of the valuable services that UCLA has been providing to Veterans for years, which has been found legally compliant in federal audits of the lease. Defendants' interests focus on their federal law obligations, which are separate and apart from the University's interest in achieving the most beneficial use of the ten acre UCLA plot. Moreover, Defendants did not even question Mr. DeFrancesco of UCLA at trial, and thus also did not elicit, let alone illuminate, the full extent and value of the services that UCLA provides to Veterans.

The fact that Defendants did not solicit testimony during trial of the support services UCLA provides to Veterans at the VA campus demonstrates that Defendants' interests are not adequate to represent the University's interests.

Finally, what happens to the Lease has not yet been finally determined and the University is evaluating whether it will appeal from any rulings in this litigation. The University has a direct interest in the future determinations of the Lease, and seeks to preserve its rights to appeal orders that affect its property and contractual interests. *See* October 21, 2013 *Valentini* Order Granting in Part and Denying in Part The University's Motion for Leave to Intervene at 13 (granting the University right to appeal for purposes of an appeal).

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**B.    The University Should Be Permitted To Intervene Under Rule 24(b)**

Rule 24(b) alternatively allows "permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *overruled on other grounds in Wilderness Soc'y*, 630 F.3d 1173 (on a timely motion, "if there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention."). In considering whether to grant permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the University seeks to ensure that the ten-acre portion of the VA campus leased to UCLA is managed in a way that best serves Veterans' interests. The University is uniquely positioned to assist the Court in developing a plan pursuant to the housing mandate, as the University possesses the information concerning the value of the historical services and benefits UCLA has provided to Veterans over many decades.

The University's interest in the optimized use of the ten acre parcel shares the common questions of law and fact with the main action:  how can the VA campus be optimized to provide additional housing, benefits, and healthcare to Veterans with disabilities?  The University should be permitted to intervene to ensure the Court has all of the information it needs to create plans for development of the VA campus that provide Veterans the greatest benefit.

## V.    CONCLUSION

The Court should modify the injunction to adopt the proposal presented above, and should grant the University leave to intervene in this action.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION

1    DATED:  October 3, 2024

2                                          REED SMITH LLP

3                                          By: /s/ Raymond A. Cardozo
                                               Raymond A. Cardozo
4
                                           Attorneys for Non-Party, The Regents
5                                          of the University of California

6

7

8

9

10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NON-PARTY THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S
MODIFIED PROPOSAL AND NOTICE OF MOTION AND MOTION FOR
ORDER MODIFYING INJUNCTION