**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:22-cv-08357-DOC-KS | Date: October 23, 2024 |

Title: JEFFREY POWERS ET AL. V. DENIS RICHARD MCDONOUGH ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| | |
|---|---|
| Karlen Dubon | Not Present |
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** ORDER DENYING NON-PARTY REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO INTERVENE AND HOLDING IN ABEYANCE THE MOTION TO MODIFY [333]

Before the Court is non-party the Regents of the University of California's ("the Regents") Motion to Intervene ("Motion to Intervene") and Motion to Modify Injunction ("Motion to Modify") based on Modified Proposal (Dkt. 333). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. For the reasons explained below, the Court **DENIES** the Motion to Intervene and **HOLDS IN ABEYANCE** the Motion to Modify Injunction.

**I.   BACKGROUND**

**A.  Factual Background**

This is not the first time that UCLA's lease has been voided. In the 2013 case, *Valentini v. Shinseki*, Judge Otero ruled that the 2001 agreement allowing UCLA to have priority use of the stadium for their baseball team on 7.35 acres on the West LA VA

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                                                 Date: October 23, 2024

Page 2

Campus for ten-years was "unauthorized by law and therefore void." *See* Judgment, *Gregory Valentini, et al., v. Eric Shinseki, et al.*, Case No. 11-CV-04846-SJO (CDCA August 29, 2013) (Dkt. 142) at 2. Congress then passed the West Los Angeles Leasing Act ("WLALA" or "Leasing Act") which was amended in 2021. *See* Post-Trial Opinion: Findings of Fact and Conclusions of Law ("Post-Trial Opinion") (Dkt. 302) at 9. This Act authorizes certain leases with the Regents of the University of California on behalf of UCLA[1] so long as "the provision of services to veterans is the predominant focus" of UCLA's activities on the Grounds. *Id*. at 48.

UCLA's current expanded lease with VA began in 2016 and expires in 2026. *Id.* at 65. This lease covers approximately ten acres including both the baseball stadium and practice fields. *Id.* In late 2020, UCLA and VA amended this lease to allow improvements to the stadium funded by a $2 million dollar donation to UCLA—none of this money went to veterans. *Id.* at 65-66. This Court held that UCLA's 2016 lease violated VA's fiduciary duty that was created under the Leasing Act. *Id.* The Court found this duty was violated because the predominant focus of the lease was UCLA's baseball program not the provision of services to veterans. *Id.* Thus, the lease was voided. *Id.* at 68.

This is not the first time UCLA has sought to intervene in a lawsuit only after veterans' claims challenging their lease have been adjudicated by a court. In *Valentini*, UCLA knew "that there was a pending action that might affect its use of the [baseball] Stadium," but attempted to intervene after the claims were already tried and adjudicated. *See* Order Granting in Part and Denying in Part Motion, *Gregory Valentini*, Case No. 11-CV-04846-SJO (CDCA October 21, 2013), (Dkt. 164) at 7. Judge Otero denied UCLA's Motion to Intervene in that case, because it was unreasonable "to move for intervention two years after it had learned that the UCLA Agreement was at issue in the case." *Id.*

On November 16, 2022, Plaintiffs here filed their original Complaint, which contained allegations regarding VA's lease with UCLA and requested an order enjoining VA from "executing and maintaining any land use agreements under the [West Los Angeles Leasing Act of 2016] that do not primarily benefit veterans." Complaint for Injunctive, Declaratory, and Mandamus Relief ("Complaint") (Dkt. 1) at 111. The

---

[1] For the sake of clarity, the Court will refer to the Regents and University of California, Los Angeles as "UCLA" throughout the entirety of the Order.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                                  Date: October 23, 2024

Page 3

pleadings remained the same in Plaintiffs' First Amended Complaint filed May 15, 2023. *See generally* Plaintiffs' First Amended Complaint ("FAC") (Dkt. 33).

On January 22, 2024, after VA argued that the leaseholders on the Campus should be joined, the Court held that joinder was not required under Rule 19 of the Federal Rules of Civil Procedure. *See* Order Regarding Trial Bifurcation and Joinder; And Ordering Lessees Be Notified ("Order Regarding Trial Bifurcation") (Dkt. 129). Specifically, the Court held that the leaseholders were not required parties to Plaintiffs' land use claims because their interests were protected by the government's vigorous defense of the legality of the leases and there was not a significant risk of inconsistent obligations against VA. *Id*. at 5-6. The Court also ordered VA and Plaintiffs to contact all leaseholders on the West LA VA Campus to notify them of the pending litigation that might impact their leases. *Id*. at 7.

Accordingly, VA notified leaseholders, including UCLA, of the litigation on January 31, 2024. *See* Notice of Compliance with Court Order Regarding Notice to Lessees ("Notice of Compliance") (Dkt. 135) at 1. The notice stated in part, "Regents of the University of California has been identified as a party to land use agreements or easements with the Department of Veterans Affairs that plaintiffs purport to challenge in this lawsuit" and that the agreements "may potentially be impacted by this litigation." Plaintiffs' Opposition to UCLA's Motion to Modify Injunction and Motion to Intervene on October 21, 2024 ("Plaintiffs' Opposition") (Dkt. 370) at 7. The VA's notice also provided UCLA with a copy of the Court's Order on Joinder and the Plaintiffs' First Amended Complaint. Notice of Compliance at 1.

Throughout the trial, UCLA participated in substantial discovery concerning the legality of their lease with VA. UCLA was served a subpoena to produce documents on April 1, 2024. Plaintiffs' Opposition at 7. UCLA's Interim Principal Campus Counsel from their Office of Legal Affairs, Steve Drown, then met and conferred with Plaintiffs about these subpoena requests. *Id.* In response to this request, UCLA then produced approximately 150 responsive documents in a series of three productions. *Id.* UCLA was then served a subpoena to testify and notice of a Rule 30(b)(6) deposition. *Id.* at 8. This notice listed for examination: (1) any lease that was entered into by the Regents for real property or facilities on the WLA Grounds on or after January 1, 2016; (2) consideration provided by the Regents under the terms of any such lease described in (1) including but not limited to consideration provided for the principal benefit of veterans and their families; (3) communications between the Regents and VA regarding any such lease

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:22-CV-08357-DOC-KS | Date: October 23, 2024 |

Page 4

described in (1) and any such consideration described in (2); (4) the Regents use of real property or facilities on the WLA Grounds on or after January 1, 2016, and its documentation of such use; (5) efforts by the Regents to modify or eliminate conditions of compliance with any such lease described in (1) or WLVA. *Id.*

After meeting and conferring with Plaintiffs, UCLA designated Anthony DeFrancesco as its Rule 30(b)(6) witness and produced Mr. DeFrancesco for deposition on June 6, 2024. *Id.* Mr. DeFrancesco is the Executive Director and Chief Liaison for Veterans Initiatives and Partnerships at UCLA. *Id.* at 7 (n. 4). Mr. DeFrancesco testified at trial on August 22, 2024. *Id.* at 9. Mr. DeFrancesco testified to UCLA's activities on the West LA VA Grounds during the term of its lease. Trail Transcript August 22, 2024 (270) at 69. Mr. DeFrancesco stated that "the predominant focus of UCLA on that campus is baseball and that baseball complex and not service to veterans." *Id.* No counsel was present for UCLA. *Id.* Again, on August 29, 2024, Mr. DeFrancesco testified at the Court's request. Plaintiffs' Opposition at 9-10. And again, no counsel was present for UCLA. *Id.* The Court took note of UCLA's deliberate absence throughout this case in its Post-Trial Opinion, stating:

> The Court is concerned by the pattern throughout this case of corporate and agency leadership hiding behind their employees. For example, UCLA designated Anthony DeFrancesco, the Executive Director and Chief Liaison for Veterans Initiatives and Partnerships at UCLA, as its corporate representative at deposition and at trial. Mr. DeFrancesco was not involved in either the negotiation of the lease in 2016 or its amendment in 2021. Individuals like Mr. DeFrancesco, rather than the UCLA Chancellor or Athletics Director, for example, have been placed in the uncomfortable position of testifying in court that their employers entered into illegal leases. This same practice has put VA representatives like Dr. Harris, Ms. Hammitt, and Mr. Kuhn in the position of testifying to decisions made by agency leadership. Throughout this month-long trial, the Court has been encouraged by the progress of the dedicated employees that have appeared on behalf of the VA in West Los Angeles and other institutions. It is concerned, however, that the top policy makers, who have left it to these employees to correct years of misuse and neglect, remain shielded from these proceedings. Post-Trial Opinion at 47 n. 11.

The Court's Post-Trial Opinion that voided UCLA's lease also indicated that it would "determine an exit strategy for UCLA's 10 acres following [a] hearing on injunctive relief." Post-Trial Opinion at 65. The Court on September 12, 2024, stated in an Order that it would hold a hearing on injunctive relief and asked the Parties to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-CV-08357-DOC-KS                                         Date: October 23, 2024

Page 5

prepared to discuss numerous topics including UCLA's exit strategies. Supplemental Order Re: Hearing on Injunctive Relief on September 25, 2024 ("Supplemental Order") (Dkt. 308). The Order invited the Chancellor of UCLA to attend as UCLA was not a party to the lawsuit at this time. *Id.* All relevant documents in this case are not only available on the docket but also on the Central District of California's Public website under the Cases of Interest section.[2]

On September 25, 2024, the Court held a hearing on injunctive relief. Counsel for UCLA was present. *See* Minutes of Hearing on Injunctive Relief (Dkt. 312). The Court's hearing on injunctive relief continued the next day on September 26, 2024. *Id.* UCLA's counsel did not attend. Transcript of September 26, 2024 Hearing (Dkt. 318). A hearing on injunctive relief was also held on October 2, 2024. Minutes of Hearing Re Injunctive Relief (Dkt. 329). UCLA's counsel again did not appear. Hearings on injunctive relief were also held on October 4, 2024, October 7, 2024, October 8, 2024, October 11, 2024, and October 18, 2024. Despite public notice of the hearings and the consistent appearance of the other non-party leaseholder, UCLA's counsel was only present on October 4, 2024. *See* Transcripts of Hearings (Dkts. 339, 344, 349, 361, 371).

### B. Procedural History

This case began on November 15, 2022, when Plaintiffs filed their Complaint (Dkt. 1). Plaintiffs filed their First Amended Complaint on May 15, 2023 (Dkt. 33). Bridgeland Resources, LLC ("Bridgeland") moved to intervene on March 4, 2024, (Dkt. 144) and this Court granted Bridgeland's intervention on April 5, 2024 (Dkt. 171). The first day of trial was held on August 6, 2024 (Dkt. 234). The Court held sixteen days of trial which concluded on August 30, 2024 (Dkt. 295). The Court's Post-Trial Opinion was docketed on September 6, 2024 (Dkt. 302). Hearings on injunctive relief began September 25, 2024 (Dkt. 305). On September 25, 2024, UCLA was enjoined from accessing baseball facilities on the West LA VA Campus because UCLA refused to "cede" any land from their voided lease. Transcript of September 25, 2024 Hearing at 99-100 (Dkt. 318). The Court enjoined UCLA until they proposed a position on how the ten acres they occupied would predominately focus on veterans. Order Enjoining UCLA from Accessing Baseball Facilities on West LA VA Campus at 1 (Dkt. 309).

---

[2] Cases of Interest - All | Central District of California | United States District Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                              Date: October 23, 2024

Page 6

On October 3, 2024, UCLA filed the present Motion at 10:56 p.m. to be heard the next morning on October 4, 2024. UCLA did not give proper notice of their Motion and did not meet and confer with opposing counsel in violation of Local Rules 6-1 and 7-3. C.D. Cal. R. 6-1, 7-3. Given the timing of the Motion, Plaintiffs requested on October 4, 2024, that the Court strike the Motion from the record and not consider it on the merits. Transcript of October 4, 2024 Hearing at 46 (Dkt. 339). Nevertheless, the Court heard limited oral argument on the Motion during which counsel for UCLA argued the merits of the already adjudicated claims at length. *Id*. at 50 ("So the deal Congress, when they specifically authorized this lease, was not what they fed you at this trial in UCLA's absence."). Plaintiffs filed their Opposition to UCLA's Motion to Modify Injunction and Motion to Intervene on October 18, 2024 (Dkt. 370).

## II.     LEGAL STANDARD

Intervenors have two avenues to seek intervention, intervention as of right and permissive intervention. Fed. R. Civ. P. 24.

"On timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by federal statute." Fed. R. Civ. P. 24(a)(1). Otherwise, to intervene as of right, the applicant must demonstrate each of the following:

> "(1) that the prospective intervenor's motion is 'timely'; (2) that the would-be intervenor has 'a "significantly protectable" interest relating to ... the subject of the action'; (3) that the intervenor is 'so situated that the disposition of the action may as a practical matter impair or impede [the intervenor's] ability to protect that interest'; and (4) that such interest is 'inadequately represented by the parties to the action.'"

*Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)). "[A]n applicant seeking to intervene has the burden to show that these four elements are met, [but] the requirements are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 24(b)(1)(B), a court "may" permit "anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." Rule 24's requirements are construed liberally in favor of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                              Date: October 23, 2024

Page 7

intervention. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). A party may permissively intervene where there is "(1) an independent ground for jurisdiction, (2) a timely motion, and (3) a common question between the movant's claim or defense" and the original action. *Blum v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013); *see also* Fed. R. Civ. P. 24(b)(1)(B). When a party seeks to permissively intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Timeliness is a threshold issue for both intervention as of right and permissive intervention. Fed. R. Civ. P. 24(a), (b)(1). "If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

Courts evaluate timeliness on three criteria: (1) the stage of the proceeding, (2) prejudice to other parties, and (3) the length and reason for delay in moving to intervene. *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996). "Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention." *Id*. "Timeliness is determined by the totality of the circumstances facing would-be intervenors." *Smith*, 830 F.3d at 854.

### III.  DISCUSSION

After careful consideration of UCLA's Motions and Plaintiffs' Opposition, the Court denies the Motion to Intervene as untimely and holds in abeyance the Motion to Modify.

#### A. Timeliness of Motion to Intervene

After considering the factors, the Court finds that the Motion to Intervene is untimely. Because timeliness is a threshold issue, the Court does not discuss the other intervention factors. Each factor of timeliness is analyzed in turn.

##### 1. Stage of the Proceedings

UCLA chose not to intervene throughout the *Valentini* litigation and only tried to intervene after the claims had been adjudicated. UCLA appears to have chosen the same

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                              Date: October 23, 2024

Page 8

strategy here. In this litigation, UCLA chose not to intervene after Plaintiffs filed their Complaint in 2022, after VA expressly notified them that their lease was at risk in January 2024, after they participated in extensive discovery, after they designated a Rule 30(b)(6) witness for depositions, after their witness testified twice during a weeks-long trial, and again after the Court issued its Post-Trial Opinion on September 6, 2024. And now, UCLA pleads surprise and unfairness because the Court ordered their baseball facilities closed based on the illegality of their lease. This outcome was a foreseeable consequence of the Plaintiffs' Complaint, yet UCLA waited until the Court's Post-Trial Opinion and injunctive relief hearings to mount a defense.

Judge Otero noted in his Order denying UCLA intervention in *Valentini* that if the Court allowed UCLA to intervene at late stages of the proceedings it would encourage other would-be intervenors to await judgment in cases potentially affecting their interests and then to request a "do over" from the trial court in the event of an adverse judgment. Order Granting in Part and Denying in Part Motion, *Gregory Valentini*, Case No. 11-CV-04846-SJO (CDCA October 21, 2013) (Dkt. 164) at 7. Judge Otero's desire to negate such a perverse incentive was not heeded by UCLA. *Id.* Rather, UCLA, a sophisticated party, once again seeks to evade litigation costs or otherwise correct course through late intervention.

UCLA argues that this step in the timeliness analysis should begin with the alleged changed circumstances, not the commencement of the litigation. Motion at 13 (citing *Smith*, 830 F.3d at 854). Specifically, UCLA asserts that the Court's September 6, 2024, Post-Trial Opinion "prompted this litigation to enter a new phase." *Id*. UCLA further contends that the Court's September 25, 2024, Order enforcing its Post-Trial Opinion "established yet another new phase" which was then "altered further" by the Court's October 2, 2024, "comments regarding the building of temporary housing units on the Stadium parking lot." *Id*. at 2.

However, there has been no change in circumstances to warrant late intervention. As the Ninth Circuit held, intervention should be denied when "the new phase came about in the general progression of the case to a close" and the purported change "was a foreseeable part of a chain of events." *Garza v. Cnty. of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990). Examples of what the Ninth Circuit has held to constitute changed circumstances include: intervention allowed after a court ordered existing parties to enter expanded negotiations that affected intervenor for the first time, *United States v. Oregon*, 745 F2d 550, 552 (9th Cir. 1984), when the existing parties changed their positions and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                     Date: October 23, 2024

Page 9

no longer adequately protected the would-be intervenor's interest, *see Legal aid Soc. Of Alameda County v. Dunlop,* 618 F2d 48, 50-51 (9th Cir. 1980), and when parties renegotiated a consent decree, and one party changed its prior position, thereby affecting prospective intervenors, *Smith*, 830 F3d at 854.

No circumstance close to those recognized by the Ninth Circuit is present here. All we have is a case that went to trial, an opinion issued in light of the trial evidence, and now hearings held on injunctive relief to implement the opinion. No Parties have changed their positions from the beginning, and UCLA's lease has been implicated since the inception of this lawsuit. Plaintiffs' Complaint from November 2022 challenged VA's lease agreements on the West LA VA Campus. UCLA was notified by VA well ahead of trial on January 31, 2024, that their lease was challenged in the litigation. Notice of Compliance (Dkt. 135). UCLA was intimately involved in discovery and designated a witness who was deposed and testified at trial about the UCLA lease. The Court's Post-Trial Opinion finding the leases to be void and the subsequent injunctive relief orders and hearings to implement the Opinion were a predictable result of the litigation. It strains credulity to assert that a sophisticated party like UCLA could not have reasonably known that their lease might be at risk. The Court's post-trial orders were "a foreseeable part of a chain of events" that UCLA was warned of in January 2024, not a new phase of litigation. *Garza*, 918 F.2d 763, 777 (9th Cir. 1990).

Because there has been no change in circumstances, the stage of proceedings analysis properly runs from the start of this lawsuit or at the latest when UCLA received express notice of the risk to its lease. This litigation has been ongoing for nearly two years and UCLA was explicitly notified nearly nine months ago. Trial is over and injunctive relief decisions to implement the Post-Trial Opinion are well underway. Thus, this factor weighs heavily against intervention.

### 2. Prejudice to Other Parties

Next, the Court considers the prejudice to existing parties, which the Ninth Circuit has stated is "the most important consideration" in the timeliness analysis. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Under this factor, the relevant "prejudice" is "that which flows from a prospective intervenor's failure to intervene after he knew or should have known, that his interests were not being adequately represented." *Smith,* 830 F.3d at 857. The Ninth Circuit has also recognized that "if granting a belated motion to intervene would threaten the delicate balance reached by existing parties after protracted

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                           Date: October 23, 2024

Page 10

negotiations this factor may weigh against intervention." *Id.* Here, the Court does not consider whether the intervention would cause the nature of the lawsuit to change but whether existing parties may be prejudiced by UCLA's delay in moving to intervene. *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999).

UCLA's claim that "the current representation is inadequate to address [their] interest" is unconvincing. Motion at 2. UCLA argues that the current Parties do not fully represent the University's interests as the "Defendants' interests focus on their federal law obligations, which are separate and apart from the University's interest in achieving the most beneficial use of the ten acre UCLA plot." Motion at 15. If this is why UCLA is inadequately represented, then this has been true since the inception of this litigation. Thus, UCLA has known of their inadequate representation from the start of this litigation but failed to intervene. Allowing intervention after such a delay would cause the Parties substantial prejudice. Notably, UCLA's statement as to their interest also clearly shows that UCLA's sole concern is the benefit to UCLA not the veterans.

UCLA's interest in achieving "the most beneficial use of the ten-acre plot" has been directly implicated since the beginning of this litigation. Plaintiffs' original Complaint specifically alleged that "VA has failed even to consult veterans about plans to construct, and recently expand, UCLA's state-of-the-art baseball facilities on land where VA is required to build Permanent Supportive Housing." Complaint at 11-12 (Dkt. 1). Additionally, the relief sought in that Complaint included an order enjoining VA from "executing and maintaining any land use agreements under the [West Los Angeles Leasing Act of 2016] that do not primarily benefit veterans." *Id.* at 111. The West Los Angeles Leasing Act of 2016 is the legal authority for UCLA's lease with VA. Thus, given the clear language of UCLA's lease and its direct connection to the claims in this case, UCLA should have recognized early on that its interests might not align perfectly with those of VA or other Parties.

In its January 22, 2024, Order Regarding Trial Bifurcation, the Court held that while UCLA had an interest in the litigation, it was not a "required" party under Rule 19 because UCLA and the other leaseholders were "being protected" by the Government, which was "vigorously defending [its] leases as legal." Order Regarding Trial Bifurcation (Dkt. 129) at 5. The Court's holding was based on the fact that "despite the highly publicized nature of the government's alleged misuse of the WLA Grounds and over a decade of litigation, the absentee leaseholders have never sought to intervene." *Id.* at 6. While the Court held that UCLA was not a required party under Rule 19, this does not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                    Date: October 23, 2024

Page 11

excuse UCLA's failure to intervene earlier. Rule 19 and Rule 24 are distinct inquiries. Rule 19 requires a party to be joined if disposing of the action in a person's absence would impede their ability to protect their interest or leave an existing party subject to a substantial risk of inconsistent obligations. Fed. R. Civ. P. 19. Meanwhile, Rule 24 considers whether a party's claim or defense shares a common question of law or fact with the main action, making intervention permissible even when a party is not required under Rule 19. Fed. R. Civ. P. 24.

The Court's finding that UCLA was not a required party was based on the conclusion that there was no substantial risk of inconsistent obligations for the Defendants and the Court's belief that UCLA was being adequately represented. Order Regarding Trial Bifurcation at 6. The Court's reasoning was based on the fact that when the Government raised concerns as to their representation of UCLA's interest in their lease, UCLA was silent. *Id.* And the Court's Rule 19 finding did not preclude UCLA from seeking permissive intervention under Rule 24 if they believed their interests were *not* adequately represented. But now that trial has concluded, UCLA complains about the testimony that was elicited from their own witness, Mr. DeFrancesco, about the extent and value of the services that UCLA provides to Veterans. Motion at 15. If this was such a concern, then UCLA's counsel would have been in attendance during said testimony. The factual and legal landscape remains unchanged in this case. And the absence of a requirement to join did not diminish UCLA's responsibility to intervene earlier when they knew their interests were at risk or that their interests were not adequately represented.

This is not the first time UCLA has tried to "unsett[le] over two years of litigation and mudd[y] the issues on the eve of appeal." Order Granting in Part and Denying in Part Motion, *Gregory Valentini*, Case No. 11-CV-04846-SJO (CDCA October 21, 2013), (Dkt. 164) at 6. UCLA had prior knowledge of potential risks to its lease from the *Valentini* lawsuit, in which their late attempt to intervene was denied by Judge Otero. *See generally id*. Their involvement in that case demonstrates their awareness that their leasehold interests could be impacted by litigation concerning the West LA VA Campus leases. This prior knowledge underscores that UCLA had ample opportunity and reason to intervene earlier. Even if that lawsuit is not sufficient notice, the Court learned from Judge Otero and tried to prevent UCLA's late intervention by ensuring that the leaseholders were aware of their interest in the pending litigation. This is why the Court ordered the Parties to serve the Order Regarding Trial Bifurcation and Joinder on UCLA. Notice of Compliance (Dkt. 135).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                    Date: October 23, 2024

Page 12

The prejudice that would result from the Court allowing UCLA's intervention now is exactly the type of harm that Judge Otero was concerned about, and that the Ninth Circuit seeks to prevent. *See* Order Granting in Part and Denying in Part Motion, *Gregory Valentini*, Case No. 11-CV-04846-SJO (CDCA October 21, 2013), (Dkt. 164) at 7; *see Smith,* 830 F.3d at 857. Allowing a late-stage intervention at this point would undermine a carefully negotiated plan and harm those who stand to benefit from the relief already underway. This harm is not just to the Parties, but to veterans who have been suffering from mental and physical disabilities, homelessness, and thirteen years of litigation.

The October 7, 2024, Emergency Order to Implement the Court's Post-Trial Opinion held that with fall and winter approaching and with thousands of homeless veterans still living on the streets, an emergency exists. Emergency Order Number 2 to Implement the Court's Post-Trial Opinion ("Emergency Order Number 2")(Dkt. 342) at 2. This emergency requires immediate and streamlined action in order to build and make ready for occupancy temporary supportive housing on VA campus as soon as possible. *Id.* In light of this emergency, on October 18, 2024, the Parties came together in a collaborative process and agreed that temporary housing units will be located on parcels 7 and Magenta B (Magenta B is the parking lots next to the baseball stadium that was part of UCLA's lease with VA). *See* Exhibit 1 attached hereto. Counsel for UCLA was not present. Deliberations by the Parties made it apparent that paved parking lots without affixed objects like solar panels were some of the most viable locations for the speedy development of temporary housing.

On October 18, 2024, the Court ordered Plaintiffs to submit to VA detailed specifications and pricing for modular housing options. Order on Temporary Housing Location and Hearing October 25, 2024 ("Order on Temporary Housing Location") (Dkt. 375). Currently, all Parties are actively engaged in designing and procuring modular housing for the paved parking lots on the campus, including those adjacent to the baseball stadium. Further delay in this years-long litigation clearly prejudices the Plaintiffs and VA. The existing Parties have litigated actively since Plaintiffs' Complaint was filed in 2022. They have expended substantial resources and great effort from pre-trial motions to a multi-week trial coming together to address an urgent humanitarian need—providing housing for veterans.

UCLA seeks to relitigate issues that have already been resolved, reopen a case that has already been litigated, and stall the collaborative process the Parties have tediously

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 2:22-CV-08357-DOC-KS                                     Date: October 23, 2024

Page 13

worked towards. Most crucially, UCLA's delay prejudices the disabled veterans that brought this lawsuit and the thousands of other disabled veterans that VA serves and stand to benefit from increased housing on the West LA VA Campus. Their decision to wait until the litigation reached a critical and late stage is a strategic choice—not the outcome of surprise.

In conclusion, the substantial prejudice to the Parties compels the denial of UCLA's Motion to Intervene. The Court will not excuse their failure to act earlier at the expense of the Parties who have worked diligently to address the pressing needs of homeless, disabled veterans.

### 3. Length of Delay and Reason for Delay

Lastly, the Court considers the reason for and length of the movant's delay, which "is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties . . ." *United States v. Washington,* 86 F.3d 1499, 1503 (9th Cir. 1996). And although the length of delay is not itself determinative, "any substantial lapse of time weighs heavily against intervention." *United States v. State of Washington,* 86 F3d 1499, 1053 (9th Cir. 1996).

As analyzed above, UCLA should have been aware that their interests were not adequately protected by the Parties from the beginning. UCLA was aware of this litigation as early as 2022 and was expressly made aware of its potential impact on their lease at the latest on January 31, 2024. *See* Nick Watt, *Veterans sue VA demanding land be used for homes and not rented out to a college and private school*, CNN (Nov. 16, 2022), https://www.cnn.com/2022/11/16/us/la-veteranssue-va-over-housing/ (UCLA Spokesperson in 2022: "UCLA is in full compliance with the West Los Angeles Leasing Act of 2016, as indicated in the Department of Veteran Affairs Office of the Inspector General's audit of September 2021.) Thus, the almost two-year lapse in time substantially disfavors intervention—especially because UCLA has no good cause to intervene now.

UCLA argues the good cause for their intervention now is a change of circumstances. But, as the Court analyzed above, there has been no change in circumstances—only the natural course of litigation unfolding. Accordingly, the Court finds that there has been no reasonable or sufficient explanation for delay given by UCLA. *See U.S. v. Wash.,* 86 F.3d 1499 (9th Cir. 1996) (finding that because the intervenors did not present satisfactory reasons for the substantial delay in filing the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KSDate: October 23, 2024

Page 14

motion to intervene, it was not an abuse of discretion for the district court to find the motion was not timely).

UCLA attempts to rely on the Court's earlier Order on Joinder in which the Court speculated that "the WLA Grounds are likely large enough that adequate housing could likely be built without disturbing any of the existing land use agreements." Order Regarding Trial Bifurcation at 5. However, this observation was made prior to discovery, before trial, and before collaborative conversations between the Parties commenced. The Court's initial observation was never a definitive judgment on the scope of UCLA's interest. It was simply a preliminary observation that informed the Court's decision at the time to not require UCLA's joinder at the early stage of litigation when they had shown no interest in being a party. As the case progressed, extensive discovery, fact-finding, and post-trial injunctive relief hearings revealed that the parking lot adjacent to the baseball stadium was a viable site for the development of temporary housing. This possibility was a direct and foreseeable result of the litigation challenging the leases and calling for increased housing.

UCLA decided not to intervene, perhaps because they thought their lease was untouchable, and now—only after the natural consequences of the litigation came to pass—they seek to intervene because they are unhappy with the result.[3] Accordingly,

---

[3] UCLA may have thought its lease was protected because it received the blessing of VA to continue business as usual despite the warning signs. The Court discussed the behind closed doors discussions between UCLA and VA in its Post-Trial Opinion:

> Leadership at the West LA VA and at UCLA were aware that expansion of UCLA's baseball program in 2021 was likely to upset the veterans who had been pushing for housing at the grounds. A statement by Executive Director of Community Engagement and Reintegration Services Robert McKenrick in a meeting with VA and legal associates on January 29, 2021, was leaked by a whistleblower. Mr. McKenrick stated: "Advocates who are a little testy out there are going to get up in arms when they see there's another ball field being built." "That being said, there's a FOIA request out there and the response to the FOIA request is going out in a week or two," Mr. McKenrick continued, explaining that the requester was a "UCLA news media guy." He instructed his team to work with UCLA to announce the field before this FOIA request could be independently reported on, reasoning that "this will get out ahead of us if we don't get moving on it quickly." Fearing public criticism, the VA hid

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                                Date: October 23, 2024

Page 15

UCLA's reason for delay and the nearly nine months that have passed since express notice weigh heavily against intervention.

### B. Motion to Modify the Court's Injunction

UCLA requests modification of the Court's September 25, 2024, injunction (Dkt. 309) which has since been incorporated into the Court's October 11, 2024, permanent injunction (Dkt. 358). The September 25, 2024 injunction states: "UCLA is hereby enjoined from accessing the UCLA baseball fields and facilities on the West LA VA Campus until UCLA proposes a position on how the ten acres it currently occupies can be put to a use such that the provisions of services to veterans is the predominant focus of the activities of the Regents at the campus." Order Enjoining UCLA from Accessing Baseball Facilities on West LA VA Campus at 1. UCLA argues that their modified proposal fulfills the Court's requirements to lift the injunction.

While counsel for UCLA has decided not to appear at numerous hearings, the Parties and non-party Brentwood School have worked diligently at those hearings to identify parcels of land on the campus that are ready for temporary emergency housing units and permanent housing. Brentwood School, as a non-party, has attended nearly every hearing and reached a settlement to ensure access to facilities on its voided lease grounds. *See* Permanent Injunction Re: Former Brentwood School Leased Grounds (Dkt.

---

behind UCLA and asked the university, rather than the VA, to announce the expansion of the baseball complex. Mr. McKenrick, in a subsequent multi-departmental meeting, discussed the problem with Chancellor Block's Chief of Staff, members of UCLA's Offices of Community Relations and Strategic Communication, and UCLA's Associate Athletic Director, among others. Trial Tr. Aug. 29, 2024, 103. As Mr. McKenrick continued the VA's practice of leasing off land behind veterans' backs, the residents of Veteran's Row, including several of the plaintiffs in this lawsuit, were sleeping in tents outside the front gates of the West LA VA. Post-Trial Opinion at 66.

*See also* Trial Transcript of Aug. 22, 2024, at 34:12–35:10 (Dkt. 270) ("UCLA refused to make the parking lot adjacent to its practice infield available for emergency housing in the midst of the pandemic, countering that sheltering unhoused veterans would interfere with the UCLA home game schedule.")

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:22-CV-08357-DOC-KS                                         Date: October 23, 2024

Page 16

357) (discussing the Settlement Agreement with Brentwood School). Although not an intervenor, it is not too late for UCLA to do the same. UCLA's participation is welcome.

      Based on UCLA's modified proposal from October 4, 2024, and extensive progress made at the hearings since then, the Court encourages VA and Plaintiffs to meet and confer about the remaining unpaved sites available for emergency housing. The Plaintiffs and VA are encouraged to include UCLA in the conversation. An agreement was reached at the hearings concerning the four paved parcels on the campus. *See* Exhibit 1. Two of these four paved parcels were agreed to be used for temporary emergency housing by the Parties—lot 7 (1.9 acres) and magenta B (parking lot, 1.6 acres). *Id*. The Parties agreed that paved parcel 5 is too near the domiciliary and should not be used at this time. *Id*. The Parties decided that given the choice between the remaining paved parcels 5 (which was unacceptable) and paved parcel 4a (1.8 acres), parcel 4a was the preferred choice. *Id*. This exhausted the available paved parcels.

      The remaining unpaved parcels include parcel 1 (1.7 acres), 2 (3.7 acres), 4 (4.3 acres), 9 (4.8), Yellow C (6.2 acres), Yellow A (3.4), and Yellow B (7.7 acres). *Id*. On October 25, 2024, the Court requests that the Parties recommend which of these remaining unpaved lots, having exhausted the paved lots, are recommended for development in order of preference. *See* Order on Temporary Housing (Dkt. 375). The Court also invites other input.

### IV. DISPOSITION

      For the reasons stated, the Court **DENIES** the Motion to Intervene and **HOLDS IN ABEYANCE** the Motion to Modify. Further proceedings are to be held on October 25, 2024, at 8 a.m. at the First Street Courthouse in Los Angeles. *See* Order on Temporary Housing (Dkt. 375).

      The Clerk shall serve this minute order on the Parties.

MINUTES FORM 11                                                              Initials of Deputy Clerk:
CIVIL-GEN                                                                                        kdu

# EXHIBIT 1



| TSH PARCELS | AREA (acres) |
|---|---|
| 1 | 1.7 |
| 2 | 3.7 |
| 3 | 9.8 |
| 4 | 4.3 |
| 5 | 2.2 |
| 6 | 4.0 |
| 7 | 1.9 |
| 8 | 4.1 |
| 9 | 4.8 |
| TOTAL | 36.5 |

| INCREMENTAL PSH | AREA (acres) |
|---|---|
| A | 3.4 |
| B | 7.7 |
| C | 6.2 |
| D | 1.7 |
| E | 2.2 |
| TOTAL | 21.2 |

| VA 3-29-2023 WHITE PAPER | AREA (acres) |
|---|---|
| VA 6 | 4.2 |
| VA 8 | 1.8 |
| VA 9 | 1.2 |
| TOTAL | 7.2 |

| OCT 3, 2024 PARCEL | AREA (acres) |
|---|---|
| 1 | 1.7 |
| 2 | 3.7 |
| 4 | 4.3 |
| 4a | 1.8 |
| 5 | 2.2 |
| 7 | 1.9 |
| B (Parking lot) | 1.6 |
| TOTAL | 17.2 |